Riley, Terri        Sex:F        BD:03/23/1966        MR#:1246660

**Print this Page**

PT#:15178578

**HIS Operative Notes**

**Aug 15, 2005**

THE UNIVERSITY HOSPITALS AND CLINICS
THE UNIVERSITY OF MISSISSIPPI MEDICAL CENTER
2500 NORTH STATE STREET
JACKSON, MISSISSIPPI 39216-4505

OPERATION RECORD

PATIENT NAME:     RILEY, TERRI
BILLING NUMBER:   000013566156
MEDICAL RECORD #: 124-66-60
DATE OF SURGERY:  08/15/2005

ATTENDING SURGEON:  JIHAD RIAD SALAMEH, M.D.

RESIDENT SURGEON:  LADAWN TALBOTT, M.D.

ANESTHESIA STAFF:  AHMED EBRAHIM BADR, M.D.

CRNA:  M. BECKLEY

ANESTHETIC:  GENERAL ENDOTRACHEAL.

GASTROENTEROLOGIST:  THOMAS L. ABELL, M.D.

PREOPERATIVE DIAGNOSIS:  REFRACTORY IDIOPATHIC GASTROPARESIS.

POSTOPERATIVE DIAGNOSIS:  REFRACTORY IDIOPATHIC GASTROPARESIS.

OPERATION:  INSERTION OF GASTRIC NEUROSTIMULATOR (MEDTRONIC ENTERRA).

COMPLICATIONS:  NONE.

INDICATIONS:  MS. RILEY IS A 39-YEAR-OLD FEMALE WHO HAS HAD GASTROPARESIS
REFRACTORY TO DRUG THERAPY.  SHE HAS HAD A WORKUP PERFORMED BY THE
GASTROENTEROLOGIST AND HAS HAD PROVEN DISORDERED GASTROELECTRIC TESTING.
SHE HAS HAD NO PRIMARY PSYCHIATRIC ETIOLOGY FOR HER GASTROPARESIS.  SHE HAS
EXPERIENCED WEIGHT LOSS, BUT HAS NO HISTORY OF DIABETES.  SHE HAS RESPONDED
TO TEMPORARY STIMULATION.  EGG STUDY SHOWED A 15% EMPTYING OF STOMACH IN 4
HOURS.  THE RISKS AND BENEFITS OF PERFORMING A GASTRIC PACER PLACEMENT WAS
DISCUSSED IN DETAIL WITH THE PATIENT.  SHE EXPRESSED UNDERSTANDING AND
CONSENTED FOR THE PROCEDURE.

PROCEDURE IN DETAIL:  THE PATIENT WAS BROUGHT TO THE OPERATING THEATRE.
SHE WAS PLACED IN THE SUPINE POSITION.  MONITORING DEVICES WERE PLACED AND
GENERAL ENDOTRACHEAL ANESTHESIA WAS INDUCED.  PLEXIPULSE BOOTS WERE APPLIED
PRIOR TO INDUCTION OF ANESTHESIA, AND PERIOPERATIVE ANTIBIOTICS HAVE BEEN
GIVEN.  THE ABDOMEN WAS PREPPED AND DRAPED IN A STERILE FASHION.

A SMALL UPPER MIDLINE INCISION WAS MADE JUST BELOW THE XIPHOID.  IT WAS
TAKEN DOWN THROUGH THE SUBCUTANEOUS AND THROUGH FASCIA.  AS THE PERITONEAL
CAVITY WAS ENTERED, THE LIVER WAS RETRACTED UPWARD.  THE STOMACH WAS
GRASPED ALONG THE GREATER CURVATURE WITH A BABCOCK AND BROUGHT OUT OF THE
WOUND.  THE PYLORIS WAS IDENTIFIED AND 10 CM WAS MEASURED FROM THE PYLORIS

BC 00214

PROXIMAL ALONG THE GREATER CURVATURE.  A MARK WAS THEN MADE AT THIS POINT
ALONG THE GREATER CURVATURE.  A SUBCUTANEOUS POCKET FOR THE NEUROSTIMULATOR
WAS CREATED IN THE RIGHT UPPER QUADRANT JUST BELOW THE COSTAL MARGIN.

DR. ABELL PERFORMED ESOPHAGOGASTROSCOPY, INTUBATING THE STOMACH WITH
GASTROSCOPE.  A POINT ON THE GREATER CURVATURE WAS PICKED FOR LEAD
PLACEMENT.  THESE LEADS WERE PLACED IN THE GASTRIC WALL NEAR THE GREATER
CURVATURE NEAR PREVIOUS MARKING.  TWO LEADS WERE PLACED UNDER DIRECT
VISUALIZATION BY EGD.  THE LEADS WERE THEN SECURED TO THE PLASTIC DISC
USING STAPLER AND SUTURING DISC TO THE GASTRIC WALL INTO 2 POINTS.  THE HUB
OF THESE LEADS WAS SUTURED TO THE GASTRIC STOMACH USING SILK.  IMPENDENCE
WAS VERIFIED THROUGH THESE LEADS, WHICH WAS ELEVATED DESPITE MANIPULATION
OF THE LEADS.  A THIRD LEAD WAS THEN PLACED JUST PROXIMAL TO THE PREVIOUS
LEADS, AND THIS WAS SECURED IN THE SAME FASHION.  THIS NEW LEAD WAS USED
ALONG WITH THE MOST DISTAL LEAD.  IMPENDENCE WAS VERIFIED AT APPROXIMATELY
840.  THE LEADS WERE THEN BROUGHT THROUGH THE FASCIA TOWARD THE
SUBCUTANEOUS POCKET AND RECONNECTED TO THE NEUROSTIMULATOR.  THE POCKET WAS
IRRIGATED AND CLOSED USING A SERIES OF 2-0 VICRYL SUTURES.  THE FASCIA WAS
THEN CLOSED WITH #1 LOOP PDS, AFTER THE STOMACH AND WIRES WERE REDUCED INTO
THE PERITONEAL CAVITY.  THE WOUND WAS IRRIGATED AND THE SKIN WAS CLOSED
USING 4-0 MONOCRYL IN RUNNING SUBCUTICULAR STITCH.

THE PATIENT TOLERATED THE PROCEDURE WELL.  SHE WAS EXTUBATED IN THE
OPERATING ROOM AND TRANSPORTED TO THE RECOVERY ROOM IN STABLE CONDITION.
FINAL INDEPENDENCE MEASURED JUST ABOVE 800.

ELECTRONICALLY  AUTHENICATED BY
JIHAD RIAD SALAMEH, M.D. 08/22/2005 09:57

DICTATED BY:  LADAWN TALBOTT, M.D.
D:   08/15/2005
T:   08/15/2005  2:27 P
1413806/000856265

CC:  JIHAD RIAD SALAMEH, M.D.

Page created: Monday, June 15, 2009 2:38 PM For: 56327                    Top of Page

BC 00215

JUN-15-2009  16:19      UMC DIGESTIVE DISEASE CLINIC    6019844648     P.046

Riley, Terri        Sex:F        BD:03/23/1966        MR#:1246660

Print this Page

PT#:15178578

HIS Discharge Summaries

Aug 14, 2005

THE UNIVERSITY HOSPITALS AND CLINICS
THE UNIVERSITY OF MISSISSIPPI MEDICAL CENTER
2500 NORTH STATE STREET
JACKSON, MISSISSIPPI 39216-4505

DISCHARGE SUMMARY

PATIENT NAME:       RILEY, TERRI
BILLING NUMBER:     000013566156
MEDICAL RECORD #:   124-66-60
ADMIT DATE:         08/14/2005
DISCHARGE DATE:     08/19/2005

ADMISSION DIAGNOSIS:  GASTROPARESIS.

DISCHARGE DIAGNOSIS:  GASTROPARESIS, STATUS POST GASTRIC PACEMAKER.

CONSULTATIONS:
1. PAIN MANAGEMENT.
2. ANESTHESIA.
3. GENERAL SURGERY.
4. WILLIAM ALEXANDER ROCK, M.D., PATHOLOGY, FOR COAGULATION WORKUP.

PROCEDURE:  PERMANENT GASTRIC STIMULATOR PLACEMENT BY GENERAL SURGERY.

HISTORY OF PRESENT ILLNESS:  THIS IS A 39-YEAR-OLD WHITE FEMALE WITH A
HISTORY OF GASTROPARESIS WHO IS ADMITTED FOR PERMANENT GASTRIC STIMULATOR
DEVICE PLACEMENT ON AUGUST 15, 2005.  MS. RILEY HAS PROBLEMS WITH ABDOMINAL
DISCOMFORT AND OCCASIONAL PROBLEMS WITH NAUSEA, THOUGH SHE HAS BEEN ON
REGLAN AND ZELNORM.  SHE STATES THAT FOR THE MOST PART, SHE TAKES LIQUIDS
AND SOFTER FOOD WITHOUT MUCH DIFFICULTY, BUT SOLID FOODS CONTINUE TO GIVE
HER ISSUES WITH ABDOMINAL DISCOMFORT.  SHE DENIES ANY VOMITING AT THE
PRESENT TIME WHILE ON ZELNORM AND STATES THAT IT HAS BEEN BETTER THAN
REGLAN.  THE PATIENT DENIES ABDOMINAL PAIN AND GI BLOOD LOSS SYMPTOMS.

REVIEW OF SYSTEMS:  NEGATIVE.

PAST MEDICAL HISTORY:  GASTROPARESIS.

FAMILY HISTORY:  NONCONTRIBUTORY.

SOCIAL HISTORY:  OCCUPATION:  NOT EMPLOYED.  NO TOBACCO OR ALCOHOL USE AT
THE PRESENT TIME.  NO ILLICIT DRUG USE.

MEDICATIONS:  AS MENTIONED BEFORE, THE PATIENT HAS BEEN ON ZELNORM 12 MG
DAILY PRIOR TO WHEN SHE WAS ON REGLAN.

ALLERGIES:  NONE KNOWN.

PHYSICAL EXAMINATION:
CONSTITUTIONAL:  TEMPERATURE 98.1 DEGREES, PULSE 72, BLOOD PRESSURE 96/67,
RESPIRATORY RATE 20.
APPEARANCE:  NO ACUTE DISTRESS.

BC 00216

EYES:  NO SCLERAL ICTERUS.  PUPILS WERE EQUAL, ROUND AND REACTIVE TO LIGHT.

EARS, NOSE, MOUTH AND THROAT:  CLEAR OROPHARYNX, WITHIN NORMAL LIMITS HEARING.
NECK:  TRACHEA MIDLINE, NORMAL APPEARANCE AND MOVEMENTS.
RESPIRATORY:  CLEAR TO AUSCULTATION AND PALPATION, SYMMETRICAL CHEST EXPANSION.
CARDIOVASCULAR:  NORMAL SOUNDS, NO MURMURS, GALLOPS OR RUBS, NO EDEMA.
ABDOMEN:  NO TENDERNESS, NO HEPATOSPLENOMEGALY.
LYMPHATIC:  NO CERVICAL OR SUPRACLAVICULAR ADENOPATHY.
MUSCULOSKELETAL:  NORMAL GAIT, NO CLUBBING, NORMAL RANGE OF MOTION OF ALL 4 EXTREMITIES.
SKIN:  NO RASH OR ULCERS, NO NODULES.
NEUROLOGICAL:  NORMAL CRANIAL NERVES, NORMAL REFLEXES.
PSYCHIATRIC:  ALERT AND ORIENTED TO PERSON, PLACE AND TIME, INTACT MEMORY.

INITIAL LAB REVIEW:  CBC:  WHITE COUNT 6800, HEMATOCRIT 36.5, PLATELETS 206,000.  CHEM-8:  SODIUM 141, POTASSIUM 3.6, CHLORIDE 102, CO2 28, BUN 6, CREATININE 0.8, GLUCOSE 151, CALCIUM 9.6.  PT 12.5, PTT 26.1.  NEGATIVE PREGNANCY TEST.

BRIEF HOSPITAL COURSE:  THE PATIENT WAS ADMITTED TO THE GENERAL SURGERY SERVICE INITIALLY.  SHE WAS SCHEDULED FOR A GASTRIC SIMULATOR PLACEMENT THE FOLLOWING DAY.  SHE WAS GIVEN A REGULAR DIET AND THEN MADE N.P.O. AFTER MIDNIGHT.  THE PATIENT TOLERATED THE SURGICAL PROCEDURE WELL WITH SOME POSTOPERATIVE CRAMPING AND ITCHING WHICH WAS FELT TO BE SECONDARY DUE TO HER PAIN MEDICATION.  PAIN MANAGEMENT WAS CONSULTED AND THE PATIENT'S MORPHINE PCA WAS CHANGED TO A DILAUDID PCA WITH SOME RELIEF OF HER ITCHING. THE PATIENT'S CRAMPING IMPROVED ON POSTOPERATIVE DAY #2.  SHE REMAINED TENDER IN HER RIGHT UPPER QUADRANT EPIGASTRIC AREA NEAR WHERE THE STIMULATOR HAD BEEN PLACED AND HER WOUND REMAINED CLEAN, DRY AND INTACT THROUGHOUT.  THE PATIENT WAS GIVEN BENADRYL FOR HER ITCHING WITH GOOD IMPROVEMENT.  THE PATIENT WAS SWITCHED TO P.O. PERCOCET THE NIGHT PRIOR TO HER DISCHARGE WITH GREAT RELIEF OF HER ITCHING AND HER DILAUDID PCA WAS DISCONTINUED.  ON AUGUST 19, 2005, THE PATIENT WAS DEEMED FIT FOR DISCHARGE WITH THE FOLLOWING ORDERS.

DISCHARGE ORDERS:
1. DISCHARGE PATIENT TO HOME.
2. DIAGNOSIS:  GASTROPARESIS, STATUS POST GASTRIC PACEMAKER.
3. CONDITION:  STABLE.
4. DIET:  REGULAR.
5. ACTIVITY:  AS TOLERATED.
6. MEDICATIONS:  PERCOCET 5/325, 1-2 TABLETS P.O. Q.6 H. P.R.N. PAIN, PHENERGAN 12.5 MG P.O. Q.6 H. P.R.N. NAUSEA.
7. FOLLOW-UP IS WITH DR. THOMAS ABELL WITH THE GI CLINIC AND DR. ABELL WILL SCHEDULE THIS.

ADDENDUM:  THE CONSULT TO DR. ROCK FOR THE COAGULATION WORKUP YIELDED COMPLETELY NORMAL COAGULATION STUDIES.

ELECTRONICALLY AUTHENICATED BY
THOMAS L. ABELL, M.D. 09/01/2005 09:12

DICTATED BY:  SAMUEL C. THIGPEN, M.D.

http://oasgold.umc.edu/a0a6-ntap-bin/wcbcfch.cxe/PRD/2?KEY=PT0002INVISIONPI-LC   6/15/2009

BC 00217

JUN-15-2009  16:19      UMC DIGESTIVE DIS                    6019844648    P.048
                                                                 Page 3 of 3

D:   08/19/2005
T:   08/19/2005 10:44 A
1920851/000878922

CC:  THOMAS L. ABELL, M.D.

Page created: Monday, June 15, 2009 2:38 PM For: 56327                    Top of Page

http://oasgold.umc.edu/a0a6-ntap-bin/webcfch.exe/PRD/2?KEY=PT0002INVISIONPI-LC...   6/15/2009

BC 00218

JUN-16-2009  16:16        UMC DIGESTIVE DI                    6019844648    P.026

Riley, Terri        Sex:F          BD:03/23/1966      MR#:1246660        🖨Print this Page

HIS Operative Notes                                                    PT#:15178578

                                                                        Dec 10, 2007

THE UNIVERSITY HOSPITALS AND CLINICS
THE UNIVERSITY OF MISSISSIPPI MEDICAL CENTER
2500 NORTH STATE STREET
JACKSON, MISSISSIPPI 39216-4505

OPERATION RECORD

Patient Name:        RILEY, TERRI PAIGE
Billing Number:      000014839607
Medical Record #:    124-66-60
Date of Birth:              03/23/1966
Date of Surgery:     12/10/2007

ATTENDING SURGEON:      ROBERT SCHMIEG, JR., M.D.

RESIDENT SURGEON:  Jason Allen Payne, M.D.

ANESTHETIST:  John D. Current, M.D.

ANESTHESIA:
1. General anesthesia via oral endotracheal tube.
2. Local infiltration with 0.5% bupivacaine with epinephrine, total of 30
   mL used.

FIRST ASSISTANT:

OPERATION:
1. Gastrointestinal electrical stimulation (GES) pacemaker box
   replacement.
2. Gastric myoelectric activity recordings

PREOPERATIVE DIAGNOSES:
1. Gastroparesis, idiopathic, non diabetic, medication refractory, with
   good prior permanent gastroelectrical stimulation system (GES)
   response.
2. Nausea and vomiting.
3. Malfunction of GES system (dead box).

POSTOPERATIVE DIAGNOSES:
1. Gastroparesis, idiopathic, non diabetic, medication refractory, with
   good prior permanent gastroelectrical stimulation system (GES)
   response.
2. Nausea and vomiting.
3. Malfunction of GES system (dead box).

INDICATIONS FOR PROCEDURE:  Terri Riley is a 41-year-old Caucasian female
with a history of idiopathic medication-refractory, non diabetic
gastroparesis.  She underwent gastroelectrical stimulation system
implantation on August 15, 2005, by Dr. Salameh here at University.  This
provided excellent relief of her gastroparetic symptoms.  She has now had
complaint of a several-month time return of her gastroparetic symptoms
including nausea and vomiting.  Upon attempts at interrogation, the GES
system is not responding.

BC 00694

The diagnosis of a malfunction of the patient's gastroelectrical stimulation system because of probable battery failure or "dead box syndrome" was made. Replacement of the GES box was recommended. The procedure, risks, benefits and alternatives were discussed with the patient. Her questions were addressed. She appeared to understand, and requested to proceed with operation as above.

PROCEDURE DETAILS:  The patient was brought to the surgical suite on December 10, 2007, and placed in supine position on the operating table. After the uneventful induction of adequate general anesthesia, the patient was orally intubated. Ancef was given for perioperative antibiotic coverage. PlexiPulse boots were applied for deep vein thrombosis prophylaxis.

The abdomen was prepped and draped in a standard sterile fashion with the use of an Ioban drape. Anatomic landmarks were identified including the patient's prior epigastric-midline incision and the palpation subcutaneous box in the right upper quadrant. Local infiltration anesthesia was performed by the surgical team in a field block fashion about the box. A transverse right upper quadrant incision was then made over the box and dissection carried down with electrocautery to the level of the pseudocapsule surrounding the box. Note was made that several leads were coiled on top and superficial to the box. These were dissected free. The box was delivered into the surgical field from the wound. The box was grossly intact. The leads were detached from the box and the box was delivered off the table to be sent to the manufacturer for fault analysis.

The wound was examined. The lead portions that were within the fibrous pseudocapsule were freed up for several inches. The inferior aspect of the GES pseudocapsule pocket was opened to allow the box to be relocated slightly more inferiorly. Of note, a third lead which was not connected was present within the surgical field.

The leads which had been removed from the box were then connected with sterile alligator clips to a biomedical grade physiologic recorder. Dr. Abell's team performed gastric myoelectric activity recordings for about 10 minutes, obtaining an excellent quality of signal.

A new gastroelectrical stimulation system box was then brought onto the field (Medtronic Enterra model, serial #NHV102432H). Leads were inserted into the box and secured in standard fashion. The box was then placed in the subcutaneous pocket with the leads coiled deep to the box. The box was interrogated and had excellent impedances.

The wound was copiously irrigated. Hemostasis was excellent. The surgical incision was then closed in layers with multiple interrupted 3-0 Vicryl sutures, followed by 4-0 Monocryl subcuticular sutures, then Mastisol and Steri-Strips.

At this point the box was again interrogated. Final impedances were: Unipolar #2 = 292 ohms; unipolar #3 lead = 342 ohms; bipolar leads = 511 ohms.

A dry sterile dressing was applied to the surgical wound. The drapes were removed. The patient was awakened from anesthesia and taken to the recovery room in stable condition. She tolerated the operation well.

NOTE FROM DR. SCHMIEG: As the attending surgeon I was present for and

BC 00695

Riley, Terri        Sex:F        BD:03/23/1966        HR#:1246660        🖨 Print this Page
PT#:15178578
**GASTRIC IMAGING**

Aug 23, 2007 11:30

** FINAL **

NUC 0026 _ GASTRIC EMPTYING IMAGING _ Aug 23 2007
NUCLEAR MEDICINE GASTRIC EMPTYING STUDY
08/23/07 0730 hours
CLINICAL HISTORY:
41-year-old female with non diabetic gastroparesis.
FINDINGS:
Previous: 07/25/06
The patient was administered orally a 1.1 mCi dose of Tc99m labeled
sulfur colloid in solid egg beater meal. Serial anterior and posterior
gastric imaging was performed for four hours in upright position and time
activity curve was generated with geometric mean.
There is 53% retention at 1 hours, 26% retention at 2 hours and 5% at 4
hours. Distribution of activity in the stomach and bowel is otherwise
unremarkable.
IMPRESSION:
Normal radionuclide solid gastric emptying study. This is improved from
prior examination 07/25/06.
VIJAYAKUMAR VANI, M.D./SUSAN ELIZABETH SHAMBURGER, M.D.
499979/306


I certify the accuracy of this report on the basis of my own personal
observations and interpretation
Read by: SUSAN ELIZABETH SHAMBURGER  007536 on Aug 23 2007  3:11P
Transcribed by: MT3 on Aug 23 2007  3:11P
Signed by: DR. VANI VIJAYAKUMAR on: Aug 23 2007  3:28P


Page created Monday, June 15, 2009 2:37 PM For: 66327

Top of Page

BC 00696

Jun. 18. 2009  2:53PM   MEMPHIS SURGERY ASSOCIATES                No. 7904   P. 3



**Memphis Surgery Associates, PC**

*General, Vascular,
Oncologic, Colorectal, Endocrine,
and Bariatric Surgery*

G. Randolph Turner, MD, FACS

William Scott King, Jr., MD, FACS

Carson E. McDaniel, III, MD, FACS

Hugh Francis, III, MD, FACS

Albert E. Laughlin, Jr., MD, FACS

Martin D. Fleming, MD, FACS

Melvin P. Payne, III, MD, FACS

Justin Monroe, MD

D. Benjamin Gibson, IV, MD

William C. Gibson, MD, FACS

D. Alan Hammond, MD, FACS

*Emeritus*

Leonard H. Hines, MD, FACS

Hugh Francis, Jr., MD, FACS

Irvin D. Fleming, MD, FACS

May 19, 2009

Terry L. Jackson, Jr., M.D.
8000 Wolf River Blvd., Suite 200
Germantown, TN 38138

RE: TERRI P. RILEY

Dear Terry,

Today, I had the pleasure of meeting Ms. Riley in the office. As you will recall, she is a very pleasant, 43-year-old female with recurrence of her gastroparesis symptoms after the expiration of a gastric pacemaker battery. I've had a pleasant discussion with her today regarding the technique involved with changing a battery. I've also discussed the nature and frequency of her symptoms with her at length. I agree that she will benefit from a new battery, and we are working toward getting her on the operative schedule for this to be done in the near future.

I appreciate the privilege of seeing your patients in consultation.

Sincerely,

William C. Gibson, M.D.

WCG:ncc

BC 00617



# Memphis Gastroenterology Group

www.memphisgastro.com

May 19, 2009

BlueCross BlueShield

Re:   Terri Paige Riley
      DOB: 03/23/1966
      Our Chart #130603s

To Whom It May Concern:

Ms. Riley has been a patient of ours for some time and has been treated for gastroparesis with a gastric pacer. This has afforded her a markedly improved lifestyle and the ability to maintain both her activities at home with her family and also her activities at work with full gainful employment.

Her gastric pacer battery is currently past its service life and needs to be changed. I know there have been potential issues in the past with coverage for gastric pacers through BlueCross BlueShield. If it is possible, please make an exception to this policy in assisting her with coverage for her pacer battery replacement with Drs. Abell in Jackson, MS or with Dr. Gibson in Memphis, TN.

If you have any questions or concerns, please do not hesitate to call our office.

Sincerely,

Terrence L. Jackson, Jr., M.D.

TLJ/me

BC 00674

JUL-20-2009  08:43        NORTHCENTRAL ELECTRIC                    6628387121      P.01/01

 **BlueCross BlueShield 09289 0 no110 530**
of Mississippi
Jackson, Mississippi 59215-1045
Telephone: (601) 932-5704
www.bcbsms.com

Committed to a Healthier Mississippi.

July 16, 2009

James Riley
331 Cascade FLS
Collierville, TN 38017

RE:   Patient:      Terri
      ID#:          868264547M

Dear Mr. Riley:

This letter is in response to your request for benefits for the replacement battery for
Terri's gastric electrical stimulator.

Based on our review of the information provided and our Medical Policy guidelines,
gastric electrical stimulation is considered investigational for the treatment of
gastroparesis of diabetic or idiopathic etiology. Investigational services are excluded
under your self-funded benefit plan. Therefore, benefits cannot be provided for the
replacement battery for the gastric electrical stimulator.

Our Medical Policy is the formal written guidelines regarding new and existing medical
and surgical procedures, products, drugs, technology and tests. These guidelines are
determined by currently available peer-reviewed scientific literature as well as with input
from Mississippi physicians.

We value you as a customer and look forward to continuing to serve your health care
needs. If you have any questions, or if we may assist you further, please contact our
Customer Service Department at 1-800-942-0278.

Best of Health,

Ginny Williams
Supervisor, Appeals and Correspondence

Blue Cross & Blue Shield of Mississippi, A Mutual Insurance Company,
is an independent licensee of the Blue Cross and Blue Shield Association.

TOTAL P.01

BC 00477

USPS - Track & Confirm                                                      nVPTSInternetWeb/InterLabelInquiry

║║║║ 0092856 00530 ║║║║

 **UNITED STATES POSTAL SERVICE®**

Home | Help | Sign In

Track & Confirm          FAQs

## Track & Confirm

### Search Results

Label/Receipt Number  0308 1400 0000 4355 2735
Class  Priority Mail®
Service(s): Delivery Confirmation™
Status  Delivered

Your item was delivered at 3 48 AM on July 24, 2009 in JACKSON, MS
39215

**Track & Confirm**

Enter Label/Receipt Number.

Go >

Detailed Results

• Delivered, July 24, 2009, 3:48 am, JACKSON, MS 39215
• Arrival at Unit, July 24, 2009, 3:47 am, JACKSON, MS 39201
• Processed through Sort Facility, July 23, 2009, 6:25 pm, JACKSON, MS 39201
• Processed through Sort Facility, July 23, 2009, 1:03 am, SPRINGFIELD, MA 01152
• Acceptance, July 22, 2009, 5:09 pm, WEST HARTFORD, CT 06107

Notification Options

Track & Confirm by email

Get current event information or updates for your item sent to you or others by email.    Go >

Site Map    Customer Service    Forms    Gov't Services    Careers    Privacy Policy    Terms of Use    Business Customer Gateway

Copyright© 2009 USPS. All Rights Reserved.    No FEAR Act EEO Data    FOIA

## U.S. Postal Service™ Delivery Confirmation™ Receipt

Postage and Delivery Confirmation fees must be paid before mailing.

Article Sent To: (to be completed by mailer)

BCBS of MS Attn Appeals
P.O. Box 1043
Jackson, MS 39215

DELIVERY CONFIRMATION NUMBER
0308 1400 0000 4355 2735

Postmark
Here
JUL
22

**POSTAL CUSTOMER:**
Keep this receipt. For inquiries:
Access Internet web site at
www.usps.com®
or call 1-800-222-1811

CHECK ONE (POSTAL USE ONLY)
☑ Priority Mail™ Service
☐ First-Class Mail® parcel
☐ Package Services parcel
(See Reverse)

PS Form 152, May 2002

7/28/2009 1 22

1 of 1

BC 00478

0082855.04372



# Advocacy for Patients
## with Chronic Illness, Inc.

18 Timberline Drive
Farmington, CT 06032
(860) 674-1370 (phone)
(860) 674-1378 (fax)
(860) 305-9835 (cell)
www.advocacyforpatients.org
patient_advocate@sbcglobal.net

July 22, 2009

Blue Cross Blue Shield of Mississippi
ATTN: Appeals
PO Box 1043
Jackson, MS  39215

RE:   Terri Paige Riley
      BCBS of MS ID no. YAQ868264547M
      SSN 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
      Date of Service: To be Determined (prior authorization)
      Type of Service: Gastric electrical stimulation

Dear Sir or Madam:

       I am writing on behalf of your insured, Terri Paige Riley, appeal your July 16, 2009
denial of a replacement battery for her gastric electrical stimulator.  My HIPAA release and
authorization is enclosed.

## I.   Introduction

       Terri Paige Riley suffers from a severe case of gastroparesis, which is marked by
stomach dysmotility.  She underwent implantation of gastric electrical stimulation, also
called Enterra Therapy, initially on August 15, 2005.  It was paid for by the Electric Power
Associations of Mississippi Group Benefits Trust ("the Plan").  Because of the severity of her
illness, the battery on the device expired, and a new battery was installed on December 10,
2007.  It, too, was paid for by the Electric Power Associations of Mississippi Group Benefits
Trust.  The second battery has now died, and she requires a battery replacement.

       Without the device in operational condition, she suffers from nausea, vomiting,
nutritional deficits, and abdominal pain.  Ultimately, when her nutrition becomes too
compromised, she would need a feeding tube and would have to take tube feedings for the
rest of her life – a disabling, very expensive proposition – far more expensive than replacing
the battery on the device she already has.  With the device in operational condition, she has
been able to work, eat, and lead an active lifestyle.  The medical necessity of this battery
replacement is clear.  However, Blue Cross Blue Shield of Mississippi ("BCBS of MS") has
taken the position in the past that the device is investigational.  This conclusion is contrary
to the medical literature and the standard of care.  Indeed, since Ms. Riley already has the
device implanted, it really cannot simply be left there non-functioning.  And since we know
that the device works to control her nausea and vomiting, it cannot be called experimental;

BC 00167

BCBS of MS
July 22, 2009
Page 2 of 10

in fact, it works in this patient exactly as it should.  Thus, we ask that you agree to cover the cost of a battery replacement.[1]

## II.    Procedural History

On behalf of the Electric Power Associations of Mississippi Group Benefits Trust ("the Plan"), Blue Cross Blue Shield of Mississippi (BCBS of MS) first told Ms. Riley in writing that it would not make a determination of coverage before she had the device implanted.  We then contacted Mr. Ty Harrell at the Electric Power Associations of Mississippi Group Benefits Trust.  He asked us for Ms. Riley's medical records and other documentation, which we submitted to him on June 19, 2009.  On June 23, 2009, Mr. Harrell informed the undersigned that he would be submitting the file for review by BCBS of MS.  On July 15, 2009, the undersigned received a telephone call from Mr. Aaron Sisk of the Mississippi Insurance Department asking for the undersigned permission to contact BCBS of MS on Ms. Riley's behalf.  The undersigned granted permission.  Mr. Sisk was told by BCBS of MS by the Director of the Legal Department that, although he was unaware of Ms. Riley's case, he was aware of several requests for payment for gastric electrical stimulation, and that BCBS of MS takes the position that gastric electrical stimulation is investigational <u>based on the work of Dr. Thomas Abell at the University of Mississippi</u>.  I enclose a letter from Dr. Abell stating that it is his opinion that gastric electrical stimulation has <u>not</u> been investigational for the past 10 years and, instead, that it represents the standard of care for patients with nausea and vomiting due to gastroparesis.

On July 16, 2009, BCSBS of MS wrote Ms. Riley and stated that it was denying her "request for benefits" to cover the battery replacement on the ground that it is investigational.  (Copy enclosed).  The letter failed to recite Ms. Riley's appeal rights, in violation of ERISA.[2]  The undersigned called BCBS of MS to ask for appeal instructions and was told to send the appeal to the address on page one of this letter.

## III.    The Plan Has Violated ERISA

Here, BCBS of MS has not provided full and fair review by failing to recite Ms. Riley's rights to appeal.

ERISA requires "full and fair review" by ERISA plan administrators.  29 U.S.C. § 1133.  The statute sets out the following duties for plan administrators:

---

[1] We understand that you have more than one case pending involving Enterra Therapy and that you are concerned about setting a precedent.  This case is special because Ms. Riley already has the device; you can't leave a dead foreign object in her body forever.  We are aware that there are other Blue Crosses that cover this device under confidential settlements so as to avoid precedent.  We would be willing to enter into such an agreement here.  Since the settlements are confidential, I can't tell you which Blue Crosses use this process, but I'm sure you can ask your colleagues in other states.  Of course, in other states, there are external appeals, and since we win most of those, we don't have to agree to confidentiality in those cases.  (See enclosed copies of appeal decisions).

[2] The Electric Power Associations of Mississippi Group Benefits Trust is a self-funded plan that is not exempt from ERISA and, thus, it is under the jurisdiction of the U.S. Department of Labor and the federal courts.

BC 00168

BCBS of MS
July 22, 2009
Page 3 of 10

(1) provide adequate notice in writing to any participant or beneficiary whose claim
for benefits under the plan has been denied, setting forth the specific reasons for
such denial, written in a manner calculated to be understood by the participant, and

(2) afford a reasonable opportunity to any participant whose claim for benefits has
been denied for a *full and fair review* by the appropriate named fiduciary of the
decision denying the claim.

29 U.S.C. § 1133 (emphasis added).

In addition, the Department of Labor has promulgated regulations that further clarify
the nature and scope of full and fair review, as follows:

(1) The specific reason or reasons for the denial;
(2) Specific reference to pertinent plan provisions on which the denial is based;
(3) A description of any additional material or information necessary for the claimant
to perfect the claim and an explanation of why such material or information is
necessary; and
(4) **Appropriate information as to the steps to be taken if the participant or
beneficiary wishes to submit his or her claim for review.**

29 C.F.R. § 2560.503-1(f) (emphasis added). "[A]n administrator abuses its discretion
when it fails to afford a claimant a 'full and fair review' of its decision to deny her claim."
*Soron v. Liberty Life Assurance Co. of Boston,* 318 F.Supp.2d 19 (N.D.N.Y. 2004) (citing
*Crocco v. Xerox Corp.,* 137 F.3d 105, 108 (2d Cir.1998)).

Here, BCBS of MS failed in two ways to provide full and fair review.

First, BCBS of MS failed to recite the following rights:

You may receive, upon request and free of charge, reasonable access to and
copies of all documents, records and other information relevant to this
request and an explanation of the scientific basis or clinical judgment that we
relied upon in making our determination. This includes a copy of the internal
rule, guideline, or protocol, if any, that we relied on in making the non-
coverage decision for this request.

Second, BCBS of MS has failed to inform Ms. Riley of her right to appeal under the Plan.

"The core requirements of a full and fair review include 'knowing what evidence the
decision-maker relied upon, having an opportunity to address the accuracy and reliability of
that evidence, and having the decision-maker consider the evidence presented by both
parties prior to reaching and rendering his decision.'" *White v. Airline Pilots Assoc Int'l,* No.
04 C 3307, 2005 WL 827001, *11-12 (N.D. Ill. Apr. 8, 2005) (citing *Brown v. Retirement
Comm. of Briggs & Stratton Retirement Plan,* 797 F.2d 521, 534 (7th Cir.1986)). "These
requirements ensure that when a claimant appeals a denial to the plan administrator, he will
be able to address the determinative issues and have a fair chance to present his case." *Id.*

To afford a plan participant whose claim has been denied a reasonable
opportunity for full and fair review, the plan's fiduciary must consider any and
all pertinent information reasonably available to him.   The decision must be

BC 00169

> supported by substantial evidence.   The fiduciary must notify the participant
> promptly, in writing and in language likely to be understood by laymen, that
> the claim has been denied with the specific reasons therefor.  The fiduciary
> must also inform the participant of *what evidence he relied upon* and provide
> him with an opportunity to examine that evidence and to submit written
> comments or rebuttal documentary evidence.  If the fiduciary allows third
> parties to appear personally, the same privilege must be extended to the
> participant.

*Grossmuller v. Int'l Union, United Automobile Aerospace and Agricultural Implement Workers of America*, 715 F.2d 853, 857-58 (3d Cir. 1983) (emphasis added).  *See also Soron v. Liberty Life Assurance Co. of Boston*, 318 F.Supp.2d 19 (N.D.N.Y. 2004) (full and fair review requires that the fiduciary inform the claimant of the evidence the fiduciary relied on and an opportunity to submit comments and/or rebuttal).

Here, BCBS of MS has failed to include the above-quoted language in its noncoverage decision.  Indeed, we have no idea whether Mr. Harrell did, in fact, forward everything we submitted to him in support of this claim for benefits, including some additional documents we sent him several days after our original June 19 submission.  BCBS of MS has failed to inform us of our right to receive a copy of everything upon which it did rely.  As a matter of law, the claimant is entitled to know what records the insurer was relying on and what was excluded.  Thus, when the insurer said that it had relied on all available records, the insured had every reason to believe that certain records related to his Social Security benefits were part of the record.  *Harden v. American Express Financial Corp.*, 384 F.3d 498, 500 (8th Cir. 2004).  The insurer's failure to either inform the insured that it was not relying on certain documents *or to even obtain those records* constituted a "serious procedural irregularity."  *Id.* (emphasis added).  Thus, "although the insurer's decision would normally be subject to abuse-of-discretion review . . . we conclude that the district court should have applied a less deferential sliding-scale standard of review."  *Id.* (citing *Shelton*, 285 F.3d at 642 (court may apply less deferential standard of review if plaintiff presents evidence demonstrating palpable conflict of interest or serious procedural irregularity that caused breach of plan administrator's fiduciary duty to plaintiff); *Woo v. Deluxe Corp.*, 144 F.3d 1157, 1161-62 (1998) (adopting sliding-scale standard of review where less deferential standard is appropriate)).  *See also Cannon*, 219 F.R.D. at 214 ("Finding out just what information [the fiduciary] had and why it acted as it did depends upon the medical notes provided to it, the exchange of correspondence, and the recollections of oral conversations.") (citing *Doe v. Travelers*, 167 F.3d 53, 58 (1st Cir.1999)).

Indeed, not only did BCBS of MS fail to offer Ms. Riley a copy of everything upon which it relied, but it also cites authority which is **not publicly available** in its Medical Policy on Gastric Electrical Stimulation.  BCBS of MS cites to "Blue Cross Blue Shield Association policy # 7.01.73."  We have no access to this document – it is not on the website of the Blue Cross Blue Shield Association or BCBS of MS – and BCBS of MS has not offered to provide it to us.  BCSB of MS then cites to two documents written by Hayes, which is paid to write policies justifying insurance company denials, and whose documents are considered proprietary and, thus, based on our many years of experience doing health insurance appeals, we know that insureds may not be given copies of Hayes policies.  Thus, three of the four documents upon which BCBS of MS relies are not publicly available.

BCBS of MS
July 22, 2009
Page 5 of 10

Finally, BCBS of MS directs us to www.msmedicare.com. However, upon searching that website for "gastric electrical stimulation," one receives a policy that states that Medicare "*will provide coverage for insertion of the Gastric Electrical Stimulator for gastroparesis or gastric dumping that is unresponsive to other forms of medical management.*" (Emphasis added) (copy enclosed).  If BCBS of MS is relying on this document, it ought to cover the device here.

Similarly, BCSB of MS has failed to notify Ms. Riley of her appeal rights, the procedures through which she may obtain review of the Plan's initial decision to deny coverage.  The benefits booklet states that the Plan must provide a reference to the claims review procedure and/or the relevant provisions of ERISA.  (Summary plan description at p. 77).  We did not even have an address where an appeal could be sent.  Indeed, because the denial letter came from Ginny Williams, Supervisor, Appeals and Correspondence, we are unable to determine how BCBS of MS is treating this matter.[3]  However, since the letter states that it is a denial of a "request for benefits," we construe it as such, and refer to the Summary Plan Description for appeal rights, which are found beginning on page 77.  We called BCBS of MS and asked for the address for the appeal and we were given the one to which this appeal is sent.

Because BCBS of MS has violated ERISA, its decision will not be given deference if we are forced to appeal to a court.  Of course, we hope that we will not have to pursue this claim that far.

### IV.   ENTERRA THERAPY IS NOT EXPERIMENTAL, INVESTIGATIONAL OR UNPROVEN

It is important to be very clear about what this treatment is supposed to do.  It is not a cure for gastroparesis, so to say that it is investigational for treating gastroparesis misses the point.  Gastric electrical stimulation is designed to treat the nausea and vomiting secondary to gastroparesis, not the gastroparesis itself.  Since the device has been doing exactly that for Ms. Riley since it was implanted, we know it works for her.  We cannot imagine what further proof of efficacy one could want.

The Director of the Legal Department of BCBS of MS told Mr. Aaron Sisk of the Mississippi Insurance Department that it was denying claims for Enterra therapy based on the work of Dr. Thomas Abell at the University of Mississippi.  We enclose a letter from Dr. Abell stating that, in his view, this device no longer was investigational ten years ago, and that it represents the standard of care.  Based on Dr. Abell's published work, as cited below, we find it hard to imagine that BCBS of MS could, in good faith, have stated its reliance on Dr. Abell's work.  Dr. Abell is the world's leading *proponent* of gastric electrical stimulation, and has been fighting with BCBS of MS for years in an effort to convince it to acknowledge that gastric electrical stimulation is the standard of care for nausea and vomiting secondary to gastroparesis.  But in case there is any genuine doubt about Dr. Abell's position, we enclose his letter herein.

---

[3] Although the undersigned provided the enclosed HIPAA release to Mr. Harrell on June 19, and thus it should have been forwarded to BCBS of MS on June 23, BCBS of MS claims it has no records of this release being on file.  The undersigned faxed a copy of the release to BCBS of MS Customer Service on July 20, 2009.

BC 00171

BCBS of MS
July 22, 2009
Page 6 of 10

Gastric electrical stimulation (GES) is a medically accepted method of treatment for nausea and vomiting secondary to idiopathic or diabetic gastroparesis.  On March 31, 2000, the Center for Devices and Radiologic Health (CDRH) of the FDA granted a Humanitarian Device Exception ("HDE") for Enterra Therapy.  Letter from FDA to Medtronic granting HDE (March 31, 2000).[4]  The FDA states that "[t]his device is indicated for the treatment of chronic, intractable (drug refractory) nausea and vomiting secondary to gastroparesis of diabetic or idiopathic etiology."  This – not treatment or cure of gastroparesis – is the intended use of Enterra Therapy.  The CDRH does not grant a HDE without a finding that the benefits of the therapy exceed the risk, and the medical rationale for the use of the device is sound.  21 U.S.C. § 360j.  The medical literature supports the FDA's finding.

In April 2006, the leading experts in the treatment of gastroparesis published a review of all of the literature relating to that treatment.  This document contains "areas developed by consensus agreement where clinical research trials remain lacking . . . ."  Abell, et al., "Treatment of gastroparesis: a multidisciplinary clinical review," 18 *Neurogastroenterol Motil* 263-283 (2006).  This review was performed by gastroenterologists, nutritionists, diabetologists, surgeons, pain management and psychology experts all of whom care for gastroparetics.  These "consensus opinions were formulated by the authors to facilitate management" of gastroparesis.  The consensus opinion regarding gastric electrical stimulation concluded that studies show that roughly three-quarters of patients implanted with Enterra Therapy had reductions in nausea and vomiting and did not need further surgery or other invasive treatment of their gastroparesis.  In the only sham-stimulation study, a statistically significant number of patients had less vomiting, and patients preferred the ON status to the OFF status by a "threefold margin."  In the open phase of this study, patients reported a 76% reduction in vomiting at 12 months.  The consensus found that in several other studies, Enterra Therapy "has been reported to improve nutritional status, limit the need for prokinetic and antiemetic medications, reduce the need for supplemental nutrition, decrease health-related costs" and improve the condition of diabetic gastroparetic patients.  One study shows 26% reduction in nausea and 44% reduction in vomiting persisting for up to 10 years after implantation.  The consensus found the research to be "encouraging."

Researchers at several centers have been conducting trials for a decade to test the effects of Enterra Therapy, and several articles have been published in peer-reviewed medical journals that are recent.  In one of the early studies, researchers found that the severity and frequency of nausea and vomiting was significantly improved at three months and sustained at twelve months.  Forster, et al., "Gastric Pacing is a New Surgical Treatment for Gastroparesis," 182 *American Journal of Surgery* 676 (Dec. 2001).  Subsequently, a multi-center clinical trial demonstrated an 80% diminution in nausea and vomiting for 97% of the subjects.  Additionally, these results were corroborated by an average weight gain of 5.5% at one year.  Abell, et al., "Gastric Electrical Stimulation in Intractable Symptomatic Gastroparesis," 66 *Digestion* 204 (Aug. 2002).  Long-term follow-up data confirmed improvement by short term, intermediate, and long-term measures with follow up to five years.  Abell, et al., "Gastric Electrical Stimulation for Gastroparesis Improves Nutritional Parameters at Short, Intermediate, and Long-Term Follow-up," 27 *Journal of Parenteral and Enteral Nutrition* 277 (2003).

---

[4] All documents referred to herein are enclosed.

BCBS of MS
July 22, 2009
Page 7 of 10

A recent study showed greatly decreased symptoms and hospitalizations for as long as three years. Lin, et al., "Symptom responses, long-term outcomes and adverse events beyond 3 years of high-frequency gastric electrical stimulation for gastroparesis," 18 *Neurogastroenterol Motil* 18-27 (2006). Yet another recent study conducted at USC Los Angeles showed that Enterra Therapy returned patients to normal oral nutritional intake, increased body mass index, and improved gastric emptying rates. Mason, et al., "Gastric Electrical Stimulation: An Alternative Surgical Therapy for Patients with Gastroparesis," 140 *Arch Surg* 841 (Sept. 2005).

Further, investigators also have released results of a randomized controlled double-blind crossover study involving 33 patients that demonstrated a statistically significant reduction in frequency of vomiting and improved quality of life in patients with intractable gastroparesis, and then additional results confirming these outcomes. Abell, et al., "Gastric Electrical Stimulation for Medically Refractory Gastroparesis," 125 *Gastroenterology* 421 (Aug. 2003); Abell, et al., "Gastric Electrical Stimulation for Gastroparesis Improves Nutritional Parameters at Short, Intermediate, and Long-Term Follow-up," 27 *Journal of Parenteral and Enteral Nutrition* 277 (2003).

A retrospective series in which demonstrated the long-term improvement of upper GI symptoms, nutritional status, glucose control, and reduced number of hospitalizations was demonstrated. Lin, et al., "Treatment of Diabetic Gastroparesis by High-Frequency Gastric Electrical Stimulation," 27 *Diabetes Care* 1071 (May 2004). The same investigators then went on in a retrospective study to demonstrate a statistically significant reduction in the use of prokinetic/antiemetic medications. Cutts, et al., Is gastric electrical stimulation superior to standard pharmacologic therapy in improving GI symptoms, healthcare resources, and long-term healthcare benefits?" 17 *Neurogastroenterol Motil* 35 (2005). Most recently, a group of German researchers have reported the results of a prospective single center study in which improved metabolic control in subjects with diabetic gastroparesis was demonstrated by reduced HbA1c levels in patients being managed with GES. van der Voort, et al., "Gastric Electrical Stimulation Results in Improved Metabolic Control in Diabetic Patients Suffering from Gastroparesis," *113 Exp Clinc Endocrinol Diabetes* 38 (2005).

Finally, a study comparing GES to traditional pharmacological study showed that GES results in both improved GI symptoms and decreased costs. Cutts, et al., Is gastric electrical stimulation superior to standard pharmacologic therapy in improving GI symptoms, healthcare resources, and long-term healthcare benefits?" 17 *Neurogastroenterol Motil* 35 (2005).

In short, the medical literature strongly supports the use of Enterra Therapy to treat nausea and vomiting secondary to gastroparesis.

In addition, Enterra Therapy is becoming the standard of care for nausea and vomiting secondary to gastroparesis. We enclose medical policies from several large insurers that recognize that Enterra Therapy is medically necessary in cases in which nausea and vomiting secondary to gastroparesis is refractory to drug therapies and is resulting in serious nutritional deficiencies, as is the case here. Furthermore, we enclose a Medicare bulletin listing all of the many insurance companies that have covered Enterra Therapy, along with decisions from both internal and external reviewers, including some for United Healthcare, that show that Enterra is being approved on a nearly routine basis. Note that the number of external appeals approving this device grows almost weekly;

BC 00173

BCBS of MS
July 22, 2009
Page 8 of 10

Independent reviewers are stating over and over that Enterra no longer can be treated as experimental or investigational, and that coverage must be granted. (*See, e.g.,* MCMC external reviews under General Motors benefit plan; U.S. Office of Personnel Management overruling of Mail Handlers Benefit Plan).

Indeed, Medicare in Mississippi pays for Enterra Therapy. In its policy stating the reasons for its denial of coverage found on its website, BCBS of MS directs us to www.msmedicare.com. However, upon searching that website for "gastric electrical stimulation," one receives a policy that states that Medicare ***will provide coverage for insertion of the Gastric Electrical Stimulator for gastroparesis or gastric dumping that is unresponsive to other forms of medical management.*** (Emphasis added). In other words, Medicare is paying for this device, contrary to BCBS of MS's assertion.

Thus, all of the materials submitted herewith, including much of the medical literature, weighs in favor of finding that Enterra Therapy is a medically accepted treatment for the nausea and vomiting secondary to gastroparesis.

### V.   GASTRIC ELECTRICAL STIMULATION IS MEDICALLY NECESSARY TO TREAT A POTENTIALLY LIFE-THREATENING CONDITION

Terri Paige Riley has suffered from idiopathic gastroparesis for some time, with symptoms beginning in 2003. (4/27/2004 Dr. Jackson office notes). It is moderate to severe, and it is constant and persistent. (6/17/2009 Dr. Jackson office notes). She has obtained relief with gastric electrical stimulation, but has suffered severe nausea, vomiting, abdominal pain, and nutritional deficits without it. (6/17/2009 Dr. Jackson office notes).

Before having the gastric electrical stimulator implanted, Ms. Riley tried all medical regimens, including Reglan, Erythromycin (including intravenous administration), Zelnorm, and even Domperidone, which is not FDA approved and has to be obtained from Canada. (June 9, 2005, February 17, 2005, June 17, 2005 Dr. Jackson office note). She has taken Phenergan for nausea, but was unable to tolerate it. (10/14/2004 Dr. Jackson office note). Her diet was restricted to liquids and food supplements. (April 7, 2005 Dr. Jackson office note).

In June 2005, she sought treatment at the University of Mississippi, where a temporary gastric pacemaker was placed and she was able to eat a hamburger and chicken as a result. (June 9, 2005 Dr. Jackson office note). Her symptoms returned when the temporary device was removed.

Ms. Riley had a permanent gastric electrical stimulator implanted in August 2005 as treatment for her gastroparesis. (August 15, 2005 operative report). The costs of this procedure were covered after her case was reviewed by an outside panel of three physicians who concluded that the Plan should cover the device, which it did.

The device was an unqualified success. On September 22, 2005, she told her gastroenterologist, Dr. Jackson, that she was "doing much better." "She states that it feels like her food is no longer taking up residence in her stomach. She states that she has had no further issues with nausea or vomiting." She was able to discontinue her medications.

BC 00174

There was objective evidence of the success of the device, as well.  An August 23, 2007 gastric emptying study showed normal gastric emptying, which was a tremendous improvement over a June 21, 2004 study, which showed only 34% emptying after 90 minutes.  August 2008 upper endoscopy showed that everything was normal except for evidence of chronic gastritis, which is to be expected due to her history.  Although the device was required to be readjusted several times in response to symptoms, Ms. Riley was able to work and lead an active life, with adequate nutrition.

Dr. Thomas Abell at the University of Mississippi – perhaps the most important gastric motility expert in the United States – has followed Ms. Riley's case.  He documented Ms. Riley's symptoms upon the failure of her first battery.  On October 29, 2007, Dr. Abell stated that her fatigue and nausea had increased greatly over the preceding two weeks.  When he interrogated the gastric stimulator (which he refers to as the box), he was unable to do so, thereby concluding that it was dead and the battery had to be replaced.  Two months earlier, Dr. Abell documented the fact that her gastric emptying was improved, and he increased the electrical current from her device.

In December 2007, because the battery in the device had ceased functioning, a replacement battery was implanted, also covered due to medical necessity.  (12/10/2007 operative report).  It, too, provided relief.  As recently as August 8, 2008, Ms. Riley was able to tolerate more foods.  (Dr. Jackson office note).

Now, it appears that her battery is dead again, and needs to be replaced.  It was interrogated on May 12, 2009 and was not responsive.  (Dr. Jackson office note).

When functioning, the device has worked well to control the nausea and vomiting secondary to gastroparesis.  (Gibson 5/19/2009 office note).  However, Dr. Jackson has documented persistent, severe symptoms more recently, with the device not functional.  "Associated symptoms include abdominal pain, dizziness, lightheadedness, loss of appetite, vomiting, weakness and constant relapsing nausea."  (6/17/2009 office note).  Dr. Jackson states that Ms. Riley has difficulty maintaining hydration, and is only taking 600-1000 calories per day.  As Dr. Jackson puts it, "until the gastric pacer can be repaired, the issues with malnutrition, dehydration, pain, fatigue and such will continue to be an issue most likely requiring recurrent and extended hospitalizations."  Her symptoms persist despite taking Compazine, Marinol, Domperidone, and Phenergan.  However, "[s]he has not been able to keep up with her po [i.e., food, liquid by mouth] intake due to the N/V [nausea and vomiting]."  (6/9/2009 Dr. Jackson office note).  Indeed, on June 9, Dr. Jackson admitted Ms. Riley to the hospital for rehydration and IV Erythromycin, and she remained hospitalized for three days.

During the period from June 19, 2009, when Ms. Riley's records were submitted to the Plan, and the date of this letter, Ms. Riley was unable to work at all.  She was given IV fluids, medication, and nutrition on an outpatient basis, and was hospitalized yet again for the better part of one week.  (7/20/2009 Dr. Jackson office notes).  Her doctors have now given her a choice between having the surgery regardless of BCBS of MS's position and having a port-a-cath inserted for better IV access because her veins are so weakened by her dehydration.  In order to have the battery in the device replaced without the Plan's approval, Ms. Riley will have to withdraw the necessary funds from her 401(k) account and then file claims with BCBS of MS while this and any subsequent appeals are pending.

BCBS of MS
July 22, 2009
Page 10 of 10

In short, Ms. Riley has a five to six year history of severe gastroparesis that has not responded to anything other than gastric electrical stimulation. When the pacer is operating, her symptoms are under control; when it is not, her symptoms are severe. Dr. Jackson has raised the specter of malnutrition, dehydration, pain and fatigue, resulting in recurrent and extended hospitalizations – hospitalizations that the Plan would pay for. There is no question that it would be less expensive and more effective to simply cover replacement of the battery so that Ms. Riley can get on with her life.

## VI.    CONCLUSION

In this case, we know gastric electrical stimulation works. It already is implanted. That distinguishes this case from all of the others that BCBS of MS denies as a matter of course based on outdated, inaccessible policies. If Mississippi had an external appeal mechanism, BCBS of MS would be overturned, as evidenced by the many appeal decisions that are enclosed here, including one overturning BCBS of Florida. If Ms. Riley were on Medicare, gastric electrical stimulation would be covered. Indeed, if the Plan did not shirk its responsibility under ERISA and conducted a review of BCBS of MS's decision, it would overrule BCBS of MS, just as the Chrysler and General Motors reviewers have overturned BCBS of Michigan. This is an extraordinarily compelling case involving a patient who already has the device implanted. There simply is no justification for refusing to cover the cost of a new battery.

For all of these reasons, implantation of a new battery should be approved. Thank you.

Sincerely,

Jennifer C. Jaff[*]

---

[*] Admitted to practice law in Connecticut, New York and the District of Columbia. Advocacy for Patients is a 501(c)(3) tax-exempt organization and does not charge patients for its services. Advocacy for Patients is funded by, among other sources, foundations and companies that engage in health care-related advocacy, manufacturing, service delivery and financing. A list of grantors will be furnished upon request.

BC 00176

**Medical Records Copy**
Printed: 9/9/2009 2:56:06 PM

 Saint Francis Hospital
Memphis
5959 Park Avenue Memphis, TN 38119


0001

TOTAL:

| ADMITTING DIAGNOSIS | | | Organ Donor | Living Will | Y | VAL | Clergy | Blood | Med Nec | Autopsy | DAYS STAY. | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| GASTROPARESIS | | | | | | | | | | CONSULT | | |

| ACCOUNT NO | STA/ROOM/BED | LR # | INT | ADMIT DATE | ADMIT TIME | DISCH DATE | DISCH TIME | AD | TYPE | FRG | VR | C/DISCH | LB BLOOD | REF/CD | ISO/CD | FI TYP | CLIN CD |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 028831600 | 17 | 00089930 | | 07/31/2009 | 09:06 | Jul 31 2009 | 23:59 | | | 56 | | | | | | OSD | OS |

| ADMITTING PHYSICIAN | | DR # | ATTENDING PHYSICIAN | | DR # | PRIMARY CARE PHYSICIAN | | DR # | ADM GROUP | |
|---|---|---|---|---|---|---|---|---|---|---|
| GIBSON, WILLIAM | | 7650 | GIBSON, WILLIAM | | 7650 | BREWER, R MICHAEL | | 303 | GIBSON, WILLIAM | |

**PATIENT**

| PATIENT LAST NAME, FIRST, MI | | | ALSO KNOWN AS (ALIAS) | | | DOB | | AGE | SEX | RACE | MS | LANGUAGE |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| RILEY, TERRI P | | | RILEY TERRI, TERRI | | | 03/23/1966 | | 43 | F | WHI | M | ENGLISH |

| PATIENT ADDRESS | | | | STATE | ZIP | COUNTY | EMP. STATUS |
|---|---|---|---|---|---|---|---|
| 331 CASCADE FALLS | | COLLIERVILLE | | TN | 38017-2345 | 01~ | 1 |

| HOME PHONE NUMBER | SSN # | PRV ADMT | RELIGION | CONDITION CODES | | | | OCCUR | LOS DAYS |
|---|---|---|---|---|---|---|---|---|---|
| (901)861-3559 | 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 | | BP | | | | | | |

| PATIENT EMPLOYER | | OCCUPATION | | | LENGTH/EMPLOYMENT | WORK PHONE NUMBER | |
|---|---|---|---|---|---|---|---|
| AOC, LLC | | | | | 1 | (662)895-2151 | |

| PATIENT EMPLOYER ADDRESS | | | CITY | | STATE | ZIP |
|---|---|---|---|---|---|---|
| 175 COMMERS RD | | | COLLIERVILLE | | TN | 38017 |

| PATIENT WORK LOCATION | | | PROD/CD | FROM | TO |
|---|---|---|---|---|---|
| | | | | | |

**GUARANTOR**

| GUARANTOR LAST NAME, FIRST, MI | | | SEX | PT RELATION | SSN # | HOME PHONE NUMBER | EMP. TYPE |
|---|---|---|---|---|---|---|---|
| RILEY, TERRI P | | | F | SELF | 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 | (901)861-3559 | |

| GUARANTOR ADDRESS | | | CITY | | STATE | ZIP | COUNTY |
|---|---|---|---|---|---|---|---|
| 331 CASCADE FALLS | | | COLLIERVILLE | | TN | 38017-2345 | US |

| GUARANTOR EMPLOYER | | OCCUPATION | | | LENGTH/EMPLOYMENT | WORK PHONE NUMBER | |
|---|---|---|---|---|---|---|---|
| AOC, LLC | | | | | | (662)895-2151 | |

| GUARANTOR'S EMPLOYER ADDRESS | | | CITY | | STATE | ZIP |
|---|---|---|---|---|---|---|
| 175 COMMERS RD | | | COLLIERVILLE | | TN | 38017 |

| GUARANTOR WORK LOCATION | | | | | |
|---|---|---|---|---|---|
| | | | | | |

| EMERGENCY DATA LAST NAME, FIRST, MI | | | HOME PHONE NUMBER | WORK PHONE NUMBER | PT REL |
|---|---|---|---|---|---|
| RILEY, JIM | | | (901)299-5022 | | SPOUSE |

**INSURANCE**

| INSURANCE 1 NAME | INSURANCE 1 ADDRESS 2 | | CONTRACT/POLICY # | PRE AUTHORIZATION # | FIN CLASS | PLAN NUMBER | TYPE | COB |
|---|---|---|---|---|---|---|---|---|
| BC OUT OF STATE PPO* | | | YAC868264547M | NPR DPS OBS | BO | 033 | | |
| INSURANCE 1 ADDRESS | | | CITY | STATE | ZIP | INSURANCE 1 PHONE # | | SUB DOB |
| PO BOX 180150 | | | CHATTANOOGA | TN | 37401 | (800)257-5825 | | 07/12/1967 |
| SUBSCRIBER NAME LAST, FIRST, MI | | | PATIENT RELATION | GROUP NAME | | GROUP NUMBER | | |
| RILEY, JAMES | | | SPOUSE | N CENTRAL ELECTRIC POWE | | 730230 | | |

| INSURANCE 2 NAME | INSURANCE 2 ADDRESS 2 | | CONTRACT/POLICY # | PRE AUTHORIZATION # | FIN CLASS | PLAN NUMBER | TYPE | COB |
|---|---|---|---|---|---|---|---|---|
| | | | | | | | | |
| INSURANCE 2 ADDRESS | | | CITY | STATE | ZIP | INSURANCE 2 PHONE # | | SUB DOB |
| | | | | | | | | |
| SUBSCRIBER NAME LAST, FIRST, MI | | | PATIENT RELATION | GROUP NAME | | GROUP NUMBER | | |
| | | | | | | | | |

| ACCIDENT LOCATION | | | ACCIDENT DATE | ACCIDENT TIME | ACCIDENT TYPE | ATTACH | ACCOMPANIED BY |
|---|---|---|---|---|---|---|---|
| | | | | | | 2 | |

| COLLECT ART/PROCEDURE | | | PROCEDURE DATE | POINT WN | I'VE NOTIFIED | POLICE DEPARTMENT NOTIFIED |
|---|---|---|---|---|---|---|
| | | | | | | |

**FHA/D.**

| | COMMENTS/DIAGNOSIS... |
|---|---|
| | 7731 GASTRIC PACEMAKER BATTERY EXCHANGE |

ACCT # 028831600

PRINTED BY: MClemmons                    DATE        9/9/2009

```
ISSUE DATE:   8/03/09       ST. FRANCIS HOSPITAL        REPORT-ID: ND0525
ISSUE TIME:   9:30                                            PAGE: 1
PATIENT NAME: RILEY, TERRI P          MR#:      989930    ADMIT: 07/31/09
STREET:       331 CASCADE FALLS       ACCT#:  028831600  DISCH: 07/31/09
CITY:         COLLIERVILLE            BIRTHDATE: 3/23/66  SEX:    F
STATE:        TN    ZIP: 38017        PHONE:   (901) 861-3559
```

**DISPOSITION INFORMATION**

```
    CODE      DESCRIPTION
    01        HOME
```

**PHYSICIAN INFORMATION**
    ATTENDING:
       GIBSON,WILLIAM
    ADMITTING:
       GIBSON,WILLIAM
    REFERRING:
       BREWER,R MICHAEL
    PRINCIPAL SURGEON:
       GIBSON,WILLIAM

**ICD-9-CM DIAGNOSIS INFORMATION**
```
    CODE      DESCRIPTION
    536.3     GASTROPARESIS
```

**ICD-9-CM PROCEDURE INFORMATION**
```
    CODE      DESCRIPTION
    86.96     INSERT/REPL OTH NEUROST
```

**ICD-9-CM REASON FOR VISIT INFORMATION **
```
    CODE      DESCRIPTION
    536.3     GASTROPARESIS
```

**CPT4 CODE INFORMATION**
```
    CODE      DESCRIPTION
    64590     INSRT/REDO PN/GASTR STIMUL
```

**CHARGE BASED HCPCn CODE**
```
    CODE      DESCRIPTION
    J2550     Promethazine hcl injection
    J3490     Drugs unclassified injection
    J3490     Drugs unclassified injection
    J2550     Promethazine hcl injection
    J3490     Drugs unclassified injection
    J3490     Drugs unclassified injection
    S0020     Injection, bupivicaine hydro
    J3490     Drugs unclassified injection
    J3490     Drugs unclassified injection
    J3490     Drugs unclassified injection
    J7120     Ringers lactate infusion
              *NODESC*
              *NODESC*
              *NODESC*
              *NODESC*
              *NODESC*
              *NODESC*
              *NODESC*
              *NODESC*
              *NODESC*
              *NODESC*
              *NODESC*
              *NODESC*
              *NODESC*
    J3590     Unclassified biologics
              *NODESC*
              *NODESC*
              *NODESC*
              *NODESC*
              *NODESC*
```

BC 00506

```
ISSUE DATE:   8/03/09      ST. FRANCIS HOSPITAL          REPORT-ID: ND0525
ISSUE TIME:   9:30                                            PAGE:  2
PATIENT NAME: RILEY, TERRI P           MR#:      969930   ADMIT: 07/31/09
STREET:       331 CASCADE FALLS        ACCT#:    028831600 DISCH: 07/31/09
CITY:         COLLIERVILLE             BIRTHDATE: 3/23/66  SEX:     F
STATE:        TN    ZIP: 38017         PHONE:    (901) 861-3559
```

```
              *NODESC*
              *NODESC*
              *NODESC*
              *NODESC*
              *NODESC*
              *NODESC*
              *NODESC*
              *NODESC*
              *NODESC*
              *NODESC*
              *NODESC*
              *NODESC*
              *NODESC*
              *NODESC*
              *NODESC*
    C1767     Generator, neuro non-recharg
    81025     *NODESC*
    36415     ROUTINE VENIPUNCTURE
              *NODESC*
              *NODESC*
              *NODESC*
              *NODESC*
    J1200     Diphenhydramine hcl injectio
    J1170     Hydromorphone injection
    J3010     Fentanyl citrate injeciton
    J1170     Hydromorphone injection
              *NODESC*
                       ** END OF REPORT **
```

 **Saint Francis Hospital**
Memphis



579-31

## SHORT SERVICE RECORD

Chief Complaint: Gastroparesis

History of Present Illness: 43 y.o. female needs battery change for nausea symptoms.

Significant Past Medical History/Previous Surgery: Gastric pacer

Allergies: Morphine, codeine, Zofran

| Health History (circle if applies and explain below) | | | | | |
|---|---|---|---|---|---|
| Kidney Disease | Heart Disease | Lung Disease | (GI Disease) | Liver Disease | Bleeding |
| Neuro Disorder | Cancer | Steroid Use | Tobacco Use | Diabetes | Drug Abuse   Alcohol   OTC/Herbals |
| Mental Illness | Mental Handicap | | | | |
| PEDs only: Prematurity   Developmental Delay   Immunizations Up to Date | | | | | |
| Exposure to Communicable disease within past 2 weeks | | | | | |

| Physical Examination ***Must be documented*** | WNL | Not Pertinent | Findings |
|---|---|---|---|
| General | ✓ | | |
| HEENT | ✓ | | |
| Chest | ✓ | | |
| Heart | ✓ | | |
| Abd/GI | ✓ | | |
| Extremities | ✓ | | |
| Neuro | ✓ | | |
| GYN/GU | | ✓ | |

| System review | WNL | Not Pertinent | Findings |
|---|---|---|---|
| General | | | daily nausea |
| HEENT | ✓ | | |
| Chest | ✓ | | |
| Heart | ✓ | | |
| Abd/GI | ✓ | | |
| Extremities | ✓ | | |
| Neuro | ✓ | | |
| GYN/GU | ✓ | | |

| Home Medications (Include OTC / Herbals)   (Include the Dose and number of times taken per day) |
|---|
| List reviewed |

If H&P performed within 30 days before admission, patient re-assessed within 24 hours prior to surgery  H&P update performed:
____ There have been no significant changes in the patient's condition since the date of the previous assessment
____ The following changes have occurred since the date of the previous assessment:
_____

Date: 7/31   Time: 10:56   Physician Signature: WC Gibson

| Discharge Information: Hospital Course (include discharge condition, instructions, follow-up) |
|---|
| |
| |

| Final Diagnosis: |
|---|
| D/C meds: |

Date:_____   Time:_____   Physician Signature:_____

**Short Service Form**
Page 1 of 1

R3/08



028831600

OPM MR#:00989930 DOB:03/23/1966
**RILEY, TERRI P  F 43**
GIBSON, WILLIAM 07/31/2009 -

SAINT FRANCIS   PRINTED BY: MCLemmons   DATE   9/9/2009

SAINT FRANCIS HOSPITAL
5959 PARK AVENUE
MEMPHIS, TN 38119

OPERATIVE NOTE

Patient:        RILEY, TERRI P
Med Rec#:       000989930
Encounter#:     28831600
Physician:      GIBSON,WILLIAM
Admit:          07/31/2009
Disch:              /  /
Job Number:     044176360

DATE OF PROCEDURE:  07/31/2009

PREOPERATIVE DIAGNOSIS:  Idiopathic gastroparesis.

POSTOPERATIVE DIAGNOSIS:  Idiopathic gastroparesis.

PROCEDURE:  Gastric pacemaker battery exchange.

ANESTHESIA:  General endotracheal.

COMPLICATIONS:  None.

ESTIMATED BLOOD LOSS:  Less than 25 cc.

INDICATIONS FOR PROCEDURE:  The patient is a 43-year old female
with a long history of idiopathic gastroparesis.  She originally
had her gastric pacemaker placed in 2005 with good results for 2
years.  Her battery subsequently deteriorated and when it was
replaced in 2007, she continued to have good results with virtual
absence of gastroparesis symptoms for 2 more years.  In recent
weeks, her battery has again deteriorated and her symptoms have
recurred.  She desired battery exchange for relief of her
symptoms with activity of her pacemaker again.  The risks,
benefits and alternatives of the operation were explained to her
preoperatively.  She understood and wished to proceed.

FINDINGS AT OPERATION:  The old battery was easily removed and
the pocket had a very normal appearance with 2 leads intact and
scarred into the fibrous capsule.  When the new pacemaker pulse
generator was placed, impedance was found to be excellent with a
level of 592 ohms.  The pacemaker was easily reprogrammed and
activated.

DESCRIPTION OF PROCEDURE:  After informed consent was obtained,
the patient was taken to the operating room and placed on the
operating table in the supine position.  Adequate general
endotracheal anesthesia was induced and the abdomen was prepped
and draped in the normal sterile fashion.  A final time-out was
conducted and Ancef was given within 1 hour of operation for
prophylactic use only and will be discontinued.  Sequential
compression devices were used for venous thromboembolism
prophylaxis.  The transverse incision overlying the existing

Page: 1

BC 00509

SAINT FRANCIS HOSPITAL
5959 PARK AVENUE
MEMPHIS, TN 38119

OPERATIVE NOTE

Patient:        RILEY, TERRI P
Med Rec#:       000989930
Encounter#:     28831600
Physician:      GIBSON,WILLIAM
Admit:          07/31/2009
Disch:          /   /
Job Number:     044176360

pulse generator was re opened and Bovie electrocautery was used
to divide the fibrous capsule and expose the surface of the pulse
generator.  It was easily removed from its pocket and the leads
were seen to be coiled in a good anatomic position underneath the
pulse generator.  The leads were released from the old pulse
generator and it was removed from the field and replaced by a new
one.

The leads were re-placed into the new pulse generator and
tightened with the screwdriver.  The pacemaker was then
interrogated and found to have an acceptable impedance value and
it was then reprogrammed and activated.  Current voltage at 7.0
with a pulse width of 330.  Its interval is 2 seconds on with 3
seconds off.

The wound was then irrigated with Kantrex-impregnated solution
and meticulous hemostasis was assured.  The wound was closed in 2
layers and dressed with Dermabond after the pulse generator had
been returned into the pocket and secured with a pair of Prolene
sutures.  The patient is currently being awakened in the
operating room and transferred to the recovery room as expected
shortly.  She remains in good condition and all sponge and
instrument counts are correct.

WILLIAM GIBSON, MD

TIME: _____
DATE: _____

D:  07/31/2009 12:07 CST
T:  07/31/2009 14:45 CST
D#:00111296/JLG881252

Page: 2
Authenticated by WILL GIBSON, MD On 8/03/09 9:17:30 AM Central Time

PRINTED BY: MClemmons          DATE     9/9/2009

BC 00510

```
                        SAINT FRANCIS HOSPITAL
           JUSTIN C. ADLER, M.D. DIRECTOR OF LABORATORY        PAGE: 1
                  5959 PARK AVE., MEMPHIS, TENNESSEE

     NAME: RILEY,TERRI P        DOB: 03/23/1966    AGE: 43Y   SEX: F
                                LOC: OPS           ACCT:028831600
     MR:989930                  ADMIT: 07/31/2009  ADMIT DR:
     ATT #:7650                                    ATTEND DR: GIBSON,WILLIAM



       ******************** MISCELLANEOUS URINES *********************

     DAY:                       1
     DATE:                      07/31/09
     TIME:                      0923                   NORMAL    UNITS

     URINE HCG                  NEGATIVE                NEG
```

END OF REPORT

**Saint Francis Hospital**
Memphis

**OUTPATIENT SERVICES**
**POST OPERATIVE INSTRUCTIONS**



*679-14*

**YOUR ARE URGED TO FOLLOW CAREFULLY THE FOLLOWING INSTRUCTIONS:**

☒ Make an appointment to see your physician / in/on _A.S. Indicated_

☒ Observe the operative areas for signs of excessive bleeding. (slow general oozing that saturates the dressing completely or frank bright red bleeding.) in either case, apply pressure to the area, elevate it if possible and contact your physician at once!

☐ Observe the affected extremity for circulation or nerve impairment:
   Change in color          Coldness
   Numbness or tingling     Increased pain
   If any of these signs or symptoms are present, call your physician at once!

☒ Observe the operative areas for signs of infection:
   Increased pain           Swelling
   Redness                  Foul odor
   These signs and symptoms usually become apparent in 36 to 48 hours. If present, contact your physician.

☒ Keep the operative areas clean and dry. Do not remove the dressing unless instructed to do so by your physician.
   _OK TO Shower Tomorrow_

☐ Keep the operative site elevated for the next 12 to 24 hours.

☐ Apply ice to the operative site as directed.

☐ Avoid stress to the suture line such as pulling, pushing, etc.

☐ May change the nasal tip dressing as needed and as demonstrated.

☐ Avoid sneezing or blowing the nose.

☐ Keep water out of the ears.

**SEDATION:**

If you had general anesthesia or local anesthesia with sedation, please pay particular attention to the following instructions:

1. Do not drink alcoholic beverages, including beer for 24 hours. Alcohol enhances the effects of anesthesia and sedation.

2. Do not drive a motor vehicle, operate machinery or power tools for 24 hours. If a child, no bicycle riding, skateboards gymsets, etc., for 24 hours

3. Do not make important decisions or sign important papers for 24 hours.

4. You may experience lightheadedness, dizziness and sleepiness following surgery. Please DO NOT STAY ALONE. A responsible adult should be with you for this 24 hour period.

5. Rest at home with moderate activity as tolerated. It may not be necessary to go to bed; however, it is important to rest for 24 hours following general anesthesia.

6. Progress slowly to a regular diet unless your physician has instructed you otherwise. Start with liquid such as soft drinks, then soup and crackers gradually working up to solid foods.

7. Certain anesthetics and pain medications may produce nausea and vomiting in certain individuals. If nausea becomes a problem at home, call your physician. In the meantime, rest or sleep on your side to avoid accidently inhaling material that you may vomit.

**POST OPERATIVE TELEPHONE CALL:**

A representative from the Outpatient Service Department may call you by telephone a few days after surgery. Do not be alarmed. This is a routine call to find out how you are progressing after your surgery.

**REGARDING MEDICATIONS:**

1. If your physician ordered pain medication, take it as directed. Do not drive or operate machinery or power tools while taking this medication.

2. Check with your physician regarding medications which you were taking prior to surgery.

If you should experience difficulty in breathing, bleeding that you feel is excessive, persistent nausea or vomiting, any pain that is unusual, swelling or fever, please call your physician. If you find that you cannot contact your physician but feel that your signs and symptoms warrant a physician's attention, go to an Emergency Room which is closest to you.

**OTHER INSTRUCTIONS:** _Follow up in 2 weeks_

I hereby accept, understand, and can verbalize/demonstrate these instructions:

_____        _____
Witness                          Patient or Guardian

_2/1/9_          _1430_          _____
Date             Time            Relationship to Patient

*White - Chart*
*Canary - Patient*

FORM #679-14   Rev. 3/05
MMS #44658

DSO MR#00999930 DOB:03/23/1968
RILEY, TERRI P 43 F
GIBSON, WILLIAM 679 V2005
D288:11600

PRINTED BY: MClemmons                    DATE        9/9/2009

BC 00513

PATHOLOGY REPORT
ST FRANCIS HOSPITAL
5959 Park Avenue
Memphis, TN 38119
(999) 123-4567

Print Date: 08/03/2009
Print Time: 10:43:14

Discharge Date: 07/31/2009

Patient Name: RILEY, TERRI P
Account No: 028831600
NS: OS    Room:    -

MedRecNo: 000989930          Sex: F
Admitted: 07/31/2009         DOB: 03/23/1966
Doctor Name:

--------------------------------------------------------------------
Pathology: Tissue Request                          Case# SC09-5010
--------------------------------------------------------------------

Date Collected  07/31/2009    Collection Time  00:00


SURGICAL PATHOLOGY REPORT

Collected Date and Time  7/31/2009 00:00
Received Date and Time  07/31/2009 00:00
Accession Number  SC09-5010
Submitting MD  WILLIAM GIBSON MD


DIAGNOSIS:
A.  Neurostimulator explant:
    Neurostimulator explant, gross examination only.


Electronically signed by ALLEN D BERRY MD
Verified:  8/3/2009 10:38
df/ADB

SPECIMEN SOURCE:
A: Neurostimulator explant

CLINICAL INFORMATION:
Battery depletion of gastric neurostimulator.


GROSS EXAMINATION:
A.  Neurostimulator explant:  Received is a metallic generating device that is
6.0 x 5.5 x 1.0 cm. On one surface is written Medtronic Enterra NHU102432H.
Gross only.


an/FH


--------------------------------------------------------------------
Patient Name: RILEY, TERRI P
Pathology: Tissue Request                          Page: 1

BC 00514

 **Saint Francis Hospital** Memphis



1000-509

| Patient Criteria | NPO | Rt. Meds | No Labs | HCG | EKG | K+ | Glu | CBC/ BMP | PT/ INR | CXR | LFT | TSH t3 t4 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1. At least 8 hrs. prior to O.R. | ♦ | | | | | | | | | | | |
| 2. Takes reflux, ulcer, cardiac, antihypertensives, respiratory, and/or seizure meds, in A.M. of O.R. with sip of water. | | ♦ | | | | | | | | | | |
| 3. Healthy pediatric. | | | ♦ | | | | | | | | | |
| 4. Minor procedures under local anesthesia with IV sedation unless patient meets criteria in 6,9,10,12,15 or 16. | | | ♦ | | | | | | | | | |
| 5. Females of childbearing capability (day of surgery). | | | | ♦ | | | | | | | | |
| 6. Cardiac risk factors: CHF, CAD, PVD, HTN, MI, diabetes, ICD, pacemaker, 50 yrs. or older, hyperlipidemia, family Hx of MI under 50 y/o. A copy of an EKG done within 3 months of surgery is acceptable on stable patients with these risk factors. | | | | | ♦ | | | ♦ | | | | |
| 7. Chemo or radiation therapy within 1 yr. | | | | | ♦ | | | ♦ | | ♦ | | |
| 8. Smokes 15-pack year. | | | | | ♦ | | | | | ♦ | | |
| 9. Diuretics or dialysis (day of surgery). | | | | | | | | | | | | |
| 10. Accucheck on diabetics and patients undergoing heart surgery (day of surgery). | | | | | | | ♦ | | | | | |
| 11. On Antihyparthyroidism meds. | | | | | | | | | | | | ♦ |
| 12. On Coumadin or Hx of bleeding disorders (day of surgery). | | | | | | | | | ♦ | | | |
| 13. Hx. of alcoholism, liver disease, morbid obesity, drug abuse, or on antilipid meds. | | | | | | | | | | | ♦ | |
| 14. General, regional, IV sedation, retinal bulbar block or taking weight reduction meds. | | | | | | | | ♦ | | | | |
| 15. Dyspnea at rest or acute respiratory distress. | | | | | ♦ | | | | | ♦ | | |
| 16. Chest discomfort since last cardiac workup, get previous EKG for comparison. | | | | | | | | | | | | |

Lab work must be within 30 days of procedure

Call Anesthesia at 3465 or 2100 regarding abnormal test results.

Nurse Signature: _____

Date: 1/31/09   Time: 920

### OUTPATIENT SURGICAL PREOPERATIVE PROTOCOL
Page 1 of 1

R12/07

028831600

OPM MR#00989930 DOB:03/23/1966
RILEY, TERRI P 43 F
GIBSON, WILLIAM 01/31/2009
SAINT FRANCIS HOSPITAL MEMPHIS

MR# DC

PRINTED BY: MClemmons          DATE   9/9/2009

BC 00515



Jul. 17. 2009  0:37AM   MEMPHIS SURGERY ASSOC ST FRANCIS          No. 4107   P. 1/1

028831600

USD MR#00989930  DOB:03/23/1966
RILEY, TERRI P 43 F
GIBSON, WILLIAM 07/31/2009

5959 Park Avenue
Memphis, Tennessee 38119

7.17.09

7/31

Terri Riley
DB 3-23-66

Addressograph

| DATE & TIME | PHYSICIAN'S ORDERS | DATE & TIME | PROGRESS RECORD |
|---|---|---|---|
| | 1. Ancef 1gm IV to be given 30" minutes prior to surgery | | |
| | 2. SCD's on pt to OR | | |
| | 3. Permit for: Gastric Pacemaker Battery change   3-17-09 | | 7.31-09 |
| 7-31-09 1030 | We C gtn na Rept K+ now T.O. Dr. Sha_ | | |

POOR ORIGINAL

Medications dispensed in accordance with the hospital formulary system.

PRINTED BY: MClemmons          DATE      9/9/2009

BC 00516

**SAINT FRANCIS HOSPITAL**
5059 Park Avenue
Memphis, Tennessee 38119

OPM MR#00989930 DOB:03/23/1966
RILEY, TERRI P 43 F
GIBSON, WILLIAM 07/31/2009
SAINT FRANCIS HOSPITAL MEMPHIS

028831900

*Addressograph*

Terri Paiga Riley (3-23-66)

| DATE & TIME | PHYSICIAN'S ORDERS | DATE & TIME | PROGRESS RECORD |
|---|---|---|---|
| | D/c Full Length SCD's & TED's | | |
| | ※ Please use Calf SCD's to OR C pt. | | |
| | ( Surg. 7.31.09) | | |
| | Dr. Wm. C. Gibson | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

POOR ORIGINAL

Medications dispensed in accordance with the hospital formulary system.

PRINTED BY: MClemmons       DATE    9/9/2009

BC 00517

 **Saint Francis Hospital**
Memphis



1000-212

| PHYSICIAN'S ORDERS | PROGRESS RECORD |
|---|---|

**PHYSICIAN'S ORDERS**

☐ In-Patient Admit

☐ Observation Status

☑ Return to Out-Patient Care

☑ Discharge when OPS criteria met

To PACU, then SDS, then home
s/p gastric pacemaker battery exchange
stable
Diet as tolerated
Resume home meds
Darvocet prn
ok to shower beginning tomorrow.
F/u c me in 2 weeks.

*W. Gibson*

3B
*Thomas Brauwela*
7/31/09
1220

Physician Signature: _____

Time: _____ Date: _____

**PROGRESS RECORD**

Date: 7/31   Time: 12 pm

Surgeon: W. Gibson

Assistant(s): J. Riley

Anesthesia Provider: Patil

Pre-Op Diagnosis: Gastroparesis

Procedure: Gastric pacemaker battery change

Findings: Normal pocket.
Leads intact

Specimen/Tissue: Ø

EBL: < 5cc

Complications: Ø

Post-Op Diagnosis: same

Physician Signature: *W. Gibson*

Time: _____ Date: _____

**DO NOT USE ABBREVIATIONS**
Q.D., Q.O.D., MS, MSO4, U or IU, MgSO4, ug, zero after decimal
point, no zero before decimal dose, A.S., A.D., A.U., O.S., O.D.,
O.U.

Medications dispensed in accordance with the hospital formulary system.

**Post Operative Progress Note**
Page 1 of 1

R2/08

028831800

OPM MR#00989930 DOB:03/23/1966
RILEY, TERRI P  F 43
GIBSON, WILLIAM 07/31/2009 -

PRINTED BY: MClemmons        DATE        9/9/2009

BC 00518

 **Saint Francis Hospital**
Memphis



1000-45

## ANESTHESIA ORDERS FOR PACU

1.  **PAIN:**
    - ☐ Hydromorphone 0.5 to 1mg IV every 5 minutes PRN up to 2mg. *done*
    - ☐ Morphine 1 to 4mg IV every 5 minutes up to 15mg.
2.  **NAUSEA:**
    - ☐ Ondansetron 4mg IV over 2 minutes; may repeat once after 30 minutes if no response.
    - ☑ Promethazine 12.5mg IV one dose only. *(done)*
3.  **ITCHING:**
    - ☐ Diphenhydramine 12.5mg IV; may repeat in 10 minutes if needed. Max dose 25mg.
4.  **SHIVERING:**
    - ☐ Meperidine 12.5mg IV; may repeat in 10 minutes. Max dose 25mg.
5.  **IV FLUIDS:**
    - ☑ Maintain current IV fluids at TKO rate.
6.  **DIABETES:**
    - ☐ Accucheck on arrival to PACU.
    - ☐ Treat according to Sliding Scale insulin protocol.
    - ☐ Notify MD/CRNA if blood glucose is less than 70mg or greater than 200mg.
    - ☐ Repeat accucheck in _____ minutes after any intervention.
7.  **HYPERTENSION:**  Treat with the following medications if SBP is greater than 160mmHg.
    - ☐ Labetolol 5 -10mg IV; may repeat every 10 minutes. Max dose 40mg or HR is less than 60.
    - ☐ Hydralazine 10mg IV every 30 minutes. Max dose 20mg.
    - ☐ Metoprolol 1mg IV every 5 minutes. Max dose 5mg or HR is less than 60.
8.  **RESPIRATORY:**
    - ☑ Administer oxygen per PACU policy.
    - ☑ Use the Respiratory Weaning Protocol.
    - ☐ ABG's in 30 minutes post extubation.
    - ☐ Albuterol aerosol treatment 2.5mg UD; may repeat in 30 minutes unless HR greater than 110.
    - ☐ Racemic Epinephrine aerosol treatment UD.
    - ☐ Call Anesthesia immediately if:
        SAQ₂ is less than 90%.
        Respiratory rate is greater than 30/minute.
        Any signs of respiratory distress.
9.  **DISCHARGE ORDERS:**
    - ✓ Discharge from PACU when discharge criteria have been met.
    - Discontinue above orders 1 through 8 upon discharge from PACU.

MD/CRNA: _____ Date: 7/31/09 Time: 1230

## ANESTHESIA POSTOP ORDERS FOR INPATIENT UNITS

- ☐ If SAO2 is less than 90% and no contraindication exists:
    Give O₂ BNC at 2 to 4 liters/minute.
    Monitor and record SAO₂ every 4 hours for 24 hours.

MD/CRNA: _____ Date: _____ Time: _____

Medication dispensed in accordance with the hospital formulary system.

**Anesthesia PACU Orders**
Page 1 of 1

R6/07

028831800

OSO  MR#00989930  DOB:03/23/1966
RILEY, TERRI P 43 F
GIBSON, WILLIAM 07/31/2009

IR# DOB:

PRINTED BY: MClemmons        DATE        9/9/2009

BC 00519



# Saint Francis Hospital
## Memphis



`*601-709A*`

**Patient has been instructed on medications as listed.**

## Record of Home Medications and Herbal Supplements

| # | Medication | · Dose | Dose Schedule (frequency) | (✓) Medications to Continue During Hospitalization Yes | No | |
|---|---|---|---|---|---|---|
| 1 | Phenergan | 25 mg | 2-3 x Day | ☐ | ☐ | 7-30-09 |
| 2 | Ambien | 10 mg | nightly | ☐ | ☐ | 7-30-09 |
| 3 | Xanax | 1 mg | nightly | ☐ | ☐ | 7-30-09 |
| 4 | Dilaudid | 2 mg | q 6-8 hrs prn | ☐ | ☐ | 1 mg 7-30-09 |
| 5 | | | | ☐ | ☐ | |
| 6 | | | | ☐ | ☐ | |
| 7 | | | | ☐ | ☐ | |
| 8 | | | | ☐ | ☐ | |
| 9 | | | | ☐ | ☐ | |
| 10 | | | | ☐ | ☐ | |
| 11 | | | | ☐ | ☐ | |
| 12 | | | | ☐ | ☐ | |
| 13 | | | | ☐ | ☐ | |
| 14 | | | | ☐ | ☐ | |
| 15 | | | | ☐ | ☐ | |

**For Surgery Patients - Last Beta-Blocker taken at:**    Date:    Time:    **N/A**

MD Notified: _____

Nurse Signature & Read Back by: _____ Time: _____ Date: _____

MD Signature _____ Time: _____ Date: _____

**FAX to PHARMACY. Place this page in the PHYSICIAN'S ORDERS section.**

| Set 1 of 2 | Top Page: | Chart (Phy Orders) | Third Page: Chart |
| | Second Page: | Patient / Facility | |

Rev. 5/09



028831600

OSD MR#00989930 DOB:03/23/1966
RILEY, TERRI P 43 F
GIBSON, WILLIAM D/23120008
DATE 9/9/2009

CERF P 30984PE    PRINTED BY: MClemmons

BC 00520

# ...ancis Hospital
...nis

| | | INITIALS |
|---|---|---|
| | | Sending Dept. Nurse / Receiving Dept. Nurse |

...CATION BRACELET: (Y) N   ALLERGY BRACELET: (Y) N/A

...ERGIES: _morphine  Codeine  Zofran_

| | | |
|---|---|---|
| PROCEDURE: _Gastric Pacemaker Battery Exchange_ | | |
| PROCEDURE CONSENT SIGNED and WITNESSED   ✓ Yes | | |
| NPO AFTER: _MdNdt - 7-30-0?_ | | |
| H & P ON CHART (older than 30 days from admit date need new H&P; within 30 days need update) | | |
| MAR PLACED IN CHART | | |
| OPERATIVE AREA PREPPED AND/OR CLIPPED | | |
| VITAL SIGNS: B/P: 100/60 P: 80  R: 16  T: 98.8 | | |
| HT:5'3"  WT: 113.7  BMI: 19.6 | | |
| ISOLATION STATUS:   NO   YES   TYPE: | | |
| CIRCLE APPLICABLE ITEMS | | |
| GLASSES / CONTACTS / DENTURES / PARTIALS REMOVED | | |
| JEWELRY / HAIRPINS / UNDERGARMENTS REMOVED | | |
| OTHER PROSTHESIS REMOVED: | | |
| LAB WORK DATE/TIME DRAWN: | | |
| CBC 7/20/05   DIFF   CMP 7/20/09   BMP | | |
| BUN   CR   UA   K+ | | |
| PT   APTT   PFT   FIBRINOGEN | | |
| PREGNANCY TEST: (Yes)  No  N/A 7/31/0  WAIVER SIGNED:  Yes  No | | |
| OTHER LAB: | | |
| TYPE / CROSSMATCHED R#   BLOOD BRACELET / PERMIT | | |
| CXR   OTHER RADIOLOGY   EKG 7/8/05 | | |
| ACCUCHECK RESULTS:   TIME: | | |
| ABNORMAL RESULTS REPORTED TO Surgeon or Anesthesia   DATE/TIME: 7-31-09  1630 | | |
| OTHER PERTINENT INFO: | | |
| BETA-BLOCKER LAST DOSE TAKEN:   DATE/TIME:   ☐ NA | | |
| *If on home beta-blocker all surgery patients should receive home dosage within 24hrs prior to surgery. If dose hasn't been taken call Anesthesia for one time pre-op order. | | |
| *All cardiovascular surgery patients should receive beta-blocker within 24hrs pre-op. Or documentation of contraindication. | | |
| SCD's / TED's | | |
| VOIDED / CATHETERIZED TIME: | | |
| INT/IV SITE:   GAUGE:   IV:   RATE:   LTC: | | |
| INT/IV SITE:   GAUGE:   IV:   RATE:   LTC: | | |
| PRE-MED:   ROUTE:   TIME: | | |
| PRE-MED:   ROUTE:   TIME: | | |
| PRE-MED:   ROUTE:   TIME: | | |
| TIME/NAME OF PROCEDURAL STAFF NOTIFIED PATIENT READY: 8am - 1020 | | |
| TIME PATIENT LEFT UNIT:   FAMILY LOCATION: 3D   PHONE #: 765-2307 | | |
| NURSE SIGNATURE: | | |
| NURSE SIGNATURE: | | |

BOLDED AREA VERIFICATION REQUIRED BY RN

**PRE-PROCEDURE CHECK LIST**
Page 1 of 2

R06 / 09

028831600
OPM MR#00989930 DOB:03/23/1966
**RILEY, TERRI P  F 43**
GIBSON, WILLIAM 07/31/2009

PRINTED BY: MClemmons      DATE    9/9/2009

 

# Saint Francis Hospital
## Memphis

660-18

| BMI | 19 | 20 | 21 | 22 | 23 | 24 | 25 | 26 | 27 | 28 | 29 | 30 | 31 | 32 | 33 | 34 | 35 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Height (inches) | Body Weight (pounds) | | | | | | | | | | | | | | | | |
| 58 | 91 | 96 | 100 | 105 | 110 | 115 | 119 | 124 | 129 | 134 | 138 | 143 | 148 | 153 | 158 | 162 | 167 |
| 59 | 94 | 99 | 104 | 109 | 114 | 119 | 124 | 128 | 133 | 138 | 143 | 148 | 153 | 158 | 163 | 168 | 173 |
| 60 | 97 | 102 | 107 | 112 | 118 | 123 | 128 | 133 | 138 | 143 | 148 | 153 | 158 | 163 | 168 | 174 | 179 |
| 61 | 100 | 106 | 111 | 116 | 122 | 127 | 132 | 137 | 143 | 148 | 153 | 158 | 164 | 169 | 174 | 180 | 185 |
| 62 | 104 | 109 | 115 | 120 | 126 | 131 | 136 | 142 | 147 | 153 | 158 | 164 | 169 | 175 | 180 | 186 | 191 |
| 63 | 107 | 113 | 118 | 124 | 130 | 135 | 141 | 146 | 152 | 158 | 163 | 169 | 175 | 180 | 186 | 191 | 197 |
| 64 | 110 | 116 | 122 | 128 | 134 | 140 | 145 | 151 | 157 | 163 | 169 | 174 | 180 | 186 | 192 | 197 | 204 |
| 65 | 114 | 120 | 126 | 132 | 138 | 144 | 150 | 156 | 162 | 168 | 174 | 180 | 186 | 192 | 198 | 204 | 210 |
| 66 | 118 | 124 | 130 | 136 | 142 | 148 | 155 | 161 | 167 | 173 | 179 | 186 | 192 | 198 | 204 | 210 | 216 |
| 67 | 121 | 127 | 134 | 140 | 146 | 153 | 159 | 166 | 172 | 178 | 185 | 191 | 198 | 204 | 211 | 217 | 223 |
| 68 | 125 | 131 | 138 | 144 | 151 | 158 | 164 | 171 | 177 | 184 | 190 | 197 | 203 | 210 | 216 | 223 | 230 |
| 69 | 128 | 135 | 142 | 149 | 155 | 162 | 169 | 176 | 182 | 189 | 196 | 203 | 209 | 216 | 223 | 230 | 236 |
| 70 | 132 | 139 | 146 | 153 | 160 | 167 | 174 | 181 | 188 | 195 | 202 | 209 | 216 | 222 | 229 | 236 | 243 |
| 71 | 136 | 143 | 150 | 157 | 165 | 172 | 179 | 186 | 193 | 200 | 208 | 215 | 222 | 229 | 236 | 243 | 250 |
| 72 | 140 | 147 | 154 | 162 | 169 | 177 | 184 | 191 | 199 | 206 | 213 | 221 | 228 | 235 | 242 | 250 | 258 |
| 73 | 144 | 151 | 159 | 166 | 174 | 182 | 189 | 197 | 204 | 212 | 219 | 227 | 235 | 242 | 250 | 257 | 265 |
| 74 | 148 | 155 | 163 | 171 | 179 | 186 | 194 | 202 | 210 | 218 | 225 | 233 | 241 | 249 | 256 | 264 | 272 |
| 75 | 152 | 160 | 168 | 176 | 184 | 192 | 200 | 208 | 216 | 224 | 232 | 240 | 248 | 256 | 264 | 272 | 279 |
| 76 | 156 | 164 | 172 | 180 | 189 | 197 | 205 | 213 | 221 | 230 | 238 | 246 | 254 | 263 | 271 | 279 | 287 |

| BMI | 36 | 37 | 38 | 39 | 40 | 41 | 42 | 43 | 44 | 45 | 46 | 47 | 48 | 49 | 50 | 51 | 52 | 53 | 54 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Height (inches) | Body Weight (pounds) | | | | | | | | | | | | | | | | | | |
| 58 | 172 | 177 | 181 | 186 | 191 | 196 | 201 | 205 | 210 | 215 | 220 | 224 | 229 | 234 | 239 | 244 | 248 | 253 | 258 |
| 59 | 178 | 183 | 188 | 193 | 198 | 203 | 208 | 212 | 217 | 222 | 227 | 232 | 237 | 242 | 247 | 252 | 257 | 262 | 267 |
| 60 | 184 | 189 | 194 | 199 | 204 | 209 | 215 | 220 | 225 | 230 | 235 | 240 | 245 | 250 | 255 | 261 | 266 | 271 | 276 |
| 61 | 190 | 195 | 201 | 206 | 211 | 217 | 222 | 227 | 232 | 238 | 243 | 248 | 254 | 259 | 264 | 269 | 275 | 280 | 285 |
| 62 | 196 | 202 | 207 | 213 | 218 | 224 | 229 | 235 | 240 | 246 | 251 | 256 | 262 | 267 | 273 | 278 | 284 | 289 | 295 |
| 63 | 203 | 208 | 214 | 220 | 225 | 231 | 237 | 242 | 248 | 254 | 259 | 265 | 270 | 278 | 282 | 287 | 293 | 299 | 304 |
| 64 | 209 | 215 | 221 | 227 | 232 | 238 | 244 | 250 | 256 | 262 | 267 | 273 | 279 | 285 | 291 | 296 | 302 | 308 | 314 |
| 65 | 216 | 222 | 228 | 234 | 240 | 246 | 252 | 258 | 264 | 270 | 276 | 282 | 288 | 294 | 300 | 306 | 312 | 318 | 324 |
| 66 | 223 | 229 | 235 | 241 | 247 | 253 | 260 | 266 | 272 | 278 | 284 | 291 | 297 | 303 | 309 | 315 | 322 | 328 | 334 |
| 67 | 230 | 236 | 242 | 249 | 255 | 261 | 268 | 274 | 280 | 287 | 293 | 299 | 306 | 312 | 319 | 325 | 331 | 338 | 344 |
| 68 | 236 | 243 | 249 | 256 | 262 | 269 | 276 | 282 | 289 | 295 | 302 | 308 | 315 | 322 | 328 | 335 | 341 | 348 | 354 |
| 69 | 243 | 250 | 257 | 263 | 270 | 277 | 284 | 291 | 297 | 304 | 311 | 318 | 324 | 331 | 338 | 345 | 351 | 358 | 365 |
| 70 | 250 | 257 | 264 | 271 | 278 | 285 | 292 | 299 | 306 | 313 | 320 | 327 | 334 | 341 | 348 | 355 | 362 | 369 | 376 |
| 71 | 257 | 265 | 272 | 279 | 286 | 293 | 301 | 308 | 315 | 322 | 329 | 338 | 343 | 351 | 358 | 365 | 372 | 378 | 385 |
| 72 | 265 | 272 | 279 | 287 | 294 | 302 | 309 | 316 | 324 | 331 | 338 | 346 | 353 | 361 | 368 | 375 | 383 | 390 | 397 |
| 73 | 272 | 280 | 288 | 295 | 302 | 310 | 318 | 325 | 333 | 340 | 348 | 355 | 363 | 371 | 378 | 386 | 393 | 401 | 408 |
| 74 | 280 | 287 | 295 | 303 | 311 | 319 | 326 | 334 | 342 | 350 | 358 | 365 | 373 | 381 | 389 | 396 | 404 | 412 | 420 |
| 75 | 287 | 295 | 303 | 311 | 319 | 327 | 335 | 343 | 351 | 359 | 367 | 375 | 383 | 391 | 399 | 407 | 415 | 423 | 431 |
| 76 | 295 | 304 | 312 | 320 | 328 | 336 | 344 | 353 | 361 | 369 | 377 | 385 | 394 | 402 | 410 | 418 | 426 | 435 | 443 |

**PRE-PROCEDURE CHECK LIST**
**Page 2 of 2**



028931600

OPM MR#00989930 DOB:03/23/1966

**RILEY, TERRI P   F 43**
GIBSON, WILLIAM 07/31/2009

R11/07

PRINTED BY: MClemmons          DATE      9/9/2009

BC 00522

 **Saint Francis Hospital**

page #05ID
7/31/9

(307)



*665-03*

## PACU RECORD SECOND SHEET

| TIME | B/P | P | R | TEMP | SaO₂ | Pain 0-10 | ACT | RESP | C₀ | NEURO | Dr&Sed | MEDS + LAB · TX | OBSERVATIONS |
|------|-----|---|---|------|------|-----------|-----|------|-----|-------|--------|-----------------|--------------|
| 1304 | | | | | | | | | | | | Benadryl 25mg IV for c/o itching face — C/o Swell in | C/o itching face & redness or rash |
| 1314 | 108/68 | 66 | 10 | 97.1 TR | 100% | p | 2 | 2 | 2 | 2 | 2 | | BBS equal and clear EFg25R dermabond dressing to (B) lower abd dry and intact abdomen soft and pliable c/o pain nausea and itching relieved c̄ meds condition stable to SDS |

(Patient Information In Area Below)

FORM NO. 665-03,  REV. 106
IMMS # 127333

02883 1600
OSD MR#00989930  DOB:03/23/1966
RILEY, TERRI P 43 F
GIBSON, WILLIAM 07/31/2009
SAINT FRANCIS HOSPITAL MEMPHIS

| TIME | B/P | P | R | TEMP | SaO₂ | Pain 0-10 | ACT | RESP | Cir | NEURO | O₂Sat | MEDS 4·LAB·TX | OBSERVATIONS |
|------|-----|---|---|------|------|-----------|-----|------|-----|-------|-------|-------------|--------------|
|  |  |  |  |  |  |  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |  |  |  |  |  |  |

BC 00524

SURGEON: Dr. Gibson
ANESTHESIOLOGIST/CRNA: Dr. Puhl
OPERATION: Gastric Neuro Stimulator
Battery Change

(307)

*665-01*

☑ Pulse ox.  ☐ EKG  ☐ Ethismap  ☐ ART Line  ☐ PA Line  ☐ Warming device  ☐ Skin Temp. Sensor  ☐ Side rails up  X2

| Gen) Spinal/Epidural | MAC/Local | Time Arr. 234 | REMARKS: See Chart |
|---|---|---|---|

| Date: 7/31/9 | Type O2 Used: | % | L/M | TV | RATE | Peep | Started | Dc'd | Airway Device (s): Natural |
|---|---|---|---|---|---|---|---|---|---|
| Pt. Ident: yes | | 8m | | 10 | | | 234 | 250 | Nasal |
| Allergies: Morphine | | | | | | | | | Oral |
| Codeine  Zofran (does not work) | | | | | | | | | LMA |
| | | | | | | | | | ET Tube |
| | | | | | | | | | Tracheotomy |

| Vital Signs | | | | | | Patient Assessment Score | | | | | | MEDS · LAB · TX | OBSERVATIONS |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| TIME | B/P | P. | R. | Temp | SaO2% | | Act | Res | Cir | Neuro | Dc Sc | Dilaudid | BBS equal and clear et q 45 |
| 234 | 124/80 | 90 | 24 | 96.4F Tm | 98? | 10 | 2 | 2 | 2 | 2 | 1 | 1mg IV  Gabapentin Rx  SCD connected | dermabond dressing to (L) lower abdomen dry and intact  abdomen soft and risible 4c A-1B pain  abdomen trustant, severe and cramming  crying kicking feet |
| 234 | 105/72 | 72 | 84 | — | 98? | 10 | 2 | 2 | 2 | 2 | 1 | Dilaudid 1mg IV | |
| 244 | 104/66 | 70 | 24 | — | 98? | 10 | 2 | 2 | 2 | 2 | 1 | | |
| 254 | 104/62 | 78 | 24 | 97.1F Tm | 98? | 4 | 2 | 2 | 2 | 2 | 2 | phenergan 125mg IV | Ela 98? 4c nausea  Zofran IV |
| 304 | 98/61 | 76 | 24 | 98.1F Tm | 98? | 3 | 2 | 2 | 2 | 2 | 2 | LR-1000ml IV fluid | BBS equal and clear et q45  dermabond dressing to (L) lower abdomen  SCD d/c'd  soft and intact abdomen  connected for transport  pain & nausea relieved  condition stable to d/c |

| I.V. FLUIDS | | SITE | | OR | PACU | OUTPUT | | OR | PACU |
|---|---|---|---|---|---|---|---|---|---|
| LR | R. arm | | | 500ml | 500ml | Urine: Voided / Foley | | | |
| | | | | | | N/G | | | |
| | | | | | | Emesis | | | |
| | | | | | | Hemovac · Orthovac · JP | | | |
| | | | | | | Pleurovac | | | |
| | | | | | | EBL | | | |
| | | | | | | Other (Specify) | | | |
| | | | Total | 500ml | | | Total | | |

Pack ___ Penrose Drain ___
Nurse's Signature: Gale Sorrells RN/30

Discharge Time: 304   MODE:  B  (S)  C   Room: 321   Score: 10
Discharging Nurse: Gale Sorrells
Transported by: Linnie Blackmon CNA
Report Given to: called to Patty Garson LPN-72
Time Rec'd in room: 32t  BP 142 P 77 R 16
CADD pump checked c orders by: ___
Res. Vol. ___  Doses given: ___  Amt. Given ___  mg ☐ ml ☐

(Patient Information in Area Below)

**Saint Francis Hospital**
Memphis

**PACU**

028B31600
OSD MR#00989930 DOB:03/23/1965
RILEY, TERRI P 43 F
GIBSON, WILLIAM 07/31/2009
SAINT FRANCIS HOSPITAL MEMPHIS

IMMS # 108457 (Rev. 7/05)   PRINTED BY: MClemmons

DATE   9/9/2009

BC 00525

## Aldrete Scoring System

| | | | Score |
|---|---|---|---|
| A. | **Activity:** An evaluation of the muscular activity of the body assessed by observation. | | |
| | 1. Indicates ability to move all four extremities voluntarily or on command. Can lift head and has controlled movement. Exception: patients with a prolonged block such as Marcaine may not move an affected extremity for as long as 18 hours; patients who were immobile preoperatively | | 2<br>1<br>0 |
| | 2. Move two extremities voluntarily or on command and can lift head. | | |
| | 3. Unable to lift head or move any extremities voluntarily or on command. | | |
| B. | **Respiration:** An evaluation of respiratory efficiency. No complicated apparatus or sophisticated physical tests are utilized. | | 2<br>1<br>0 |
| | 1. Can take a deep breath and cough well, has normal respiratory rate and depth. | | |
| | 2. Labored or limited respiration. Breathes by self but has shallow, slow respirations; may have an airway device. | | |
| | 3. Apneic, condition necessitates ventilator or assisted respiration. | | |
| C. | **Circulation:** A measurement of cardiovascular homeostasis and a comparison with a previous blood pressures excluding intra-operative. | | 2<br>1<br>0 |
| | 1. Stable B/P and pulse. B/P 20mm/Hg of preanesthetic level (minimum 90 Mm/HG systolic). Exception, patient may be released by anesthesia provider after drug therapy. | | |
| | 2. B/P within 20-50 mm/Hg of pre-anesthetic level. | | |
| | 3. Has abnormally high or low blood pressure. B/P 50 mm/Hg pre-anesthetic level. | | |
| | Note: great differences in diastolic pressure should be noted. | | |
| D. | **Neurologic Status:** Ability of patient to answer simple questions and follow verbal commands - verbal stimuli only (unless patient is deaf). | | 2<br>1<br>0 |
| | 1. Awake and alert; oriented to time, place, and person. | | |
| | 2. Responds to verbal stimuli but drifts off to sleep easily. | | |
| | 3. Not responding or responding only to painful stimuli. | | |
| E. | **Oxygen Saturation:** | | 2<br>1<br>0 |
| | 1. Able to maintain O2 Saturation > 92% on room air. | | |
| | 2. Needs O2 inhalation to maintain O2 saturation > 90%. | | |
| | 3. O2 saturation < 90% even with O2 supplement. | | |

**To be released from PACU, patient must have a score of nine or ten.**
**If this score cannot be attained, justification must be stated below.**

PHYSICIAN _____

## POST ANESTHESIA CARE UNIT NURSING CARE PLAN

| Nursing Diagnosis | Expected Outcomes | Goals Met | Nursing Diagnosis | Expected Outcomes | Goals Met |
|---|---|---|---|---|---|
| A. Potential for impaired gas exchange. | Patient airway will be maintained without respiratory distress and SAO₂>90% | Yes  No  N/A  Comments | E. Potential for fluid volume imbalance related to NPO status and surgical procedure. | Patient will maintain adequate fluid & electrolyte balance while in PACU. | Yes  No  N/A  Comments |
| B. Potential for altered cardiac output. | Patient will remain hemodynamically stable (vital signs and urine output.) | Yes  No  N/A  Comments | F. Potential for anxiety related to surgical procedure and/or communication barrier. | Patient will demonstrate controlled level of anxiety. | Yes  No  N/A  Comments |
| C. Potential for altered peripheral tissue perfusion related to surgical procedure and/or dressing/cast. | Adequate circulatory checks. | Yes  No  N/A  Comments | G. Potential for alteration in comfort. | Patient will demonstrate reasonable level of comfort. | Yes  No  N/A  Comments |
| D. Potential for altered thought processes related to meds, or surgical procedure. | Patient will achieve optimal level of consciousness. | Yes  No  N/A  Comments | H. Potential for altered body temperature. | Adequate body temperature maintained. | Yes  No  N/A  Comments |

PRINTED BY: MClemmons          DATE          9/9/2009

BC 00526



# Saint Francis Hospital
Memphis



1000-609

| Patient Criteria | NPO | RL Meds | No Labs | HCG | EKG | K+ | Glu | CBC/ BMP | PT/ INR | CXR | LFT | TSH t3 t4 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1. At least 8 hrs. prior to O.R. | ♦ | | | | | | | | | | | |
| 2. Takes reflux, ulcer, cardiac, antihypertensives, respiratory, and/or seizure meds, in A.M. at O.R. with sip of water. | | ♦ | | | | | | | | | | |
| 3. Healthy pediatric. | | | ♦ | | | | | | | | | |
| 4. Minor procedures under local anesthesia or IV sedation unless patient meets criteria in 6,9,10,12,15 or 16. | | | ♦ | | | | | | | | | |
| 5. Females of childbearing capability (day of surgery). | | | | | | | | | | | | |
| 6. Cardiac risk factors: CHF, CAD, PVD, HTN, MI, diabetes, ICD, pacemaker, 50 yrs. or older, hyperlipidemia, family Hx of MI under 50 y/o. A copy of an EKG done within 3 months of surgery is acceptable on stable patients with these risk factors. | | | | | | | | | | | | |
| 7. Chemo or radiation therapy within 1 yr. | | | | | ♦ | | | ♦ | | ♦ | | |
| 8. Smokes 15-pack year. | | | | | ♦ | | | | | ♦ | | |
| 9. Diuretics or dialysis (day of surgery). | | | | | | ♦ | | | | | | |
| 10. Accucheck on diabetics and patients undergoing heart surgery (day of surgery). | | | | | | | ♦ | | | | | |
| 11. On Antihyperthyroidism meds. | | | | | | | | | | | | ♦ |
| 12. On Coumadin or Hx of bleeding disorders (day of surgery). | | | | | | | | | ♦ | | | |
| 13. Hx. of alcoholism, liver disease, morbid obesity, drug abuse, or on antilipid meds. | | | | | | | | | | | ♦ | |
| 14. General, regional, IV sedation, retinal bulbar block or taking weight reduction meds. | | | | | ♦ | | | | | | | |
| 15. Dyspnea at rest or acute respiratory distress. | | | | | ♦ | | | | | ♦ | | |
| 16. Chest discomfort since last cardiac workup, get previous EKG for comparison. | | | | | | | | | | | | |

Lab work must be within 30 days of procedure

Call Anesthesia at 3465 or 2100 regarding abnormal test results.

Nurse Signature: _____

Date: 7/31/09    Time: 920

### OUTPATIENT SURGICAL PREOPERATIVE PROTOCOL
#### Page 1 of 1

028831600

OPN MR#00989930 DOB:03/23/1966
RILEY, TERRI P 43 F
GIBSON, WILLIAM 07/31/2009
SAINT FRANCIS HOSPITAL MEMPHIS

MR# DOB

R12/07



# Saint Francis Hospital - Memphis

*It's Your Life. Live It Well!*



*660-12A*

## SURGERY RECORD

**Preoperative Phase**   DATE 2-31-09
Relevant Medical HX _____
☐ Emergency _____
☐ Diabetes   ☐ HTN   ☐ CAD   ☐ ESRF
Allergies Morphine Codeine Zofran
_____   ☐ No Allergies
☒ NPO, p mn.   ☐ NA
**Indicate site/side of intended surgery**

[anatomical body diagrams: front, back, feet, hands, and head]
RIGHT LEFT | LEFT RIGHT
R I G H T
LEFT RIGHT
RIGHT LEFT
LEFT RIGHT

### Nursing Data Measures
**1. Measures - Risk of injury related to transport:**
**Supportive systems in holding area**
☐ NA   ☐ Monitor   ☐ O₂ ____
☐ Hearing Aid   ☐ Glasses
☐ Pacemaker   ☐ Foley   ☐ Other ____
☒ TSO/SCD activated prior to procedure
**Pt identification confirmed by**
☒ Patient/Name   ☐ Blood available
☒ Armband/MR#   ☐ Blood band #
☐ Caregiver verifies
**Transport to operating room via**
☒ Stretcher-rails up   ☐ Crib – Rails up
☐ Bed – rails up   ☐ Carried

**2. Physical assessment:**
**Level of consciousness**
☒ Alert/Oriented   ☐ Disoriented
☐ Unresponsive   ☐ Sedated   ☐ Neuro check
**Sensory impairment**
☒ No limitations   ☐ Hearing
☐ Language barrier   ☐ Sight
☐ Use interpreter
**Musculoskeletal status**
☒ No Limitations   ☐ Paralysis   ☐ Traction
☐ Weakness   ☐ Limited mobility ____

**Skin appearance/integrity**
☒ Warm/Dry   ☐ Intact   ☐ Cool   ☐ Skin color NC
☐ Hematoma/bruise /redness - See nurses note
☒ Jewelry removed
☐ Belongings returned to ____

**Cardiopulmonary status**
☒ Breathing normal   ☐ Abnormal chart EKG noted
☐ Peripheral edema present   ☐ Cough   ☐ Dyspnea

**Dental status**
☒ Good   ☐ Poor   ☐ Loose Teeth
☐ Dentures removed

**3. Measures - Risk for pain:**
Pain assessment      Scale of 0 to 10 ____
Location ____
☒ Instructed on use of pain scale ☐ Unable to assess

**4. Measures - Risk for anxiety related to knowledge deficit and stress of surgery: Psychological/Spiritual Assessment**
☒ Calm   ☐ Anxious   ☐ Restless   ☐ Other ____
☒ Provided instruction based on age/population
☒ Needs identified   ☐ Stand by/touch patient
☒ Communicated patient concerns to appropriate members of health care team
☒ Explained sequence of events and routine
☒ Evaluated response to instruction

**5. Outcomes :**
☐ Demonstrates adequate pain management
☒ Indicates decreased level of anxiety
☒ Questions answered

**Intraoperative Phase**
"TIME OUT" VERIFICATION: Time 1147
☒ Correct patient   ☒ Antibiotics given   ☐ NA
☒ Correct procedure   Ancef GMT
☒ Side/site verified
☒ Equipment/implants/x-rays available
☒ Prep dry, no pooling under patient
☒ All members of team actively participate

Signature *Jeanne Roberts Rn*
Print Name *Jeanne Roberts*

▼ Patient information ▼

028831600

OSD MR#88930 008:03/23/1966
RILEY, TERRI P 43 F
GIBSON, WILLIAM 07/31/2009
SAINT FRANCIS HOSPITAL MEMPHIS

DATE      9/9/2009

BC 00528



**Saint Francis Hospital - Memphis**
It's Your Life, Live It Well!

**SURGERY RECORD**



*660-128*

DATE 7-31-09

**Operating room progress notes/times**

| OR ROOM # 21 | Pt in room 1125 | Anesthesia/ intubation 1136 |
|---|---|---|
| Procedure Start 1147 | Procedure End 1218 | Patient Out 1224 |

**Secondary procedure**

| OR ROOM # | Pt in room | Anesthesia/ Intubation |
|---|---|---|
| Procedure Start | Procedure End | Patient Out |

**Perfusion pump time**
On _____ Off _____

**Monitoring**
☐ RN monitored  ☐ EKG  ☐ Oximeter  ☐ NIBP
☐ Local with IV sedation  ☐ Local/no sedation
☒ Anesthesia monitored – see anesthesia record

**6. Measures - Risk of infection:**
**Wound classification**
☒ Clean  ☐ Clean/contaminated
☐ Contaminated  ☐ Infected/dirty

ASA II

**Skin Prep**
By: Dr. Gibson
☐ Providone iodine  ☒ Chlorhexidine  ☐ Duraprep
☐ Surgical Clippers  ☒ Area prepped abdomen

| Surgeon 1 Dr. Wm Gibson | Circulator Donna Kebroth |
|---|---|
| Surgeon 2 | Circulator 2 |
| Assistant 1 Joe Riley  SA | Scrub 1 K. Thomas ST |
| Assistant 2 | Scrub 2 |
| Anesthesia 1 Dr. Patel | Circ. Relief B. Lee In  11:50 Out |
| Anesthesia 2 | Scrub relief In _____ Out _____ |
| Perfusion | Other authorized personnel |
| X-ray technician | Other authorized personnel Bryan Crouch Rep |

PREOP
DIAGNOSIS   Depleted Gastric Neurostimulator

POSTOP
DIAGNOSIS   Depleted Gastric Neuro Stimulator

PROCEDURE Gastric Neuro Stimulator Battery Change

**7. Measures  - Risk for impaired skin integrity.**
**Position**
Positioned by staff
☒ Supine ☐ Prone ☐ Lithotomy ☐ Jackknife ☐ Sitting
☐ Right lateral side down  ☐ Left lateral side down
☒ OR table  ☐ Jackson table  ☐ Eye bed/stretcher
☐ Bariatric table  ☐ Fracture table
**Positioning devices**
☒ Safety strap
☐ Arm boards/pads  x 2
☐ Arms secured at side/ padded
☐ Stirups  ☐ Leg holder  ☐ Gel roll  ☐ Peg board
☐ Bean bag  ☐ Beach Chair  ☐ Pillows/wedges
**Padding**
☒ Shea head rest  ☒ Elbows  ☐ Heels

**8. Measures - Risk of injury:**
**Laser**  N/A
☐ Laser safety measures implemented
☐ Type _____ Unit# _____
Laser time: On _____ Off _____
Joules _____ Pulses _____ Watts _____
Duration _____
Exposure _____ Repeat _____

**Count**

| | | | |
|---|---|---|---|
| Sponge | ☐ Resolved | ☐ Unresolved | ☐ NA |
| Needle | ☒ Resolved | ☐ Unresolved | ☐ NA |
| Instrument | ☐ Resolved | ☐ Unresolved | ☐ NA |

If count unresolved, x-ray taken ☐ Yes  ☐ No
If not, explain: _____
Initial count by RN D. Lee R   Scrub K. Willis
Final count by RN D. Lee, RN   Scrub K. Willis
☐ Surgeon notified of counts

**Electrocautery**
☐ Electrosurgical unit# 22261S
☐ Grounding pad site RT leg
2nd Electrosurgical unit# _____
2nd grounding pad site _____

▼ **Patient Information** ▼

028831600

OSD MR#00989930  DOB:03/23/1966
RILEY, TERRI P 43 F
GIBSON, WILLIAM  07/31/2009
SAINT FRANCIS HOSPITAL, MEMPHIS

BC 00529





# Saint Francis Hospital - Memphis

*It's Your Life. Live It Well!*

**SURGERY RECORD**

*"660-12C"*

DATE 7-31-09

**8. Measures - Risk of injury continues:**
Tourniquet unit # _____ ☐ Pressure _____ ☐
Applied by _____ Site _____
Left ☐ Inflated _____ ☐ Deflated _____
Right ☐ Inflated _____ ☐ Deflated _____
☐ Post operative pulses checked

**9. Measures- Risk of hypothermia:**
☐ Temperature monitored
☐ Warming device  Unit # _____ setting _____
☑ Warm irrigation or fluids
☑ Warm blankets  Other _____

**POSTOPERATIVE PHASE**
**Patient discharged to:**
☑ PACU  ☐ ICU  ☐ Room  ☐ Other _____
**Via:** ☐ Stretcher  ☐ Bed  ☐ Crib  ☐ Carried
☐ Rails up  ☐ Monitor
**Status:**
☑ Awake  ☐ Alert  ☑ Responds to stimuli
☑ Extubated
☐ O2 Lm _____ ☐ BNC ☐ Mask ☐ Oral/nasal airway
☐ Sedated
☐ Intubated  ☐ Ambu bag  ☐ LMA  ☐ Expired

**Assessment/Evaluation**
**10. Outcomes:**
☑ Patient's surgery performed using aseptic technique and in a manner to prevent cross contamination.
☑ Skin remains intact, non-irritated and free of hematoma  ☐ No, see RN note
☑ Core body temperature remains within expected range  ☐ No, see RN note
☐ Body alignment maintained  ☐ No, see RN note
☐ Pressure areas /skin intact  ☐ No, see RN note
☐ Skin color _____ ☐ Dressing dry and clean
**Post operative pain**
Scale 0-10 _____ ☑ Unable to assess
Family/Support person called each hour  ☐ NA
Times _____

**11. IMPLANT INFORMATION - PAGE 4A**
☐ NO IMPLANT

**Reported to** _____  **Circulating Nurse Signature** _____
**Nursing notes**

**Medications/fluids/irrigation**
(other than those given by anesthesia)

| Medication | Amount | Route | Initials |
|---|---|---|---|
| NS 1000u x I | | | |
| | | | |
| | | | |

☐ Alternate specialty drug charge sheet utilized

**Specimens** ☐ None
Cultures:
Pathology:

**Blood products**

| RBC | PLATELET | CRYO |
|---|---|---|
| FFP | CELL SAVER | |

**Drains/Tubes**
(size/type/site)

Packing _____ ☐ Eye patch/shield
Cast _____
Dressing _____

**Urine output**
☐ Indwelling urinary catheter present _____ ml
☐ Catheter inserted in OR by _____
Size/Type _____
Color/Quality _____
CABG/Valve: Prepump _____ ml
Pump _____ ml
Post pump _____ ml
☐ Total intraoperative output _____ ml
☐ Catheter inserted post op/none measured

028831600

OSD MR#00989930 DOB:03/23/1963
RILEY, TERRI P 43 F
GIBSON, WILLIAM 07/31/2009




1000-258

## IMPLANT / EXPLANT RECORD

**SURGERY RECORD**

Date _7-3⊢09_ page 4A

| Implant / Manufacturer /Company | Lot # | Serial # | Model # | Catalog # |
|---|---|---|---|---|
| Neuro Stimulator Battery Change | | | | |
| Medtronic   3116 Neurostimulator Serial No.: NHV104010H | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

Reason for explant/disposition of explant

~~Stool~~ _Depleted Battery_

White - Chart
Yellow - O.R. Record
Pink- Supply Room

**Patient Information**

028831600

OSD  MR#00989930  DOB:03/23/1966
RILEY, TERRI P 43 F
GIBSON, WILLIAM 07/31/2009

FORM # 1000-258  Rev. 6/07

PRINTED BY: MClemmons          DATE      9/9/2009

BC 00531

# Saint Francis Hospital
## Memphis

735-03

Age _43_  Ht _53_  Wt _113_  M _____  (F)

Hgb/Hct _17/37_  Chem _k 4-8_  Pregnancy Test _____  NPO: _____ Yes _____ No _____
Last Intake: _md_

Procedure/Operation: _Gastic Botty chage_

| Previous Anesthetics: *mults fe - Noted* | Pulmonary (WNL) | Cardiovascular - EKG (WNL) |
|---|---|---|
| Family Anesthesia Hx: | Smokes: yes ____ no ✓ | Invasive Monitors Planned: |
| CNS & Mental (WNL)  Eyes (Glaucoma) | Hepato/Renal (WNL) | GI, Hiatal Hernia   WNL  *Gastic Paresis* |
| Current Meds: (include Rx, OTC, Herbal and Dietary Supplements) *Yes-Noted*  ETOH: _____ Steroids: _____ Anti-hypertensive: _____  Blood Transfusions  Blood Disorder, Anti-coagulant Therapy: | Allergies: *Morphine, 20 trans Codeine*  Endocrine, Diabetes, Musculoskeletal Disorder: *WNL*  Airway Assessment/Teeth: *MP I* | Consent Signed _____  ASA Class: E  1 (2) 3 4 5  Planned Anesthesia/Sedation: GEN: ✓  Regional ____ Spinal ____  Epidural ____ Bier Block ____ Sedation _____ Other: _____ Pre-med: _____  Post-anesthesia Pain Management: |

Comments: _____

The risks, benefits and alternatives of the anesthesia/sedation have been discussed with the patient and/or family member, including potential teeth damage and possible changes in anesthesia plan that might arise from changes in patient's condition during procedure and they agree to proceed.

_____        _9/31/09  10_____
CRNA/Anesthesiologist or MD Signature          Date and Time

### Post-operative Anesthetic Note

Complications related to anesthesia/sedation: None _____   General Condition: Satisfactory _____

_____        _7/31/09_____
CRNA or Attending Anesthesiologist or MD Signature      Date and Time

**PRE-ANESTHESIA & SEDATION ASSESSMENT AND PLAN**
Page 1 of 2

R8/02

028831600

OSD MR/00989930 DOB:03/23/1966
RILEY, TERRI P 43 F
GIBSON, WILLIAM 07/31/2009

MR# DOB:

PRINTED BY: MC1ommons      DATE      9/9/2009



# Saint Francis Hospital
## Memphis

### ASA Risk Class:

E   Emergency

1   Healthy patient

2   Mild systemic disease, no functional limitations

3   Severe systemic disease, definite functional limitations

4   Severe systemic disease that is constant threat to life

5   Moribund patient not expected to survive 24 hours with or without surgery



**PRE-ANESTHESIA & SEDATION
ASSESSMENT AND PLAN**
Page 2 of 2

MR# DOB:

R8/02

PRINTED BY: MClemmons          DATE     9/9/2009

| ANESTHESIA | | OR | | PROCEDURE | |
|---|---|---|---|---|---|
| START | END | IN | OUT | START | END |
| 1115 | 1230 | 1125 | 1220 | 1145 | 1218 |

*735-04*

INCISION TIME 1145

ANESTHESIA PROVIDERS

SURGEON Gibson

Pre Op Antibiotic ____ LR   IV   start time 1130

DATE 7/31   DIAGNOSIS Gastro Paroxysm Nl functioning Battery

PROCEDURE Gastric Pacemaker Battery Exchange

| PT DATA | AGE 43 | SEX F | HT 5'3 | WT 113 | HCT 37 | P/S II E | TEETH Ok |

PREOP MEDS (DOSE, ROUTE, TIME) Phenergan 25 cc IV

PT IDENTIFIED

ALLERGIES Morphine Codeine

TYPE OF ANESTHESIA: GENERAL / SPINAL / EPIDURAL / IV BLOCK / MAC / OTHER

| TIME | | | 1115 | 0/0 | 0 | 18 | 0 | 30 | | TOTAL |
|---|---|---|---|---|---|---|---|---|---|---|
| O₂ L/M | | | | 6 | 2 | 2 | 2 | 0 | | |
| N₂O / AIR L/M | | | | | | | | | | |
| VOLATILE % Des | | | | 4 | 4.5 | 4.9 | | | | |

MONITORS: EKG / ET CO₂ / ISO / CVP / A-LINE / STETH / PULSE OX / O₂ ANALYZER / BLOCKADE / NON INV BP R / OTHER / URINE OP

PRE-PROCEDURE CHECK PERFORMED: O₂ FLOWMETER / SUCTION / MACHINE / EYES LEAK / ANESTH MACHINE

Diprivan 150
Etomidate 20 v
Anectine 100
Versed 2
Fentanyl 100 mcg
Dilaudid

FLUIDS: LR

CONTROLLED SUBSTANCE:
1. Versed 2 mg 510
2. Fentanyl

| EBL | |
| URINE OP | |
| SaO₂ | 94 99 99 99 99 |
| ET CO₂ | 28 39 130 35 |
| TEMP | |
| FiO₂ | 100 1 7 1 1 |
| CVP / PAP / SvO₂ | |
| EKG | 81 62 61 62 60 |

| IMMEDIATE PREINDUCTION EVALUATION | 240 | | | | | | | | | | | |
| PULSE 76 | 220 | | | | | | | | | | | |
| BP 100/60 | 200 | | | | | | | | | | | |
| H 98.6 | 180 | | | | | | | | | | | |
| SpO₂ 98 | 160 | | | | | | | | | | | |
| LABS REVIEWED | 140 | | | | | | | | | | | |
| PLAN NP, EVENTS AS DISCUSSED | 120 | | | | | | | | | | | |
| YES / NO | 100 | | | | | | | | | | | |
| IF NO, SEE BELOW | 80 | | | | | | | | | | | |
| PATIENT POS. Supine | 60 | | | | | | | | | | | |
| | 40 | | | | | | | | | | | |
| | 20 | | | | | | | | | | | |

ANES / OVER / B / P / PULSE

Ventilation - Spontaneous Assisted (Control)

Ventilator Setting

Remarks:

VENTILATION: SPONT / ANT / ETT / TUBE SIZE 7 cuff 2cc / INTUBATION EASY / VIEW / ATTEMPTS 1st

EYES: TAPE / OINTMENT

OR / SaO₂ 98 / 12 / 96/9

CRNA

ANESTHESIOLOGIST

OSD MR#00968930 DOB:03/23/1966
RILEY, TERRI P 43 F
GIBSON, WILLIAM 07/31/2009

028831600

PRINTED BY: MCLemmons   DATE   9/9/2009

# Saint Francis Hospital
## Memphis

‖‖‖‖‖‖‖‖‖ 1000-101

## Advance Care Plan (Advance Directive) Acknowledgement

Does patient have an Advance Directive?   ☐ Yes   ☒ No   ☐ Unknown

Type of Advance Directive   ☐ Living Will   ☐ Healthcare Power of Attorney   ☐ POST Form   ☐ Guardian

Where is the Advanced Directive located?   ☐ Placed on Chart   ☐ Reviewed copy with patient
☐ Requested to bring copy   ☐ Unable to obtain

Name of Agent_____   Agent phone number_____
(of Durable Power of Attorney for Healthcare)

| | | | |
|---|---|---|---|
| Was the patient/family given information? | ☐ Yes | ☒ No | ☐ NA |
| Does the patient wish to initiate and Advance Care Plan or Advance Directive or wish additional information? | ☐ Yes | ☒ No | ☐ NA |
| If yes, Please leave message on Ext. 1832 or 1987 for referral | ☐ Yes | ☐ No | ☒ NA |

HOSPITAL REPRESENTATIVE _Matt Calvert RN_

DATED _7-27-09_

## PASTORAL CARE

Referral completed:   ☐ with Patient   ☐ with Spouse   ☐ with Spouse and Patient
☐ with other_____
☐ Patient declines

Advance Directive follow up:   ☐ Placed on chart   ☐ Requested to bring copy
☐ Unable to obtain   ☐ Reviewed copy with patient

HOSPITAL REPRESENTATIVE _____

DATE _____

**Advance Directives/Acknowledgement**
Page 1 of 1

Rev 5/08

028831600

OSD MR#00989930 DOB:03/23/1966
RILEY, TERRI P 43 F
GIBSON, WILLIAM 07/31/2009
SAINT FRANCIS HOSPITAL MEMPHIS

MR# DOB:

PRINTED BY: MClemmons   DATE   9/9/2009

BC 00535



# Saint Francis Hospital
Memphis



1000-554

**1.    Consent to Medical and Surgical Procedures**
I, the patient identified below or the patient's legally authorized representative, consent to the procedures which may be performed during this hospitalization or on an outpatient basis, including emergency treatment or services, and which may include, but are not limited to, laboratory procedures, including testing of blood or other bodily fluid to determine the presence of any communicable disease such as, to the extent allowed by law, Hepatitis and Human Immunodeficiency Virus (the causative agent of AIDS), x-ray examination, medical and surgical treatment or procedures, anesthesia, or hospital services rendered for the patient under the general and special instructions of my/the patient's physician or surgeon. I further consent to my/the patient's physician or surgeon or his/her designees including other practitioners and hospital personnel, which may include health care professionals in training, performing or administering all tests, services or treatments indicated as previously described.

**2.    Consent to Photograph**
I permit the hospital to photograph as a part of the documentation of my/the patient's medical/surgical condition. These photographs will be maintained as part of my/the patient's permanent medical record. I understand and acknowledge that the hospital is permitted to use cameras to monitor all patients.

**3.    Nursing Care**
I understand and acknowledge that this hospital will provide nursing care to meet my/the patient's needs in accordance with accepted standards of nursing practices. If I/the patient desire sitter services or the services of a private duty nurse to provide personal care needs, I understand that such retention of such services is my responsibility and I agree to notify the hospital if I intend to arrange for additional or private duty nursing. I also understand and acknowledge that the hospital may use cameras or other devices for patient monitoring.

---

The undersigned certifies that I have read the foregoing, received a copy thereof, and I am the patient, the patient's legal representative, or I am duly authorized by the patient as the patient's general agent to execute the above and accept its terms.

---

7-31-09
Date

_Terri P. Riley_
Patient/Patient's Authorized Signature

---

If other than patient, indicate relationship

_Emily Fuller_
Witness

Witness

---

**Consent For Treatment**
Page 1 of 1

R3/06

026831600

OPM MR#00989930 DOB:03/23/1966
**RILEY, TERRI P   F 43**
GIBSON, WILLIAM 07/31/2009 -

PRINTED BY: MC J emmons          DATE          9/9/2009

 **Saint Francis Hospital**
Memphis



## PATIENT EDUCATION REGARDING SMOKING

**Quick Facts about Smoking**

Smoking-related diseases claim an estimated 430,700 American lives each year. Smoking costs the United States approximately $97.2 billion each year in health-care costs and lost productivity. It is directly responsible for 87 percent of lung cancer cases and causes most deaths of emphysema and chronic bronchitis. One in three smokers die early because of their smoking. They die of heart disease, stroke, cancer and emphysema. What's more, research shows that secondhand smoke, the smoke from other people's cigarettes, can harm the health of nonsmokers. Breathing in another person's smoke can cause many breathing problems in children and cancer and heart disease in adults.

### Saint Francis Hospital Policy/Rules about Smoking

1. Saint Francis is a nonsmoking institution. Strict guidelines regarding smoking by patients and visitors must be followed. Patients may NOT smoke in patient rooms. There are no designated smoking areas anywhere on Saint Francis property, including parking garages.

2. We encourage the use of alternatives instead of smoking. Your physician has the ability to order nicotine replacements for you to assist in quitting smoking while you are hospitalized. We also will provide you with information on the best methods to quit smoking. Your nurse will provide that information to you on request. Failure to comply with our No smoking policy could result in your being discharged against medical advice.

3. If you do not follow the rules regarding smoking, you are subject to have your smoking materials removed from your room, in order to safeguard you, as well as others. The rules have been established for safety reasons as well as health concerns.

4. Smoking in heart patients can result in heart irregularities and sudden death.

I have read the above and have had the opportunity to have any questions I may have asked answered. I understand the rules, and I agree to abide by them while a patient at Saint Francis Hospital. If I do not follow the above policy, I understand that I am responsible for any damage to property, myself, or others and I agree to hold harmless Saint Francis Hospital, its affiliates and their agents and employees from any claims or causes or action which may arise out of my failure to follow the policy.

_Terri P. Riley_
Patient Signature

Patient Education Regarding Smoking

Page 1 of 1

R05/07

028531600

OSD MR#00989930 DOB:03/23/1966
**RILEY, TERRI P   F 43**
GIBSON, WILLIAM 07/31/2009 -

PRINTED BY: MCJemmons          DATE          9/9/2009





1000-557

## Saint Francis Hospital
### Memphis

## TO THE PATIENT:

If you are having a procedure done by one of the following departments, you can expect to receive two (2) separate bills. One will be from Saint Francis Hospital Memphis to cover the procedure itself and the other from the physician who interprets the results of your test. They will bill you separately. This fulfills the legal requirements established by the Tax Equity and Fiscal Responsibility Act of 1982 (P.L. 97-248).

| | |
|---|---|
| Cardiology: | ALL TESTS<br>East Memphis Electrocardiographers<br>PO Box 241926<br>Memphis, TN 38124-1926 – Telephone: (901) 384-6554 |
| Radiology<br>Nuclear Medicine<br>Radiation Therapy: | ALL TESTS<br>Memphis Physicians Radiology Group, PC<br>2527 Cranberry Hwy.<br>Wareham, MA 02571 – Telephone: (800) 299-9770 |
| G.I. Lab: | ERCP TESTS<br>Memphis Physicians Radiology Group, PC<br>Department 199, PO Box 1000<br>Memphis, TN 38148 – Telephone: (901) 761-2160 |
| Neurophysiology: | ADE EMG and SINGLE FIBER EMG TEST<br><br>Dr. Alan M. Nadel    Dr. Mohammad Assaf<br>PO Box 41619    6005 Park Ave., Suite 722B<br>Memphis, TN 38174    Memphis, TN 38119<br>Telephone: (901) 726-6916    Telephone: (901) 761-1880 |
| Pathology: | Tissue pathology, cytology, clinical lab consultations, biopsy procedures, and fees for supervisory services when a sample of your blood, urine, stool or other body fluid is tested in the laboratory to insure clinical reliability, timely reporting, consultation with treating physicians or interpretation of results.<br><br>The Pathology Group, PC<br>8060 Primacy Parkway, Suite 439<br>Memphis, TN 38119 – Telephone: (901) 881-9087 |
| Surgery: | The package price includes the following: surgical suite and supplies, recovery room, outpatient preparation and postoperative observation, CBC and urinalysis, anesthesia supplies, routine medications and routine pathology studies.<br><br>This special price does not include the following: charges for prosthetic devices, surgeon's fees, anesthesiologist or anesthetist fees which may be billed by the hospital, other physician-related fees or take-home drugs. Moreover, Saint Francis Hospital Memphis reserves the right to exclude those rare extraordinary charges from its special ambulatory pricing schedule and will bill the patient accordingly. |
| Self Pay: | The price you have been quoted is an estimated amount. There may be additional charges incurred during your testing for which you will receive a statement. |

For information concerning hospital charges, call (901) 765-1850. For questions about Medicare and Medicaid, call (901) 765-1877.

7-31-09
Date

_Terri P. Riley_
Parent/Patient's Authorized Signature

_Emily Riley_

If other than patient, indicate relationship      Witness          Witness

**Separate Physician Billing**
Page 1 of 1

028831600
OSD MR#00989930 DOB:03/23/1966
**RILEY, TERRI P  F 43**
GIBSON, WILLIAM 07/31/2009 -

R3/06

OSD1Y 20962652    PRINTED BY: MClemmons      DATE    9/9/2009

BC 00538

 **Saint Francis Hospital**
Memphis


1000-553

**6.      Release of Information/Medical Records**

I hereby consent and authorize the hospital and any practitioner, whether agent or independent contractor of hospital, providing medical goods and services to the patient to release information contained in any financial records and/or medical records, including diagnosis and treatment at the hospital or by any practitioner providing medical goods and services to the patient, including, but not limited to, information concerning communicable diseases such as Human Immunodeficiency Virus (HIV), and Acquired Immune Deficiency Syndrome (AIDS), drug/alcohol abuse, mental health/mental retardation and treatment records and/or laboratory tests results, medical history, treatment progress, and/or any other such related information to: (1) insurance Company, self-funded or health plan, its agents, representatives, attorneys or independent contractors; (2) Medicare; (3) Medicaid; (4) any other person or entity that may be responsible for paying or processing for payment any portion of my hospital bill; (5) to any person or entity affiliated with or representing the hospital and any practitioner providing medical goods and services to patient for the purpose of administration, billing and quality and risk management; or (6) to any other hospital, nursing home, or other health care institution in which the patient is provided treatment; (7) accrediting, regulating and state agencies. This consent and authorization applies to financial and/or medical records created in the course of and relating to this, or subsequent related, hospitalization. I understand that this information may be required to be released in order to obtain payment for my medical expenses incurred for treatment at the hospital and by any practitioner providing medical goods and services to patient. I also authorize the release of medical information to organ transplantation services should the patient be identified as a potential organ donor. The consent to release medical information is subject to revocation in writing any time, except to the extent that action has been taken. I further understand that unless I otherwise instruct the hospital, in writing, the hospital may release directory information pertaining to me without my consent.

**Authorization to Appeal**

I hereby authorize the hospital to appeal on my behalf my claim(s) with, if applicable, and/or any payor which denies and/or delays payment of my claim(s). I further authorize that the payors, listed herein and any other payors, release any and all information requested and/or related to my claim (s) to the hospital and/or its attorneys. Unless prohibited by applicable law or regulation, this authorization is irrevocable upon execution by me hereinbelow and any appeal brought by the hospital shall be as if it was brought by me personally.

**8.      Personal Valuables**

It is understood and agreed that the hospital maintains a safe for the safekeeping of money and valuables, and the hospital shall not be liable for the loss or damage to any money, jewelry, documents, for garments, dentures, eye glasses, hearing aids, prosthetics or other articles of unusual value and small size, unless placed in the safe, and shall not be liable for loss or damage to any other personal property, unless deposited with the hospital for safekeeping. The maximum liability of the hospital for loss of any personal property which is deposited with the hospital for safekeeping is limited to five hundred dollars ($500.00) unless a written report for a greater amount has been obtained from the hospital by the patient.

**9.      I have Received the Additional Facility Specific Addendum (Check appropriate boxes)**

☑ Patient Rights and Responsibilities;              ☐ Important Message from Medicare;

☐ Important Message from Champus;              ☑ Authorization to Disclose

☐ Other Specific Items as listed:

_____

_____

☑ Information regarding Advance Directives             ☐ Not Applicable

        Patient has executed Advance Directives:         ☐ Yes        ☑ No

        Did you bring a copy?                 ☐ Yes        ☐ No

If no, Whom to contact to receive a copy? _____

**0.      Financial Responsibility Agreement by Person Other than the Patient or the Patient's Legal Representative**

I agree to accept financial responsibility for services rendered to the patient and to accept the terms of the Financial Agreement (Paragraph1) and Assignment of Benefits to Hospital and Hospital-Based Physicians (Paragraph 3) set forth above.

7 31 09                          _____              _____
Date                          Financially Responsible Party                     Witness

The undersigned certifies that he/she has read and verbalized/demonstrated understanding of the foregoing, received a copy thereof, and is the patient, the patient's legal representative or is duly authorized by the patient as the patient's general agent to execute the above and accept its terms.

_____              Patient/Parent/Guardian/Conservator/Responsible Party - The above conditions of services have been
Date                          explained to me and I understand.

                                            Emily Rile
_____              _____              _____
If other than patient, indicate relationship        Witness                     Witness

A COPY OF THIS DOCUMENT IS TO BE DELIVERED TO THE PATIENT AND ANY OTHER PERSON WHO SIGNS THIS DOCUMENT

                                                          026831000

**Conditions of Service**                         OSD MR#00989930 DOB:03/23/1966
**Page 2**                                  RILEY, TERRI P   F 43

R3/06                                      GIBSON, WILLIAM 07/31/2009

DERBY RECORD 2      PRINTED BY: MClemmons              DATE        9/9/2009

 **Saint Francis Hospital**
Memphis


1000-553

**1.    Financial Responsibility**

In consideration of services rendered or to be rendered to patient, the undersigned, whether he/she is the patient, patient's relative, patient's legal guardian, representative, agent, other individual or entity, hereby obligates himself/herself individually, to the hospital, physicians, surgeons, emergency department physicians, radiologists, pathologists, anesthesiologists, and consultants involved in the patient's care and agrees to pay for any and all charges and expenses incurred or to be incurred. It is agreed and understood that regardless of any and all assigned benefits/monies; I, as the designated responsible party, am responsible for the total charges for services rendered, and I further agree that all amounts are due upon request and are payable to the hospital, and the appropriate physicians, surgeons, emergency department physicians, radiologists, pathologists, anesthesiologists and consultants involved in patient's care and agree to pay for any and all charges and expenses incurred or to be incurred. It is further agreed and understood that should this account become delinquent and it becomes necessary for the account to be referred to an attorney or collection agency for collection or suit, I, as the designated responsible party or entity, shall pay all patient charges, reasonable attorney's fees and collection expenses. I agree that if this account results in a credit balance, the credit amount will be applied to any outstanding accounts, either current or bad debt. All delinquent accounts may be charged interest at the maximum rate allowed by law.

**2.    Assignment Of Benefits To Hospital And Hospital-Based Physician**

In consideration of services rendered or to be rendered, I hereby irrevocably assign and transfer to the hospital, and hospital-based physicians (e.g., radiologists, pathologists, anesthesiologists, emergency department physicians) all rights, title and interest in all benefits/monies payable for services/supplies rendered, including but not limited to group medical/indemnity/self-insured/ERISA benefits/coverage, PIP, UIM/UM, auto/homeowner insurance, and in all causes of action against any party or entity that may be responsible for payment of benefits/monies regardless of whether or not I ultimately settle my claim with a non-admission of liability provision. I fully understand that in the event the hospital and/or hospital-based physicians files a claim on my behalf that the same does not impose any contractual obligation or otherwise upon the hospital and/or hospital-based physicians, and that, notwithstanding the irrevocable nature of this Assignment of Cause of Action and Benefits, I remain fully responsible for instituting, and am expressly authorized by the hospital and hospital-based physicians to institute, suit within the applicable statutes of limitations. I authorize the hospital and/or hospital-based physicians to appeal any denial under my appeal rights provision. It is hereby agreed and understood that any condition precedent subsequent or otherwise, including, but not limited to, precertification, preauthorization, or second opinions shall remain the sole responsibility of patient and/or the patient's family, legal guardian, representative or agent. I further understand that failure to pre-certify could result in reduced payments from patient's insurance company, leaving the undersigned financially responsible for the non-reimbursed portion of patient's bill. It is further agreed and understood that the obtaining of verification of benefits and/or precertification does not in any form or fashion relieve the patient or the patient's family, other individual or entity signing on behalf of patient, of any liability for the financial responsibility for goods and services provided or to be provided to patient by the hospital and/or hospital-based physicians and any other associated physician. I fully understand and agree that hospital and/or hospital-based physicians shall be entitled to full payment where a third-party accident is involved notwithstanding any benefits payable by a managed care payor on my behalf as third-party bears primary responsibility.

**3.    Assignment of Cause of Action and Benefits**

I, for good and valuable consideration receipt of which is hereby acknowledged, irrevocably assign and transfer, to the hospital, any and all claims, demands, suits, remedies, guarantees, liens and/or causes of action, at law or in equity, either in contract or in tort, statutory or otherwise, to the extent permitted by law, as well as any other claim, in whole or in part, which I may now have or may hereafter hold or possess, known or unknown, on account of, growing out of, relating to or concerning, whether directly or indirectly, proximately or remotely, any acts, omissions, events, transactions or occurrences that have occurred or failed to occur which resulted in my injuries for which the hospital has provided and/or will provide medical goods and services to me. This Assignment of Cause of Action and Benefits shall be effective against any and all parties or entities that may bear or appear to bear liability for my injuries, including but not limited to, my employer, its direct and indirect subsidiaries, all of its officers, directors, agents, servants, successors, assigns and employees. I further assign and transfer to the hospital, any and all rights (including appeal rights), title and interest in any and all benefits, monies or other form of compensation paid or to be paid on my behalf as a result of this injury/illness. I fully understand that, notwithstanding the irrevocable nature of this Assignment of Cause of Action and Benefits, I remain solely responsible for instituting, and am expressly authorized by the hospital to institute, suit within the applicable statutes of limitations, and that the hospital is not in any form or fashion responsible for instituting suit on my behalf. I understand and agree that this Assignment does not relieve me of my liability or responsibility for any and all charges incurred as a result of medical goods and services provided to me by the hospital.

**4.    Medicare Patient's Assignment of Benefits and Release of Information**

I certify that the information given by me in applying for payment under Title XVIII of the Social Security Act is correct. I authorize release of any information needed to act on this request. I request that payment of authorized benefits be made on my behalf. I assign payment for unpaid charges of the hospital and physician(s) for whom the hospital is authorized to bill in connection with its services. I understand I am responsible for any remaining balance not covered by Medicare or other insurance.

**5.    Legal Relationship Between Hospital and Physician**

All physicians and surgeons furnishing services to the patient, including the Emergency Department physicians, radiologists, pathologists, anesthesiologists and the like, are independent contractors with the patient and are not employees or agents of the hospital. The patient is under the care and supervision of his/her attending physician and it is the responsibility of the hospital and its nursing staff to carry out the instructions of such physician. It is the responsibility of the patient's physician or surgeon to obtain the patient's informed consent, when required, to medical or surgical treatment, special diagnostic or therapeutic procedures, or hospital services rendered for the patient under the general and special instructions of the physician.

**Conditions of Service**
**Page 1 of 2**

R3/08

028831600

OSD MR#00989930 DOB:03/23/1966
**RILEY, TERRI P   F 43**
GIBSON, WILLIAM 07/31/2009

PRINTED BY: MClemmons          DATE      9/9/2009

BC 00540

 **Saint Francis Hospital**
Memphis


1000-555

## NOTICE REGARDING FACILITY DIRECTORY

Dear Patient/Patient's Personal Representative:

We maintain a list of information on our patients. This list is referred to in our *Notice of Privacy Practices* (NPP) as the Directory of Individuals. This Directory includes a patient's name, location in the hospital, general condition and religious affiliation. However, a patient's religious affiliation will only be disclosed to clergy.

We may use this information in the following ways:

**The Patient Information Desk** - uses the Directory to forward calls from friends or loved ones to a patient. They may use it to accept flowers or balloons sent to the patient. They use it to direct visitors to a patient's room.

**The Security Department** - uses the Directory to know at all times who is in the hospital, so they can prepare for any emergency and account for all patients.

**Telephone Operators** - use the Directory to forward calls to patients.

**Clergy** - use the Directory to make visits to patients and their families.

Every patient has a right to ask that their name, location in the hospital, general condition and/or religious affiliation be omitted from the Directory

*If you wish to be removed from this list, complete the Directory Opt Out form below.*

## DIRECTORY OPT OUT FORM

Every patient has a right to ask that their name, location in the hospital, general condition or religious affiliation be omitted from the Directory. If you wish to remove all or part of your information from the Directory, please check those items that you do not want included:

☐ Name - If you select this box, we will not be able to share any information about you with anyone who asks for you by name, including family or friends. We will have to state that we cannot confirm or deny that you are a patient. *If you select this box, no additional selections are required.*

☐ Location - If you select this box, you cannot receive flowers, mail, phone messages, etc.

☐ General Health Condition - If you select this box, we cannot share information about your general condition with anyone who asks for you by name, including family or friends.

☐ Religious Affiliation - If you select this box, we cannot share information about you with clergy.

The undersigned certifies that he/she has read the foregoing, received a copy of the Notice of Privacy Practices (NPP), and is the patient or the patient's personal representative.

7-31-04
_____      _____      _____
Date                                                     Time                                                      Signature of Patient or Patient's Personal Representative

_____                                    _____
Relationship of Personal Representative to                         Print Name of Patient or Patient's Personal Representative
Patient (if applicable)

**Directory Opt Out Form**
Page 1 of 1

028831600

OPM MR#00989930 DOB:03/23/1966
**RILEY, TERRI P    F 43**
GIBSON, WILLIAM 07/31/2009

R3/06

PRINTED BY: MClemmons          DATE      9/9/2009

BC 00541

 **Saint Francis Hospital**
Memphis



1000-555

A **Notice of Privacy Practices (NPP)** is provided to all patients. This Notice of Privacy Practices identifies: 1) how medical information about you may be used or disclosed; 2) your rights to access your medical information, amend your medical information, request an accounting of disclosures of your medical information, and request additional restrictions on our uses and disclosures of that information; 3) your rights to complain if you believe your privacy rights have been violated; and 4) our responsibilities for maintaining the privacy of your medical information.

The undersigned certifies that he/she has read the foregoing, received a copy of the Notice of Privacy Practices and is the patient, or the patient's personal representative.

_Terri P. Riley_
Name of Patient

_[signature]_
Signature of Patient

_7 , 31      , 09_
Date Signed

_____
Name of Patient's Personal Representative

_____
Signature of Patient's Personal Representative

_____/_____/_____
Date Signed

**FOR INTERNAL USE ONLY**

_Emily [illegible]_
Name of Employee

_Emily [illegible]_
Signature of Employee

If applicable, reason patient's written acknowledgement could not be obtained:

☐ Patient was unable to sign.
☐ Patient refused to sign.
☐ Other _____

Version 2 (As noted on NPP)                    12/08/03 (Date: As noted on NPP)

**Notice of Privacy Practices
(NPP) Acknowledgement**
Page 1 of 1



028631600

OPM MR#00989930 DOB:03/23/1966
**RILEY, TERRI P   F 43**
GIBSON, WILLIAM 07/31/2009

R3/06

PRINTED BY:  MClemmons          DATE      9/9/2009

BC 00542

 **Saint Francis Hospital**
Memphis



1000-554

**1.     Consent to Medical and Surgical Procedures**
I, the patient identified below or the patient's legally authorized representative, consent to the procedures which may be performed during this hospitalization or on an outpatient basis, including emergency treatment or services, and which may include, but are not limited to, laboratory procedures, including testing of blood or other bodily fluid to determine the presence of any communicable disease such as, to the extent allowed by law, Hepatitis and Human Immunodeficiency Virus (the causative agent of AIDS), x-ray examination, medical and surgical treatment or procedures, anesthesia, or hospital services rendered for the patient under the general and special instructions of my/the patient's physician or surgeon. I further consent to my/the patient's physician or surgeon or his/her designees including other practitioners and hospital personnel, which may include health care professionals in training, performing or administering all tests, services or treatments indicated as previously described.

**2.     Consent to Photograph**
I permit the hospital to photograph as a part of the documentation of my/the patient's medical/surgical condition. These photographs will be maintained as part of my/the patient's permanent medical record. I understand and acknowledge that the hospital is permitted to use cameras to monitor all patients.

**3.     Nursing Care**
I understand and acknowledge that this hospital will provide nursing care to meet my/the patient's needs in accordance with accepted standards of nursing practices. If I/the patient desire sitter services or the services of a private duty nurse to provide personal care needs, I understand that such retention of such services is my responsibility and I agree to notify the hospital if I intend to arrange for additional or private duty nursing. I also understand and acknowledge that the hospital may use cameras or other devices for patient monitoring.

---

The undersigned certifies that I have read the foregoing, received a copy thereof, and I am the patient, the patient's legal representative, or I am duly authorized by the patient as the patient's general agent to execute the above and accept its terms.

---

7-31-09
Date

*Terri P. Riley*
Patient/Patient's Authorized Signature

_____
If other than patient, indicate relationship

*Emily Fuller*
Witness

_____
Witness

**Consent For Treatment**
**Page 1 of 1**

R3/06

028831600

OPM MR#00989930 DOB:03/23/1966
**RILEY, TERRI P   F 43**
GIBSON, WILLIAM 07/31/2009 -

PRINTED BY: MClemmons                    DATE        9/9/2009

 **Saint Francis Hospital**
Memphis



1000-553

**6.        Release of Information/Medical Records**

I hereby consent and authorize the hospital and any practitioner, whether agent or independent contractor of hospital, providing medical goods and services to the patient to release information contained in any financial records and/or medical records, including diagnosis and treatment at the hospital by any practitioner providing medical goods and services to the patient, including, but not limited to, information concerning communicable diseases such as Human Immunodeficiency Virus (HIV), and Acquired Immune Deficiency Syndrome (AIDS), drug/alcohol abuse, mental health/mental retardation and treatment records and/or laboratory tests results, medical history, treatment progress, and/or any other such related information to: (1) Insurance Company, self-funded or health plan, its agents, representatives, attorneys or independent contractors; (2) Medicare; (3) Medicaid; (4) any other person or entity that may be responsible for paying or processing for payment any portion of my hospital bill; (5) to any person or entity affiliated with or representing the hospital and any practitioner providing medical goods and services to patient for the purpose of administration, billing and quality and risk management; or (6) to any other hospital, nursing home, or other health care institution in which the patient is provided treatment; (7) accrediting, regulating and state agences. This consent and authorization applies to financial and/or medical records created in the course of and relating to this, or subsequent related, hospitalization. I understand that this information may be required to be released in order to obtain payment for my medical expenses incurred for treatment at the hospital and by any practitioner providing medical goods and services to patient. I also authorize the release of medical information to organ transplantation services should the patient be identified as a potential organ donor. The consent to release medical information is subject to revocation in writing any time, except to the extent that action has been taken. I further understand that unless I otherwise instruct the hospital, in writing, the hospital may release directory information pertaining to me without my consent.

**Authorization to Appeal**

I hereby authorize the hospital to appeal on my behalf my claim(s) with, if applicable, and/or any payor which denies and/or delays payment of my claim(s). I further authorize that the payors, listed herein and any other payors, release any and all information requested and/or related to my claim (s) to the hospital and/or its attorneys. Unless prohibited by applicable law or regulation, this authorization is irrevocable upon execution by me hereinbelow and any appeal brought by the hospital shall be as if it was brought by me personally.

**8.        Personal Valuables**

It is understood and agreed that the hospital maintains a safe for the safekeeping of money and valuables, and the hospital shall not be liable for the loss or damage to any money, jewelry, documents, fur garments, dentures, eye glasses, hearing aids, prosthetics or other articles of unusual value and small size, unless placed in the safe, and shall not be liable for loss or damage to any other personal property, unless deposited with the hospital for safekeeping. The maximum liability of the hospital for loss of any personal property which is deposited with the hospital for safekeeping is limited to five hundred dollars ($500.00) unless a written report for a greater amount has been obtained from the hospital by the patient.

**9.        I have Received the Additional Facility Specific Addendum (Check appropriate boxes)**

☒ Patient Rights and Responsibilities;        ☐ Important Message from Medicare;

☐ Important Message from Champus;        ☐ Authorization to Disclose

☐ Other Specific Items as listed:

_____        _____

_____        _____

☒ Information regarding Advance Directives:        ☐ Not Applicable

Patient has executed Advance Directives:        ☐ Yes        ☒ No

Did you bring a copy?        ☐ Yes        ☐ No

If no, whom to contact to receive a copy?

**0.        Financial Responsibility Agreement by Person Other than the Patient or the Patient's Legal Representative**

I agree to accept financial responsibility for services rendered to the patient and to accept the terms of the Financial Agreement (Paragraph1) and Assignment of Benefits to Hospital and Hospital Based Physicians (Paragraph 2) set forth above.

7-31-09                        Terri P. Riley
_____        _____        _____
Date                        Financially Responsible Party                Witness

The undersigned certifies that he/she has read and verbalized/demonstrated understanding of the foregoing, received a copy thereof, and is the patient, the patient's legal representative or is duly authorized by the patient as the patient's general agent to execute the above and accept its terms.

_____        _____
Date                        Patient/Parent/Guardian/Conservator/Responsible Party - The above conditions of services have been explained to me and I understand.

                        Emily Riley
_____        _____        _____
If other than patient, indicate relationship        Witness                        Witness

A COPY OF THIS DOCUMENT IS TO BE DELIVERED TO THE PATIENT AND ANY OTHER PERSON WHO SIGNS THIS DOCUMENT

028831600

OSD MR#00989930 DOB:03/23/1966

**RILEY, TERRI P    F 43**

GIBSON, WILLIAM 07/31/2009 -

**Conditions of Service**
**Page 2**

R3/06

PRINTED BY: MClemmons                DATE        9/9/2009

 **Saint Francis Hospital**
Memphis


1000-953

**1.    Financial Responsibility**

In consideration of services rendered or to be rendered to patient, the undersigned, whether he/she is the patient, patient's relative, patient's legal guardian, representative, agent, other individual or entity, hereby obligates himself/herself individually, to the hospital, physicians, surgeons, emergency department physicians, radiologists, pathologists, anesthesiologists, and consultants involved in the patient's care and agrees to pay for any and all charges and expenses incurred or to be incurred. It is agreed and understood that regardless of any and all assigned benefits/monies; I, as the designated responsible party, am responsible for the total charges for services rendered, and I further agree that all amounts are due upon request and are payable to the hospital, and the appropriate physicians, surgeons, emergency department physicians, radiologists, pathologists, anesthesiologists and consultants involved in patient's care and agree to pay for any and all charges and expenses incurred or to be incurred. It is further agreed and understood that should this account become delinquent and it becomes necessary for the account to be referred to an attorney or collection agency for collection or suit, I, as the designated responsible party or entity, shall pay all patient charges, reasonable attorney's fees and collection expenses. I agree that if this account results in a credit balance, the credit amount will be applied to any outstanding accounts, either current or bad debt. All delinquent accounts may be charged interest at the maximum rate allowed by law.

**2.    Assignment Of Benefits To Hospital And Hospital-Based Physician**

In consideration of services rendered or to be rendered, I hereby irrevocably assign and transfer to the hospital, and hospital-based physicians (e.g., radiologists, pathologists, anesthesiologists, emergency department physicians) all rights, title and interest in all benefits/monies payable for services/supplies rendered, including but not limited to group medical/indemnity/self-insured/ERISA benefits/coverage, PIP, UIM/UM, auto/homeowner insurance, and in all causes of action against any party or entity that may be responsible for payment of benefits/monies regardless of whether or not I ultimately settle my claim with a non-admission of liability provision. I fully understand that in the event the hospital and/or hospital-based physicians files a claim on my behalf that the same does not impose any contractual obligation or otherwise upon the hospital and/or hospital-based physicians, and that, notwithstanding the irrevocable nature of this Assignment of Cause of Action and Benefits, I remain fully responsible for instituting, and am expressly authorized by the hospital and hospital-based physicians to institute, suit within the applicable statutes of limitations. I authorize the hospital and/or hospital-based physicians to appeal any denial under my appeal rights provision. It is hereby agreed and understood that any condition precedent, subsequent or otherwise, including, but not limited to, precertification, preauthorization, or second opinions shall remain the sole responsibility of patient and/or the patient's family, legal guardian, representative or agent. I further understand that failure to pre-certify could result in reduced payments from patient's insurance company, leaving the undersigned financially responsible for the non-reimbursed portion of patient's bill. It is further agreed and understood that the obtaining of verification of benefits and/or precertification does not in any form or fashion relieve the patient or the patient's family, other individual or entity signing on behalf of patient, of any liability for the financial responsibility for goods and services provided or to be provided to patient by the hospital and/or hospital-based physicians and any other associated physician. I fully understand and agree that hospital and/or hospital-based physicians shall be entitled to full payment where a third-party accident is involved notwithstanding any benefits payable by a managed care payor on my behalf as third-party bears primary responsibility.

**3.    Assignment of Cause of Action and Benefits**

I, for good and valuable consideration receipt of which is hereby acknowledged, irrevocably assign and transfer, to the hospital, any and all claims, demands, suits, remedies, guarantees, liens and/or causes of action, at law or in equity, either in contract or in tort, statutory or otherwise, to the extent permitted by law, as well as any other claim, in whole or in part, which I may now have or may hereafter hold or possess, known or unknown, on account of, growing out of, relating to or concerning, whether directly or indirectly, proximately or remotely, any acts, omissions, events, transactions or occurrences that have occurred or failed to occur, which resulted in my injuries for which the hospital has provided and/or will provide medical goods and services to me. This Assignment of Cause of Action and Benefits shall be effective against any and all parties or entities that may bear or appear to bear liability for my injuries, including but not limited to, my employer, its direct and indirect subsidiaries, all of its officers, directors, agents, servants, successors, assigns and employees. I further assign and transfer to the hospital, any and all rights (including appeal rights), title and interest in any and all benefits, monies or other form of compensation paid or to be paid on my behalf as a result of this injury/illness. I fully understand that, notwithstanding the irrevocable nature of this Assignment of Cause of Action and Benefits, I remain solely responsible for instituting, and am expressly authorized by the hospital to institute, suit within the applicable statutes of limitations, and that the hospital is not in any form or fashion responsible for instituting suit on my behalf. I understand and agree that this Assignment does not relieve me of my liability or responsibility for any and all charges incurred as a result of medical goods and services provided to me by the hospital.

**4.    Medicare Patient's Assignment of Benefits and Release of Information**

I certify that the information given by me in applying for payment under Title XVIII of the Social Security Act is correct. I authorize release of any information needed to act on this request. I request that payment of authorized benefits be made on my behalf. I assign payment for unpaid charges of the hospital and physician(s) for whom the hospital is authorized to bill in connection with its services. I understand I am responsible for any remaining balance not covered by Medicare or other insurance.

**5.    Legal Relationship Between Hospital and Physician**

All physicians and surgeons furnishing services to the patient, including the Emergency Department physicians, radiologists, pathologists, anesthesiologists and the like, are independent contractors with the patient and are not employees or agents of the hospital. The patient is under the care and supervision of his/her attending physician and it is the responsibility of the hospital and its nursing staff to carry out the instructions of such physician. It is the responsibility of the patient's physician or surgeon to obtain the patient's informed consent, when required, to medical or surgical treatment, special diagnostic or therapeutic procedures, or hospital services rendered for the patient under the general and special instructions of the physician.

Conditions of Service
Page 1 of 2

R3/06


028631600

OSD MR#00989930 DOB:03/23/1966
**RILEY, TERRI P   F 43**
GIBSON, WILLIAM 07/31/2009 -

PRINTED BY: MCLemmons                    DATE          9/9/2009

 **Saint Francis Hospital**
Memphis



601-09

Dated: 7 - 31 20 09   Time: 1015 o'clock   ☒ A.M. ☐ P.M.

THIS PARAGRAPH AUTHORIZES THE SURGEON TO OPERATE:

1. I consent and authorize Dr. Gibson and any associates or assistants or consultants of his / her choice to perform the following medical / surgical operation, treatment or procedure: Gastric Pace-ma ker Battery Exchange

2. I hereby consent to the performance of the operations, treatments or procedures, and the possibility that I may receive an implantable device, in addition to, or different from, those now contemplated which the above-named physician or assistants may consider necessary or advisable in the course of the operation, treatment and / or procedure, as well as services involving pathology, radiology, transfusions, injections and tests.

3. The nature and purpose of the operation, treatment and / or procedure, the possible alternative methods, the risks involved and the possibility of complications have been fully explained to me, including the option and possible complication of an implantable device by Dr. Gibson , and I understand the nature of the procedure to be: " Gastric Stimulator Replacement "

   I acknowledge that no guarantee or assurance has been made as to the results that may be obtained.

4. I consent to the administration of such anesthetics as may be necessary or advisable by the anesthesiologist or anesthetist responsible for this service, with the exception of Morphine — No Zofar
   State "none" or specify unacceptable anesthetic

5. I consent to the hospital authorities' disposal in accordance with accustomed practice of any tissues or parts which may be removed. My signature at the bottom of this page allows the hospital to release to me any explantable device removed from me at my request

6. For the purpose of advancing medical education, and / or for the purpose of performing the surgical procedure, I consent to the admittance of observers to the operating room, the photographing, filming and / or televising, provided my identity is not revealed by the pictures or by descriptive texts accompanying them.

7. I consent to the presence of manufacturer's representatives in the operating room for the purpose of supporting the physician with patient specific supplies and/or equipment

8. It is my intention to grant full authority to such physicians and surgeons and their respective employees and assistants, to administer and perform any and all drugs, treatments, tests or diagnostic procedures to or upon me which may be deemed advisable or necessary by the herein designated physician or surgeon, or any physicians or surgeons associated with him, or acting under their or any of their instructions.

9. I ☐ DO TPR   ☐ DO NOT consent to a transfusion of:
   Patient's Initials      Patient's Initials

   Blood or blood products that surgeons may deem necessary in the interest of my health and proper medical care. I understand the risks, benefits, and alternatives of a transfusion of blood or blood products. These risks exist despite the fact that the blood has been carefully tested.

   I hereby certify that I have read and fully understand the foregoing authorization for medical and surgical treatment and the reasons why the above surgery is considered necessary, and that there are no blank spaces above my signature at the time of signing.

   _____   Terri P Riley   _____
   Witness                    Patient, Parent or Guardian          Relationship

   I have discussed and answered the patient's and/or legal guardian's questions related to the proposed anesthesia along with the potential benefits, risks, or side effects, including potential problems that might occur during recuperation, the likelihood of achieving goals, reasonable alternatives, the relevant risks, benefits, and side effects related to alternatives, including the possible results of not receiving care, treatment, and services and when indicated, any limitations on the confidentiality of information learned from or about the patient.

   W. Gibson   7/31   10:55
   Physician's Signature      Date      Time

   If patient unable to sign, state why.

   This operative consent form shall remain valid and binding unless the patient is discharged from the physician's care prior to the time of the procedure or the patient / family in writing withdraws the consent.

   **CONSENT AND AUTHORIZATION**
   **FOR MEDICAL / SURGICAL OPERATIONS**
   **TREATMENT OR PROCEDURE**

   R10/07

   028831809
   OPM MR#00989930 DOB:03/23/1966
   **RILEY, TERRI P   F 43**
   GIBSON, WILLIAM 07/31/2009 -

PRINTED BY: MClemmons   DATE   9/9/2009

BC 00546

 **Saint Francis Hospital**
Memphis



1000-555

## NOTICE REGARDING FACILITY DIRECTORY

Dear Patient/Patient's Personal Representative:

We maintain a list of information on our patients. This list is referred to in our *Notice of Privacy Practices* (NPP) as the Directory of Individuals. This Directory includes a patient's name, location in the hospital, general condition and religious affiliation. However, a patient's religious affiliation will only be disclosed to clergy.

We may use this information in the following ways:

**The Patient Information Desk** - uses the Directory to forward calls from friends or loved ones to a patient. They may use it to accept flowers or balloons sent to the patient. They use it to direct visitors to a patient's room.

**The Security Department** - uses the Directory to know at all times who is in the hospital, so they can prepare for any emergency and account for all patients.

**Telephone Operators** - use the Directory to forward calls to patients.

**Clergy** - use the Directory to make visits to patients and their families.

Every patient has a right to ask that their name, location in the hospital, general condition and/or religious affiliation be omitted from the Directory.

*If you wish to be removed from this list, complete the Directory Opt Out form below.*

## DIRECTORY OPT OUT FORM

Every patient has a right to ask that their name, location in the hospital, general condition or religious affiliation be omitted from the Directory. If you wish to remove all or part of your information from the Directory, please check those items that you do not want included:

☐ Name - If you select this box, we will not be able to share *any* information about you with anyone who asks for you by name, including family or friends. We will have to state that we cannot confirm or deny that you are a patient. *If you select this box, no additional selections are required.*

☐ Location - If you select this box, you cannot receive flowers, mail, phone messages, etc.

☐ General Health Condition - If you select this box, we cannot share information about your general condition with anyone who asks for you by name, including family or friends.

☐ Religious Affiliation - If you select this box, we cannot share information about you with clergy.

The undersigned certifies that he/she has read the foregoing, received a copy of the Notice of Privacy Practices (NPP), and is the patient, or the patient's personal representative.

7-31-09
_____        _____        _____
Date                            Time                            Signature of Patient or Patient's Personal Representative

_____        _____
Relationship of Personal Representative to             Print Name of Patient or Patient's Personal Representative
Patient (if applicable)

**Directory Opt Out Form**
**Page 1 of 1**

028831600
OPM MR#00989930 DOB 03/23/1966
**RILEY, TERRI P  F 43**
GIBSON, WILLIAM 07/31/2009

R3/06

PRINTED BY: MClemmons                    DATE        9/9/2009



# Saint Francis Hospital
## Memphis



1000-555

A **Notice of Privacy Practices** (NPP) is provided to all patients. This Notice of Privacy Practices identifies: 1) how medical information about you may be used or disclosed; 2) your rights to access your medical information, amend your medical information, request an accounting of disclosures of your medical information, and request additional restrictions on our uses and disclosures of that information; 3) your rights to complain if you believe your privacy rights have been violated; and 4) our responsibilities for maintaining the privacy of your medical information.

The undersigned certifies that he/she has read the foregoing, received a copy of the Notice of Privacy Practices and is the patient, or the patient's personal representative.

Terri P. Riley
_____
Name of Patient

_____
Signature of Patient

7/31/09
_____
Date Signed

_____
Name of Patient's Personal Representative

_____
Signature of Patient's Personal Representative

_____/_____/
Date Signed

## FOR INTERNAL USE ONLY

_____
Name of Employee

_____
Signature of Employee

If applicable, reason patient's written acknowledgement could not be obtained:

☐ Patient was unable to sign.
☐ Patient refused to sign.
☐ Other _____

Version 2 (As noted on NPP)                    12/08/03 (Date: As noted on NPP)

**Notice of Privacy Practices**
**(NPP) Acknowledgement**
Page 1 of 1

R3/06

028831600
OPM MR#00989930 DOB:03/23/1966
**RILEY, TERRI P   F 43**
GIBSON, WILLIAM 07/31/2009 -

PRINTED BY: MCLemmons          DATE   9/9/2009

BC 00548

**Saint Francis Hospital**
Memphis


1000-685

| PHYSICAL ASSESSMENT DATE _____ | Pain Assessment |
|---|---|
| ORIENTATION: ☑ alert/oriented times 3 ☐ other _____ | Are you having Pain ☐ YES ☑ NO – If yes |
| | Location: _____ |
| HEART: ☑ regular ☐ irregular ☐ murmur ☐ other _____ | Duration: ☐ Chronic ☐ Acute   Rating (1-10) ___ Description: _____ |
| RESPIRATIONS: ☑ regular/clear ☐ other _____ | Location _____ |
| COLOR: ☐ WNL ☑ other _____ | Duration: ☐ Chronic ☐ Acute   Rating (1-10) ___ Description: _____ |

SKIN TURGOR: ☐ WNL ☐ other _____
☐ See wound/skin assessment sheet
DISTAL PULSES: ☐ palpable   ☐ Doppler
☐ edema
☐ other _____
ABDOMEN: ☐ soft/BS present
☐ last bowel movement _____
☐ other _____

**Neuro/Perceptual**
Hearing ☑ Normal ☐ Impaired   ☐ R ☐ L
☐ Uses Hearing Aids ☐ Aids with Patient
☐ Lip Reads
Vision ☑ Normal ☐ Impaired   ☐ R ☐ L
☐ Glasses ☐ Contacts ☐ Prosthesis ☐ R ☐ L
☐ Aid with Patient & Instructed on Care
☑ No Problems Identified

Previous Surgeries / Hospitalizations
_____ Date: _____
_____ Date: '02
_____ Date: '95
_____ Date: '06
_____ '07
_____

**NURSING DIAGNOSIS IDENTIFIED** _____
Knowledge deficit R/T _____
Goal Met ☐ Yes   ☐ No   Initial _____
Anxiety R/T _____
Goal Met ☐ Yes   ☐ No   Initial _____
Impaired verbal communication R/T _____
Goal Met ☐ Yes   ☐ No   Initial _____
Other _____

**Nutritional Care**
If Abnormal, Notify Dietician to Evaluate
☐ On enteral or parenteral feedings
☐ NPO or on clear liquids greater than 3 days
☐ Admitted with diagnosis of anorexia, liver failure, malnutrition, Failure to Thrive
☑ No Need Identified   ☐ Dietician Consulted
☐ High Risk OB
☐ Stage 3 or 4 Decubitus
☐ Unexpected or unintentional weight change (loss or gain)
   How many lbs _____ in what time frame? _____ (+/- 10 lbs in three weeks)
   Initials: _____   Date/Time: _____

**Functional**
Contact Physician for appropriate Referral
☐ CVA, fractures, new mobility impairment
☐ Newly identified weakness/paralysis
☐ New onset of Falls
☐ Untreated lymphedema
☑ No Need Identified   ☐ Physician Notified
☐ Unable to perform ADL's (onset within last month)
☐ Speech/swallowing difficulty
☐ Cardiac surgery, recent
☐ Acute MI, recent
   Initials: _____   Date/Time: _____

**Social Services**
Contact Social Worker for Referral
☐ Request by Patient
☐ Homeless/housing/transportation issues
☐ Financial issues
☐ Evidence of abuse (physical - unexplained bruises or burns, sexual abuse, or neglect).
☑ No Need Identified   ☐ Social Services Consulted
☐ Family situations or conflicts
☐ OD/suicide attempt
☐ Nursing Home resident/new Nursing Home placement
☐ Need for disability
   Initials: _____   Date/Time: _____

**Discharge Planning**
Contact Discharge Planning for Referral
☐ Needs care givers
☐ Needs home care/DME
☐ Rehab candidate
☑ No Need Identified   ☐ Case Management/Social Services Consulted _____
☐ Assisted Living/Group Home resident
☐ Hospice candidate
   Initials: _____   Date/Time: _____

**Patient Admission Assessment**
Page 2 of 2

R7/08

MR# DOB:

PRINTED BY: MClemmons          DATE     9/9/2009

BC 00550



# Saint Francis Hospital
Memphis



1000-530

## MORSE FALL SCALE RISK SCREENING TOOL

Date: 7-31-09

Unit: 3B

| | | | 7am – 3pm | 3pm – 11pm | 11pm – 7am |
|---|---|---|---|---|---|
| 1. History of Falling within 12 months | ☐No<br>☐Yes | 0<br>25 | ∅ | | |
| 2. Secondary Diagnosis | ☐ No<br>☐ Yes | 0<br>15 | ∅ | | |
| 3. Ambulatory Aid<br>None/bed rest/ nurse assist<br>Crutches/cane/walker<br>Furniture | ☐<br>☐<br>☐ | 0<br>15<br>30 | ∅ | | |
| 4. Intravenous therapy/hep lock | ☐ No<br>☐Yes | 0<br>20 | ∅ | | |
| 5. Mental status<br>Oriented to own ability<br>Overestimates/forgets limitations<br>and/or Pyschoactive Medication that<br>affects ability to ambulate (SFH addition) | ☐<br>☐ | 0<br>15 | ∅ | | |
| 6. Gait<br>Normal/bed rest/wheelchair<br>Weak<br>Impaired | ☐<br>☐<br>☐ | 0<br>10<br>20 | ∅ | | |
| | | Total | ∅ | | |
| | | Risk Score | ☐ No Risk 0-24<br>☐ At Risk 25 & above | ☐ No Risk 0-24<br>☐ At Risk 25 & above | ☐ No Risk 0-24<br>☐ At Risk 25 & above |
| | Fall Prevention Measures Initiated | | Yes    No | Yes    No | Yes    No |
| | Nurse Initials | | JA | | |

| 7-3 Intervention Initiated / Continued | | 3-11 Intervention Initiated / Continued | | 11-7 Intervention Initiated / Continued | |
|---|---|---|---|---|---|
| ☐ Additional lighting<br>☐ Diversion activity<br>☐ Bed low & locked<br>☐ Top 2 rails up<br>☐ Items within reach<br>☐ Call light within reach<br>☐ Fall needs assessment<br>☐ Reorient to surroundings<br>☐ Assist devices with reach<br>☐ Decrease noise and stimuli<br>☐ Instructed to call for assistance | ☐ Non Skid socks<br>☐ Utilize bed alarms<br>☐ Bedside commode<br>☐ Increase observation<br>☐ Remove excess<br>furniture<br>☐ Implement restraint<br>alternatives | ☐ Additional lighting<br>☐ Diversion activity<br>☐ Bed low & locked<br>☐ Top 2 rails up<br>☐ Items within reach<br>☐ Call light within reach<br>☐ Fall needs assessment<br>☐ Reorient to surroundings<br>☐ Assist devices with reach<br>☐ Decrease noise and stimuli<br>☐ Instructed to call for assistance | ☐ Non Skid socks<br>☐ Utilize bed alarms<br>☐ Bedside commode<br>☐ Increase observation<br>☐ Remove excess<br>furniture<br>☐ Implement restraint<br>alternatives | ☐ Non Skid socks<br>☐ Diversion activity<br>☐ Bed low & locked<br>☐ Top 2 rails up<br>☐ Call light within reach<br>☐ Fall needs assessment<br>☐ Reorient to surroundings<br>☐ Assist devices with reach<br>☐ Decrease noise and stimuli<br>☐ Instructed to call for assistance | ☐ Non Skid socks<br>☐ Utilize bed alarms<br>☐ Bedside commode<br>☐ Increase observation<br>☐ Remove excess<br>furniture<br>☐ Implement restraint<br>alternatives |
| Nurse Signature | | Nurse Signature | | Nurse Signature | |

## Morse Fall Scale Risk
### Page 1 of 2

R6/09

PRINTED BY: MClemmons

026831600

OSD MR#00989930 DOB:03/23/1966
RILEY, TERRI P 43 F
GIBSON, WILLIAM 07/31/2009
SAINT FRANCIS HOSPITAL MEMPHIS

IR# DOB:

DATE        9/9/2009

BC 00551



# Saint Francis Hospital
Memphis

## HOW TO USE THE MORSE FALL SCALE RISK SCREENING TOOL:

**1. History of Falling:** Yes (scored 25), if a previous fall is recorded during the present admission or if there is immediate history of physiological falls (i.e., from seizures, impaired gait) prior to admission.

**2a. Secondary Diagnoses:** Yes, if more than one medical diagnosis is listed on the patient chart. It is here that medications can be surmised that may contribute to falls, e.g., seizure disorders – anti-seizure medications; HTN & CHF – diuretics, anxiety-benzodiazepines; psychoses-dementia- psychotropic drugs; Insomnia - sedative-hypnotics; acute or chronic pain- narcotic analgesics (**HOWEVER, ANY SECONDARY DIAGNOSES SHOULD BE CONSIDERED**).

**2b. If there are 'NO' Secondary diagnoses present,** the nurse assessing the patient's presenting signs & symptoms should **consult a pharmacist to rule out** any risk for falls. This may include patients undergoing bowel preps for colonic radiology studies or colonoscopies.

**3. Ambulatory Aids:**
    Scored '0' if patient walks without a walking aid even if assisted by a nurse or is not on bed rest.
    Scored '15' if ambulatory with crutches, cane or walker.
    Scored '30' if furniture for support

**4. Intravenous Therapy:** Scored '20' if has an IV apparatus or heparin lock.

**5. Mental Status:**
    Scored '0' - The patient is asked if s/he is able to go to the bathroom alone or if s/he is permitted up. If the patient's response is consistent with the ambulatory orders on the practitioner's orders.
    Scored '15' - The response is not consistent with the order or if the patient's assessment is unrealistic

**6. Gait:**
    Scored '0' - Normal Gait- if patient is able to walk with head erect, arms swinging freely at the side, and strides unhesitantly.
    Scored '10' - Weak Gait- if patient stooped but able to lift head while walking. Furniture support may be sought, but is feather-weight touch, almost for reassurance. Steps are short, and the patient may shuffle.
    Scored '20' - Impaired Gait- if patient stooped, may have difficulty rising from the chair, attempts to rise by pushing on chair arms and/or "bouncing." The patient's head is down and because balance is poor, the patient grasps the furniture, a person, or walking aid for support and cannot walk without assistance. Steps are short and patient shuffles. If patient is wheelchair-bound, the patient is scored according to the gait used when transferring from the wheelchair to the bed.

**Morse Fall Scale Risk**
Page 2 of 2

R6/09

MR# DOB:

BC 00552

# Francis Hospital
emphis



1000-76

## PROCEDURE OBSERVATION NOTES

Procedure: _Gastric Pacer Gen. 4_

☑ OR  ☐ GI Lab  ☐ Radiology  ☐ Other _____
☑ General  ☐ Local with sedation  ☐ Local  ☐ Block
Date: _7/31/09_    Time Returned: _1320_
VS:  B/P _116/62_ AP _77_ R _16_ T _97_
☐ A/O  ☑ Drowsy  ☐ Other _____
Resp.  ☑ Reg./Clear  ☐ Irreg.  ☐ Other _____
Skin:  ☑ WD  ☐ Pink  ☐ Pale  ☐ Other _____
Surg. Site: _Rt. lower Abd. site._
_clean/dry/intact_

Pain: ☐ Yes  ☐ No, Intensity (0-10) _4_  Location: _____
Patient Education Regarding
   Pain/Pain Management:  ☑ Yes  ☐ No
N/V: ☐ Yes  ☑ No  P.O. Fluids given: ☑ Yes  ☐ No
Mobility: ☑ Intact times 4 Exts.  Other _____
Distal Pulses: ☑ Palpable  Other _____
IV: _LR_ LTV _800_ Site: _Rt. A._
Condition: ☑ No R/S or pain  Other _____
Fall Precautions:  ☑ Call Light within reach
   ☑ Bed Low/Locked
   ☑ Voices understanding
Comments: _husband at bedside_
_Pt c/o some itching to face_
_____ (Benadryl ordered

Nurse's Initials _____

| TIME | B/P | P | R | PAIN 0-10 | OBSERVATIONS | Init. |
|------|-----|---|---|-----------|--------------|-------|
| 1300 | 114 | 90 | 16 | 6 | Pt. relig. meds | |
| | | | | | Slightly sed - | |
| | | | | | Denies discomfort | |
| 1410 | 90 | 18 | 16 | X | Denies pain | |
| | | | | | discomfort, pain | |
| | | | | | Side effects iching | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

| Time | Medication | Route | Site | Init. |
|------|-----------|-------|------|-------|
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

**POST PROCEDURE OBSERVATION NOTES**
Page 1 of 2

R6/02

---

### DISCHARGE SUMMARY
### NURSING DIAGNOSIS IDENTIFIED

☑ Knowledge Deficit RT _post op instr_
   Goal Met  ☐ Yes  ☑ No  ☐ Initial _____
☐ Potential for Injury RT _____
   Goal Met  ☐ Yes  ☐ No  ☐ Initial _____
☐ Alterations in Comfort RT _____
   Goal Met  ☐ Yes  ☐ No  ☐ Initial _____
☐ Potential Alteration in Body Temp RT _____
   Goal Met  ☐ Yes  ☐ No  ☐ Initial _____
Explain Any Unmet Goals: _____

| DISCHARGE MEDICATIONS |
|-----------------------|
| Darvocet-N 100 |
| |
| |

IV solution added _____ Time _____
IV: Discontinued at _1410_  LTC _600_
   Condition: ☑ No R/S or pain  Other _____

Nurse's Initials _____
Surg. Site: ☑ Clean/dry/intact  Other _____

Tol. oral fluids: ☐ Yes  ☐ No   Ambulated: ☐ Yes  ☐ No
Voided:  ☑ Yes  ☐ No  ☐ N/A

Drug Interaction Sheet Given:  ☐ Yes  ☐ No
Teaching/Instructions given with copy  ☐ Yes  ☐ No
Verbalized Understanding  ☑ Yes  ☐ No
Discharged VS:  B/P _132_ AP _78_ R _16_ T _98.1_
Discharged To: _____ Via _W/C_
Discharging Nurse Initials _____ Time _143_

| Referrals Requested | | |
|---------------------|--|--|
| Department | Purpose | Called By |
| | | |

| Initials | Signature | Title |
|----------|-----------|-------|
| | | |

028831600

OPM MR#00989930 DOB:03/23/1966
RILEY, TERRI P  F 43
GIBSON, WILLIAM 07/31/2009 -

BC 00553



# Saint Francis Hospital
## Memphis



1000-78

DATE _____

| TIME | B/P | P | R | TEMP | PAIN 0-10 | OBSERVATIONS |
|------|-----|---|---|------|-----------|--------------|
|      |     |   |   |      |           |              |
|      |     |   |   |      |           |              |
|      |     |   |   |      |           |              |
|      |     |   |   |      |           |              |
|      |     |   |   |      |           |              |
|      |     |   |   |      |           |              |
|      |     |   |   |      |           |              |
|      |     |   |   |      |           |              |
|      |     |   |   |      |           |              |
|      |     |   |   |      |           |              |
|      |     |   |   |      |           |              |
|      |     |   |   |      |           |              |
|      |     |   |   |      |           |              |
|      |     |   |   |      |           |              |
|      |     |   |   |      |           |              |
|      |     |   |   |      |           |              |
|      |     |   |   |      |           |              |
|      |     |   |   |      |           |              |
|      |     |   |   |      |           |              |
|      |     |   |   |      |           |              |
|      |     |   |   |      |           |              |
|      |     |   |   |      |           |              |
|      |     |   |   |      |           |              |

**POST PROCEDURE OBSERVATION NOTES**
Page 2 of 2

R6/02

028831600

OPM MR#00989930 DOB:03/23/1966
**RILEY, TERRI P   F 43**
GIBSON, WILLIAM 07/31/2009

PRINTED BY: MClemmons          DATE     9/9/2009





RILEY, TERRI P
DOB: 03/23/1966 43 F ACCT# 028831600
GIBSON, WILLIAM
MR#: 00989930 07/31/2007

PRINTED BY: MClemmons          DATE     9/9/2009

BC 00555



# Saint Francis Hospital
## Memphis



601-771

| Section I: | INITIAL ASSESSMENT |
|---|---|

**Physical Barriers to Learning:** ☑ None ☐ Vision ☐ Hearing
☐ Language (explain)_____ ☐ Reading (explain)_____
☐ Writing (explain)_____
☐ Development level requiring intervention (explain)_____
☐ Other_____

**Emotional Barriers to Learning:**
☑ None ☐ Anxiety ☐ Anger ☐ Denial ☐ Depression ☐ Confusion ☐ Other _____

**Spiritual Barriers to Learning:** ☑ None ☐ Grief ☐ Lack of Hope ☐ Guilt ☐ Other _____

**Home Barriers to Compliance:**
☑ None ☐ Meal Prep ☐ Transportation ☐ Financial ☐ Caregiver ☐ Other _____

**Religious and/or Cultural Barriers to Learning:**
☐ None ☐ Yes, explain _____

1. What is the easiest way for you to learn? ☐ Reading ☐ Listening ☐ Pictures ☐ Demonstration
   ☐ Other _____

2. What are your learning needs at this time? Prioritize 1 = high, 2 = moderate, 3 = low   ☐ None

| | Priority | | Priority | | Priority |
|---|---|---|---|---|---|
| ☐ Disease Process | | ☐ Medication | | ☑ Follow Up Treatment | |
| ☐ Use of Equipment | | ☐ Diet | | ☐ Pre/Post Op Teaching | |
| ☐ Community Resources | | ☐ Rehabilitation | | ☐ Other | |

3. Is there someone we should involve in your teaching? ☐ No ☐ Yes:_____
4. Rate your desire/motivation to learn. ☐ High ☐ Moderate ☐ Low

Initial Assessment Completed by _____ Date 7-31-09 Time 1015

| Section II: | | | | POTENTIAL TEACHING TOPICS | | | |
|---|---|---|---|---|---|---|---|
| 1. Activity/Exercise | 8. Disease Process | 15. Incentive Spirometry | 22. Mouth Care | 29. Pre-Op Teaching | 36. Social Services |
| 2. Admission | 9. Discharge Equipment | 16. Infant Care/Feeding | 23. New Meds | 30. Psychosocial Needs | 37. Spiritual Needs |
| 3. Advance Directive | 10. Dressings | 17. Isolation Precaution | 24. Outpatient Programs | 31. Restraints | 38. Surgery |
| 4. Comm. Resources | 11. Follow-up Care | 18. IV's/Injections | 25. IV's/Injections | 32. Risk Factors | 39. TCDB |
| 5. Diagnostic Tests | 12. Foley | 19. Labor Management | 26. Plan of Care | 33. Room Orientation | 40. Tests |
| 6. Diet/NPO | 13. Food/Drug Interactions | 20. MDI/Nebulizers | 27. Post-Op Teaching | 34. Safety/Fall | 41. Treatment |
| 7. Disease Mgmt. | 14. Home Care Services | 21. Monitors | 28. Post Partum Teaching | 35. Signs/SX | 42. Wound Care |

| Section III: | | | PATIENT/FAMILY EDUCATION RECORD | | | |
|---|---|---|---|---|---|---|
| DATE | TIME | DEPARTMENT | EDUCATION PROVIDED | *RESPONSE 1,2,3 | EDUCATION PROVIDED TO: | INITIAL |
| 7-31-09 | 0920 | NS | 3, 6, 29 | | | NS |
| | | | 11-23 25 26 27 | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

* 1. Demonstrates understanding by verbal or return demonstration.
  2. Demonstrates partial understanding – needs reinforcement of education.
  3. Unable to provide education to patient / significant other. Alternative plan to education provided.

| Signature / Title | Initial | Signature / Title | Initial |
|---|---|---|---|
| | NS | | |
| | SN | | |

**PATIENT FAMILY EDUCATION
MULTIDISCIPLINARY**
Page 1 of 2

R8/02

OSD MR#00989930 D08:03/23/1966
RILEY, TERRI P 43 F
Green, WILLIAM 07/31/2009
02983;300
MR# DOB:

PRINTED BY: MClemmons          DATE     9/9/2009

BC 00556

# Saint Francis Hospital
## Memphis

601-771

| Date | Time | Department | Education Provided | Response 1,2,3 | Education Provided to: | Initial |
|------|------|-----------|-------------------|----------------|------------------------|---------|
|      |      |           |                   |                |                        |         |
|      |      |           |                   |                |                        |         |
|      |      |           |                   |                |                        |         |
|      |      |           |                   |                |                        |         |
|      |      |           |                   |                |                        |         |
|      |      |           |                   |                |                        |         |
|      |      |           |                   |                |                        |         |
|      |      |           |                   |                |                        |         |
|      |      |           |                   |                |                        |         |
|      |      |           |                   |                |                        |         |

Key to Response
1. Demonstrates understanding by verbal or return demonstration.
2. Demonstrates partial understanding – needs reinforcement of education.
3. Unable to provide education to patient / significant other. Alternative plan to education provided.

| Signature / Title | Initial | Signature / Title | Initial |
|-------------------|---------|-------------------|---------|
|                   |         |                   |         |
|                   |         |                   |         |
|                   |         |                   |         |
|                   |         |                   |         |

Comments: _____
_____
_____
_____
_____
_____
_____

**PATIENT FAMILY EDUCATION**
**MULTIDISCIPLINARY**
Page 2 of 2

MR# DOB:



R8/02

PRINTED BY: MClemmons          DATE          9/9/2009

BC 00557

 **Saint Francis Hospital**
Memphis



## PATIENT EDUCATION REGARDING SMOKING

**Quick Facts about Smoking**

Smoking-related diseases claim an estimated 430,700 American lives each year. Smoking costs the United States approximately $97.2 billion each year in health-care costs and lost productivity. It is directly responsible for 87 percent of lung cancer cases and causes most cases of emphysema and chronic bronchitis. One in three smokers die early because of their smoking. They die of heart disease, stroke, cancer and emphysema. What's more, research shows that secondhand smoke, the smoke from other people's cigarettes, can harm the health of nonsmokers. Breathing in another person's smoke can cause many breathing problems in children and cancer and heart disease in adults.

### Saint Francis Hospital Policy/Rules about Smoking

1. Saint Francis is a nonsmoking institution. Strict guidelines regarding smoking by patients and visitors must be followed. Patients may **NOT** smoke in patient rooms. There are no designated smoking areas anywhere on Saint Francis property, including parking garages.

2. We encourage the use of alternatives instead of smoking. Your physician has the ability to order nicotine replacements for you to assist in quitting smoking while you are hospitalized. We also will provide you with information on the best methods to quit smoking. Your nurse will provide that information to you on request. Failure to comply with our No smoking policy could result in your being discharged against medical advice.

3. If you do not follow the rules regarding smoking, you are subject to have your smoking materials removed from your room, in order to safeguard you, as well as others. The rules have been established for safety reasons as well as health concerns.

4. Smoking in heart patients can result in heart irregularities and sudden death

I have read the above and have had the opportunity to have any questions I may have asked answered. I understand the rules, and I agree to abide by them while a patient at Saint Francis Hospital. If I do not follow the above policy, I understand that I am responsible for any damage to property, myself, or others and I agree to hold harmless Saint Francis Hospital, its affiliates and their agents and employees from any claims or causes or action which may arise out of my failure to follow the policy.

_Terri P Riley_
Patient Signature

**Patient Education Regarding Smoking**

Page 1 of 1

R05/07

026831600
OSD MR#00989930 DOB:03/23/1966
**RILEY, TERRI P   F 43**
GIBSON, WILLIAM 07/31/2009

PRINTED BY: MClemmons        DATE   9/9/2009

 **Saint Francis Hospital**
Memphis


1000-557

## TO THE PATIENT:

If you are having a procedure done by one of the following departments, you can expect to receive two (2) separate bills. One will be from Saint Francis Hospital Memphis for the procedure itself and the other from the physician who interprets the results of your test. They will bill you separately. This fulfills the legal requirements established by the Tax Equity and Fiscal Responsibility Act of 1982 (P.L. 97-248).

| | |
|---|---|
| Cardiology: | ALL TESTS<br>East Memphis Electrocardiographers<br>PO Box 241926<br>Memphis, TN 38124-1926 – Telephone: (901) 384-6554 |
| Radiology<br>Nuclear Medicine<br>Radiation Therapy: | ALL TESTS<br>Memphis Physicians Radiology Group, PC<br>2527 Cranberry Hwy.<br>Wareham, MA 02571 – Telephone: (800) 299-9770 |
| G.I. Lab: | ERCP TESTS<br>Memphis Physicians Radiology Group, PC<br>Department 198, PO Box 1000<br>Memphis, TN 38148 – Telephone: (901) 761-2160 |
| Neurophysiology: | ADE EMG and SINGLE FIBER EMG TEST<br><br>Dr. Alan M. Nadel — PO Box 41619 — Memphis, TN 38174 — Telephone: (901) 726-6916<br>Dr. Mohammad Assaf — 6005 Park Ave., Suite 722B — Memphis, TN 38119 — Telephone: (901) 761-1980 |
| Pathology: | Tissue pathology, cytology, clinical lab consultations, biopsy procedures, and fees for supervisory services when a sample of your blood, urine, stool or other body fluid is tested in the laboratory to insure clinical reliability, timely reporting, consultation with treating physicians or interpretation of results.<br><br>The Pathology Group, PC<br>6080 Primacy Parkway, Suite 439<br>Memphis, TN 38119 – Telephone: (901) 681-9087 |
| Surgery: | The package price includes the following: surgical suite and supplies, recovery room, outpatient preparation and postoperative observation, CBC and urinalysis, anesthesia supplies, routine medications and routine pathology studies.<br><br>This special price does not include the following: charges for prosthetic devices, surgeon's fees, anesthesiologist or anesthetist fees which may be billed by the hospital, other physician-related fees or take-home drugs. Moreover, Saint Francis Hospital Memphis reserves the right to exclude those rare extraordinary charges from its special ambulatory pricing schedule and will bill the patient accordingly. |
| Self Pay: | The price you have been quoted is an estimated amount. There may be additional charges incurred during your testing for which you will receive a statement. |

For information concerning hospital charges, call (901) 765-1850. For questions about Medicare and Medicaid, call (901) 765-1877.

2-31-09
_____
Date

_____
Patient/Patient's Authorized Signature

_____
If other than patient, indicate relationship

_____
Witness

_____
Witness

**Separate Physician Billing**
**Page 1 of 1**


026831600

OSD MR#00989930 DOB:03/23/1966
RILEY, TERRI P   F 43
GIBSON, WILLIAM 07/31/2009 -

R3/06

PRINTED BY: MClemmons          DATE     9/9/2009

0092856 00530

  **BlueCross BlueShield of Mississippi**

Blue Cross & Blue Shield of Mississippi, A Mutual Insurance Company,
is an Independent Licensee of the Blue Cross and Blue Shield Association
BCBS 2021-14306   Rev 3/03

**PLEASE RETAIN THIS INFORMATION FOR PERSONAL USE.**

**EXPLANATION OF BENEFITS**

P.O. Box 1043
Jackson, Mississippi 39215-1043
Phone: (601) 932-3704
Toll-Free Phone: 1-800-222-8046

### SUBSCRIBER INFORMATION

| | |
|---|---|
| Insured | JAMES P RILEY |
| Identification No. | 868284547M |
| Date | 08/31/09 |

Page 2 of 3

·CONTINUED FROM PREVIOUS PAGE·

Patient: TERRI P RILEY — Relationship: SUBSCRIBER SPOUSE   Claim # 922280203
Provider: SAINT FRANCIS HOSPITAL — Patient Account # 028831600

| Type of Service | Service Date From | To | Charge | Ineligible Amount | Code | Deductible Applied | Co-Insurance / Co-Pay | Paid by Other Ins. | Total Benefit Paid | What You Owe To The Provider |
|---|---|---|---|---|---|---|---|---|---|---|
| HE | 07/31/09 | 07/31/09 | 42,524.27 | 42,524.27 | MD | 0.00 | 0.00 | 0.00 | 0.00 | 42,524.27 |
| | | Totals | 42,524.27 | 42,524.27 | | 0.00 | 0.00 | 0.00 | 0.00 | 42,524.27 |

HE-HOSPITAL EXPENSE     MD-MEDICAL NECESSITY DOCUMENTATION NOT RECEIVED

Patient: TERRI P RILEY — Relationship: SUBSCRIBER SPOUSE   Claim # 922941541
Provider: Reel, Ellis G. — Patient Account # C0918810497

| Type of Service | Service Date From | To | Charge | Ineligible Amount | Code | Deductible Applied | Co-Insurance / Co-Pay | Paid by Other Ins. | Total Benefit Paid | What You Owe To The Provider |
|---|---|---|---|---|---|---|---|---|---|---|
| M | 07/08/09 | 07/08/09 | 42.00 | 29.56 | 49 | 0.00 | 1.24 | 0.00 | 11.20 | 1.24 |
| | | Totals | 42.00 | 29.56 | | 0.00 | 1.24 | 0.00 | 11.20 | 1.24 |

M-MISCELLANEOUS MEDICAL     49-THIS PROVIDER HAS AGREED NOT TO BILL YOU FOR THIS INELIGIBLE AMOUNT.

Patient: TERRI P RILEY — Relationship: SUBSCRIBER SPOUSE   Claim # 923242141
Provider: Hall, Johnnie C. — Patient Account # K4WKBP 252200040892

| Type of Service | Service Date From | To | Charge | Ineligible Amount | Code | Deductible Applied | Co-Insurance / Co-Pay | Paid by Other Ins. | Total Benefit Paid | What You Owe To The Provider |
|---|---|---|---|---|---|---|---|---|---|---|
| I | 07/07/09 | 07/07/09 | 26.54 | 26.54 / 0.00 | 49 / 16 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| I | 07/07/09 | 07/07/09 | 25.22 | 25.22 / 0.00 | 49 / 16 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| I | 07/07/09 | 07/07/09 | 9.86 | 9.86 / 0.00 | 49 / 16 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| I | 07/07/09 | 07/07/09 | 14.00 | 14.00 / 0.00 | 49 / 16 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| I | 07/07/09 | 07/07/09 | 23.26 | 23.26 / 0.00 | 49 / 16 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| I | 07/07/09 | 07/07/09 | 29.82 | 29.82 / 0.00 | 49 / 16 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| I | 07/07/09 | 07/07/09 | 14.98 | 14.98 / 0.00 | 49 / 16 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| I | 07/07/09 | 07/07/09 | 13.14 | 13.14 / 0.00 | 49 / 16 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| I | 07/08/09 | 07/08/09 | 4.12 | 4.12 / 0.00 | 49 / 16 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| | | Totals | 160.94 | 160.94 | | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |

I-DIAGNOSTIC PROFESSIONAL COMPONENT INTERPRETATION     16-EXCEEDS ALLOWANCE-NOT OWED BY PATIENT

·CONTINUED ON NEXT PAGE·

BC 00476

0092856-00530

 **BlueCross BlueShield**
**of Mississippi**

**EXPLANATION OF BENEFITS**

P.O. Box 1043
Jackson, Mississippi 39215-1043
Phone: (601) 932-3704
Toll-Free Phone: 1-800-222-8046

**PLEASE RETAIN THIS INFORMATION
FOR PERSONAL USE.**

| SUBSCRIBER INFORMATION | |
|---|---|
| Insured | JAMES P RILEY |
| Identification No. | 868264547M |
| Date | 09/30/09 |

Page 3 of 4

-CONTINUED FROM PREVIOUS PAGE-

| Patient: | TERRI P RILEY | | | | | | Relationship: SUBSCRIBER SPOUSE | Claim # 943241290 | |
|---|---|---|---|---|---|---|---|---|---|
| Provider: | Patil, Mahadev R. | | | | | | Patient Account # RILEY0008 | | |
| Type of Service | Service Date From | To | Charge | Ineligible Amount | Code | Deductible Applied | Co-Insurance / Co-Pay | Paid by Other Ins. | Total Benefit Paid | What You Owe To The Provider |

| N | 07/31/09 | 07/31/09 | 840.00 | 840.00 | A5 | 0.00 | 0.00 | 0.00 | 0.00 | 840.00 |
| | | Totals: | 840.00 | 840.00 | | 0.00 | 0.00 | 0.00 | 0.00 | 840.00 |

N-ANESTHESIOLOGY    A5-SERVICES NOT MEDICALLY NECESSARY

CLAIM REPROCESSED

| Patient: | TERRI P RILEY | | | | | | Relationship: SUBSCRIBER SPOUSE | Claim # 942280203 | |
|---|---|---|---|---|---|---|---|---|---|
| Provider: | SAINT FRANCIS HOSPITAL | | | | | | Patient Account # 028831600 | | |
| Type of Service | Service Date From | To | Charge | Ineligible Amount | Code | Deductible Applied | Co-Insurance / Co-Pay | Paid by Other Ins. | Total Benefit Paid | What You Owe To The Provider |

| HE | 07/31/09 | 07/31/09 | 42,524.27 | 42,524.27 | A5 | 0.00 | 0.00 | 0.00 | 0.00 | 42,524.27 |
| | | Totals: | 42,524.27 | 42,524.27 | | 0.00 | 0.00 | 0.00 | 0.00 | 42,524.27 |

HE-HOSPITAL EXPENSE    A5-SERVICES NOT MEDICALLY NECESSARY

CLAIM REPROCESSED

| Patient: | TERRI P RILEY | | | | | | Relationship: SUBSCRIBER SPOUSE | Claim # 925341194 | |
|---|---|---|---|---|---|---|---|---|---|
| Provider: | Berry III, Allen D. | | | | | | Patient Account # TPG02883160001 | | |
| Type of Service | Service Date From | To | Charge | Ineligible Amount | Code | Deductible Applied | Co-Insurance / Co-Pay | Paid by Other Ins. | Total Benefit Paid | What You Owe To The Provider |

| I | 07/31/09 | 07/31/09 | 49.00 | 43.52 | 49 | 0.00 | 0.55 | 0.00 | 4.93 | 0.55 |
| | | Totals: | 49.00 | 43.52 | | 0.00 | 0.55 | 0.00 | 4.93 | 0.55 |

I-DIAGNOSTIC PROFESSIONAL COMPONENT INTERPRETATION    49-THIS PROVIDER HAS AGREED NOT TO BILL YOU FOR THIS
INELIGIBLE AMOUNT.

BC 00473