## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
## JACKSON DIVISION

**TERRI PAIGE RILEY**                                                      **PLAINTIFF**

**V.**                                                      **NO. 3:09CV674HTW-LRA**

**BLUE CROSS & BLUE SHIELD OF MISSISSIPPI**
**and THE ELECTRIC POWER ASSOCIATION OF**
**MISSISSIPPI GROUP BENEFITS TRUST**                          **DEFENDANTS**

### MEMORANDUM OF AUTHORITIES IN SUPPORT OF
### THE ELECTRIC POWER ASSOCIATIONS OF MISSISSIPPI
### GROUP BENEFITS TRUST PLAN'S MOTION FOR SUMMARY JUDGMENT

**NOW COMES** The Electric Power Associations of Mississippi Group Benefits

Trust Plan, erroneously identified as the Electric Power Association of Mississippi

Group Benefits Trust, and submits the following memorandum of authorities in

support of its motion for summary judgment.

### I.      Introduction

This ERISA[1] action rails against the legal principle that there is no "vesting" of

rights to a continued level of the same medical benefits once such benefits are ever

included in a welfare benefit plan.  Specifically, the Plaintiff asserts that she should

have been provided certain medical benefits on account of the fact that similar benefits

were previously provided by her welfare benefit plan.  This position runs afoul of

ERISA law.

Additionally, the Plaintiff seeks recovery of so-called "damages" for an alleged

breach of breach of fiduciary duty pursuant to U.S.C. §1132(a)(2) [§502(a)(2)].  Such

---

[1] The Employee Retirement Income Security Act, 29 U.S.C. §1001, *et seq.*

damages, however, are not available to the Plaintiff as a breach of fiduciary duty claim under ERISA must be based on direct harm to the plan rather than harm to an individual beneficiary.  Moreover, the fact that the Plaintiff has sued for benefits allegedly owed to her bars her from pursuing an alternative claim for breach of fiduciary duty.

## II.   The Essential Undisputed Facts

The Plaintiff, Terri Paige Riley (**"Riley"**), is married to an employee of North Central Electric Power Association, a participating employer in the Electric Power Associations of Mississippi Group Benefits Trust Plan, an employee welfare benefit plan administered and maintained pursuant to ERISA. *Plaintiff's Complaint* at ¶¶ 3-5, [Doc. 1].  Plan benefits are self-funded by Electric Power Associations of Mississippi Group Benefits, Inc. (**"EPAM"**).

Riley, who has a medical condition known as gastroparesis, became a beneficiary of the plan around the early part of 1999.  Between that time and September of 2008, benefit claims were administered by Cooperative Benefits Administrators, Inc. (**"CBA"**) under then-existing terms of coverage.

In September of 2008, EPAM contracted with Blue Cross & Blue Shield of Mississippi ("**Blue Cross**") to perform claims administration of the plan and, from that point in time forward, the plan was governed by the terms of coverage embodied in the plan document denominated as:

**Electric Power Association Of
Mississippi Group Benefits Trust Plan**

**"Plan B"**

**Plan Type: C622**

(hereinafter **"the Plan"**); (BC[2] 00001-00105) [Doc. 29].   When the Plan was implemented, it was provided to all participants, including Riley.   While the Plan affords medical benefits for certain covered medical attention, it excludes certain medical treatment from coverage. Apropos of this case, the Plan does not cover medical treatment or services considered to be investigational.   (BC 00066-67).   The Plan dictates that decisions on whether medical attention is (or is not) covered are made in reliance on Blue Cross' Medical Policy, which are formal written guidelines regarding both new and existing medical and surgical procedures, products, drugs, technology and tests.   (BC 00018).   The Blue Cross Medical Policy is formulated with peer-reviewed, scientific literature as well as input from practicing professionals. *Id.* Under the Blue Cross Medical Policy, certain treatment for gastroparesis is considered investigational and therefore expressly excluded from coverage.   (BC 00497-498).

To reset the stage, in 2005 and then again in 2007, Riley underwent medical procedures related to her gastroparesis.   In August of 2005, a gastric pacemaker device known as a gastric electrical stimulator (**"GES"**) was implanted in Riley.   (BC 00193). In December of 2007, after the battery (a/k/a pulse stimulator) to the GES failed, Riley underwent a procedure to replace it.   *Id.*   CBA, who was administering plan benefits

---

[2]   The designation "BC" is used herein to refer to the administrative record [Doc. 29] which shares the same designation.

during 2005 and 2007, approved payment of benefits for these two procedures.

Then, in the spring of 2009, after the current Blue Cross Plan was implemented, Riley's GES device failed again (BC 00193), and Riley sought pre-authorization for a GES procedure from Blue Cross.

On May 19, 2009, Blue Cross received a letter from Dr. Terrance L. Jackson, Jr., one of Riley's doctors.  In his letter, Dr. Jackson acknowledged that coverage under the Plan for the GES procedure was doubtful, but he asked that an exception be made in Riley's case.  (BC 00616).

Following that, on June 1, 2009, Riley's husband contacted Blue Cross to see if coverage for the procedure would be authorized before it was performed, but he was informed that the Plan did not provide for such pre-authorization.  (BC 00456 and 00569).  Blue Cross nonetheless alerted Mr. Riley that he should not expect the procedure to be covered on account of the procedure being investigational under Blue Cross' Medical Policy.  *Id.*  Mr. Riley acknowledged that he was aware that the procedure was, in his words, "partially experimental." *Id.* On June 3, 2009, Blue Cross followed   behind Mr. Riley's call with a written explanation to him that "prior authorizations are not available for services which have not been performed[,] and that "[a] determination of benefits for proposed services will be made at the time the claims are received and processed." (BC 00653).  This was  consistent with the terms of the Plan.

On June 19, 2009, Jennifer Jaff ("**Jaff**") of Advocacy for Patients with Chronic Illness, Inc., wrote on Riley's behalf to Ty Harrell, Comptroller of the Plan, arguing

that surgery to replace Riley's GES battery should be covered because the treatment was, in her opinion, medically necessary.  (BC 00666).  Jaff enclosed with her letter some medical literature, as well as selections of Riley's medical records.

On July 14, 2009, Riley contacted Blue Cross again about pre-authorization of the procedure and, once again, she was told that the Plan did not provide for pre-authorization. (BC 00459 and 00569).  On July 16, 2009, Blue Cross sent a letter to Riley, iterating that the GES was investigational under the Plan's Medical Policy. (BC 00477).

On July 22, 2009, Jaff, on behalf of Riley, wrote what she deemed an "appeal" letter to Blue Cross.  (BC 00631-00640).  Jaff acknowledged that Blue Cross gave written notice to Riley that it would not make a determination of coverage prior to the procedure being performed, yet Jaff (incorrectly) argued that Blue Cross had not provided Riley a full and fair review of her claim because, as Jaff saw it, the July 16, 2009, letter in which Blue Cross alerted Riley that the procedure was investigational failed to recite Plaintiff's rights to appeal.  *Id.*  But, since the Plan did not provide pre-authorization rights for this type of procedure, the appeal provisions regarding pre-authorization did not apply.[3]

On July 31, 2009, Riley underwent the procedure to have a new GES pulse stimulator implanted. (BC 00509).  Subsequently, the bill was submitted to Blue Cross

---

[3] Riley points to the language of the Plan which provides that "[a]ppeals from denials of prior authorization are to be adjudicated within thirty (30) days of the filing of the appeal."  That provision pertains to procedures outlined in the Utilization Management section of the Plan for non-network or non-participating providers.  In contrast, pre-authorization was not available in Riley's case and therefore the appeal rights her advocate was asserting were altogether inapplicable.

for payment.  On August 31, 2009, Blue Cross sent Riley an Explanation of Benefits under which it initially denied payment of the GES battery replacement surgery on the basis that there was no medical necessity documentation. (BC 00489-491).  On September 8, 2009, Jaff wrote Blue Cross in response to the Explanation of Benefits, asserting that medical records and other documentation had already been provided. (BC 00474).  Jaff continued to misapprehend or disregard the fact that the Plan did not provide for pre-authorization of the procedure, as the records which she insisted had already been provided were Riley's *pre*-surgery records produced on July 22, 2009, whereas the surgery did not take place until July 31, 2009.  Needless to say, the records pertaining to Riley's surgery were not received by Blue Cross until *after* her surgery.

On September 30, 2009, after receiving and reviewing Riley's surgical records, Blue Cross sent Riley an Explanation of Benefits denying coverage for the GES procedure on account of its investigational status.  (BC 00494).  Jaff, still acting on Riley's behalf, persisted in her mistaken belief that Riley had already initiated an appeal from Blue Cross's refusal to pre-authorize the surgery, when in fact Riley's right to appeal the denial of her claim was not triggered until September 30, 2009.  Indeed, by letter dated October 6, 2009, Jaff again asserted that "[s]ince this was a pre-service appeal, and [Blue Cross] did not respond within 30 days as required by the Plan document, it is our intent to proceed to federal court at this time."  (BC 00469-70). That letter was received by Blue Cross on October 12, 2009. *Id.*

On November 10, 2009, forty-one (41) days after denial of her claim – and

without exhausting her Plan remedies – Riley filed suit. [Doc. 1].  In her complaint, Riley picked up where Jaff left off by contending that the July 16th (pre-surgery) letter from Blue Cross failed to recite her appeal rights, "therefore not providing [her] with a full and fair review, in violation of ERISA [§ 503, 29 U.S.C. § 1133]." *Complaint* at ¶¶ 12, 25.  Thus, Riley's suit adopted the mistaken belief that the pre-surgery letter from her advocate constituted an appeal of the denial of pre-authorization.  *Id.* at ¶¶ 14, 26.

The Plan is clear:  Riley had no pre-authorization rights, and thus, no corresponding right of appeal.  It was the denial of Riley's claim on September 30, 2009, which started the clock on her right to appeal – and Riley prematurely filed suit.

### III. <u>Riley's Theories of Recovery</u>

Riley's complaint advances two counts:

First, she seeks to reverse the denial of benefits for her 2009 GES procedure and, in support of that claim, asserts the following:

> **The Plan has no legitimate basis for refusing to cover the replacement of the battery in the GES device in light of its coverage of the implantation of the device i n 2005 and the replacement of the battery in 2007, and, as such, its denial of coverage is arbitrary and capricious.**

*Complaint* at ¶ 21.  Riley contends that because benefits were paid for her 2005 and 2007 procedures, that makes it self-evident that the denial of benefits for her 2009 procedure was wrongful; thus, completely ignoring that the Plan in effect at the time of her 2009 procedure excluded the service from coverage.

Secondly, Riley lodges a claim for alleged breach of fiduciary duty under

§1132(a)(2) [§502(a)(2)] of ERISA. *Id.* at ¶¶23-28.  On that count, Riley labors under

the misapprehension that such a claim is available to her, when in fact it is not.

On both counts, she paddles upstream against authoritative law.  It is

respectfully submitted that summary judgment should be granted on all of Riley's

claims and that her complaint should be dismissed, with prejudice.

**IV.**    **Standards of Review**

Two standards of review are implicated by this case.

**A.    Summary Judgment**

Summary judgment is appropriate where "the pleadings, depositions, answers

to interrogatories, and admissions on file, together with the affidavits, if any, show

that there is no genuine issue of material fact and that the moving party is entitled to

judgment as a matter of law." *Hirras v. National R.R. Passenger Corp.*, 95 F.3d 396,

399 (5th Cir. 1996) (quoting Fed. R. Civ. Proc. 56(c)).  "When the moving party has

challenged the non-movant's case under Rule 56(c), the opposing party must present

more than a metaphysical doubt about the material facts in order to preclude the grant

of summary judgment." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S.

574, 586, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986).  Facts which are irrelevant

or unnecessary to a decision are "non-material" and do not prevent summary judgment.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L. Ed. 2d 202 (1986);

*Phillips Oil Co. v. OKC Corp.*, 812 F.2d 265 (5th Cir. 1987).  Summary judgment is

mandated in any case where a party fails to establish the existence of an element

essential to the case and on which that party bears the burden of proof. *Celotex Corp.*

*v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L. Ed. 2d 255 (1986).

### B.   ERISA Standard

There are essentially two tasks a plan administrator performs when making a benefit determination: (1) determine the facts underlying the benefit claim; and (2) construe the terms of the plan.

**Factual Determinations**: A plan administrator's factual determinations are reviewed pursuant to an abuse of discretion. *Vercher v. Alexander & Alexander, Inc.*, 379 F.3d 222, 226 (5th Cir. 2004); *Pierre v. Conn. Gen. Life Ins. Co.*, 932 F.2d 1552, 1562 (5th Cir. 1991).   Under the abuse of discretion standard, "[i]f the plan fiduciary's decision is supported by substantial evidence and is not arbitrary and capricious, it must prevail." *Corry v. Liberty Life Assur. Co. of Boston*, 499 F.3d 389, 397-98 (5th Cir. 2007) (quoting *Ellis v. Liberty Life Assur. Co. of Boston*, 394 F.3d 262, 273 (5th Cir. 2004)).   "Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."   *Id.*   By comparison, "[a] decision is arbitrary when made 'without a rational connection between the known facts and the decision or between the found facts and the evidence.'" *Lain v. UNUM Life Ins. Co. of America*, 279 F.3d 337, 342 (5th Cir. 2002) (quoting *Bellaire General Hospital v. Blue Cross Blue Shield of Mich.*, 97 F.3d 822, 828 (5th Cir. 1996)).

**Construction of the Plan**: Where an ERISA plan expressly confers the plan administrator or fiduciary with the "discretionary authority to determine eligibility for benefits or to construe the terms of the plan," the applicable standard of review is

abuse of discretion.  *Wilbur v. Arco Chemical Co.*, 974 F.2d 631 (5th Cir. 1992); *Gosselink v. American Tele. & Tel. Co., Inc.*, 272 F.3d 722, 726 (5th Cir. 2001).  Here, the Administrative Services Contract between EPAM and Blue Cross expressly confers upon the plan administrator the "full discretionary authority to determine eligibility for benefits and/or to construe the terms of the Plan."  (BC 00130).

Analysis of the abuse of discretion standard relative to construing a plan involves a two-step process.  *See Vercher*, 379 F.3d at 227.  First, the court must determine whether the administrator's plan interpretation is legally correct.  "If the administrator's interpretation is legally sound, ***further analysis is unnecessary because no abuse of discretion could have occurred.***"  *Chacko v. Sabre, Inc.*, 473 F.3d 604, 610 (5th Cir. 2006) (emphasis supplied).  If it is determined that the administrator's interpretation was not correct, ***"then, and only then***, the court must consider whether the administrator's interpretation constituted an abuse of discretion."  *Curtis v. BellSouth Corp.*, 149 F. Supp. 2d 268, 273 (S.D. Miss. 2001), citing *Jordan v. Cameron Iron Works, Inc.*, 900 F.2d 53, 56 (5th Cir. 1990) *cert. denied*, 498 U.S. 939, 111 S.Ct. 344, 112 L. Ed. 2d 308 (1990) (emphasis supplied).

To determine the legally correct interpretation of a plan, the court is to consider the following elements:

1.   Whether uniform construction of the plan has been given by the administrator;

2.   Whether the interpretation is fair and reasonable; and

3.   Whether unanticipated costs would result from a different

interpretation of the plan.

*Lain,* 279 F.3d at 344.

Even where a plan has not been given its proper legal interpretation, the benefits determination must be upheld unless it was arbitrary and capricious. *Wildbur v. ARCO Chem. Co.,* 974 F.2d 631, 638 (5th Cir. 1992).

## V.      Analysis

### A.      Count I of the Plaintiff's Complaint

Insofar as determining the facts underlying Riley's claim for benefits, her medical records disclosed that the purpose of her surgery was for gastroparesis of idiopathic etiology.  The operative notes of July 31, 2009, from St. Francis Hospital specifically list Riley's pre-operative *and* post-operative diagnoses as being "idiopathic gastroparesis."  (BC 00509).  The operative procedure itself was described as the replacement of a new pulse stimulation device for the purpose of gastric electric stimulation.  (BC 00509-510).  It was this medical service for which Riley made a claim for benefits under the Plan.

Turning now to the Plan, the terms of it state that Blue Cross will rely on its Medical Policy for making benefit determinations.  (BC 00018).  The Plan further notes in this regard that the Medical Policy is not set out in its entirety in the Plan.  *Id.*  The Medical Policy is, however, published and available on Blue Cross' website.  (BC 000497-98).  The Blue Cross Medical Policy is formulated by reviewing peer-reviewed scientific literature as well as input from practicing professionals.  (BC 00018).  The literature review underlying the Medical Policy on GES reveals that no randomized

controlled trials and only small case studies have been conducted.  (BC 000497).
Moreover, the U.S. Food and Drug Administration ("**FDA**") has not approved the use
of the device except under the "humanitarian device exception" which only requires
sufficient information to show it does not pose an unreasonable or significant risk of
illness or injury.  *Id.*  The FDA exception applies to treatment intended to benefit fewer
than 4,000 patients and, thus, is exempt from having to provide results of scientifically
valid clinical investigations proving its efficacy.  *Id.*  In the case of GES, the FDA
exception is for "Enterra Therapy System" manufactured by Medtronic and no further
attempt has been made since the exemption was given in 2000 to have it otherwise
approved by the FDA.  *Id.*  The FDA specifically provides that labeling for such a
device must state *that the effectiveness of the device for the specific indication
has not been demonstrated*.  *See* 21 CFR § 814.104(b)(4)(ii).  Accordingly, the
Medical Policy of Blue Cross considers GES "investigational for the treatment of
gastroparesis of . . . idiopathic etiology." (BC 00498).  There are no exceptions to this
policy under the Plan.

Contemporaneously with Riley's claim for benefits, Dr. Frederick May, the
medical director of Blue Cross, reviewed Riley's medical records and the literature she
provided *vis-a-vis* the Medical Policy and correctly determined (1) that her GES
surgery was for the treatment of gastroparesis of idiopathic etiology and (2) that the
investigative status of GES remained unchanged.  (BC 00597).

The Plan, in plain and unambiguous terms, informs beneficiaries that "benefits
will not be provided for . . . services or items which are investigative in nature." (BC

0066-67).  In keeping with the Plan terms, Riley's claim for benefits was denied.  The decision was sound.  No credible argument can be made that the denial of benefits constituted an abuse of discretion.  ERISA requires only that there be a rational connection between the known facts and the decision in order for the a benefits decision to be affirmed.  *Anderson v. Cytec Ind., Inc.*, 619 F.3d 505, 512 (5th Cir. 2010).  In Riley's case, there is a well-connected nexus between the services she received and the decision denying benefits in accordance with the Plan terms.

Moreover, the Plan was given its legally correct interpretation.  When construing ERISA plans, federal courts follow the traditional principles of contract law, construing a participant's claim by looking to the terms of the plan and determining whether the interpretation of those terms was fair and reasonable.  See *Ellison v. Blue Cross and Blue Shield of Mississippi*, 529 F. Supp. 2d 620, 627 (S.D. Miss. 2007).  As previously shown, the terms of the Plan state that determinations of benefits are made pursuant to the Medical Policy; the Medical Policy classifies GES procedures as investigative and explains why; and the Plan expressly excludes investigational procedures and services from coverage.  The Plan was given its proper legal construction, requiring no further analysis.  Even if it was assumed *,arguendo,* that the Plan was not given its proper legal construction, the administrator's interpretation of it was the antithesis of arbitrary and capricious.

Of course, if Riley challenges the construction of the Plan, her complaint does not bear that out.  Needless to say, she maintained at the administrative level that GES is not investigational and attributed, in part, that position to the opinion of one

of her treating physicians.  Benefit determination cases, though, do not turn on battles of the experts.  ERISA does not require that administrators give any special deference to the opinions of treating physicians; nor does it impose a heightened burden of explanation on an administrator who rejects a treating physician's opinion. *Cummings v. Union Security Insurance Company*, 2008 W.L. 410644, *4 (S.D. Miss. 2008) (citing *Black & Decker Disability Plan v. Nord*, 538 U.S. 822 (2003)).  So long as the denial of a claim is based on supporting evidence, *"even if disputable,"* the decision must be affirmed. *Abate v. Hartford*, 471 F. Supp. 2d 724, 737 (E.D. Tex. 2006) (citing *Vega v. National Life Ins. Servs., Inc.*, 188 F.3d 287, 299 (5th Cir.1999)).

Riley's complaint makes clear that the heart of her contention forms around the medical benefits which were previously paid when her GES pacemaker was implanted in 2005 and then again when the pulse stimulation device was replaced in 2007.  With particularity, Riley alleges that the denial of her 2009 claim is "in direct contradiction to the fact that [she] already was approved for [GES] in 2005, and was also approved for the initial battery replacement in 2007, ***after the Plan and it's then-TPA did a careful analysis of the medical necessity of GES.*"  *Complaint* at ¶12 (emphasis supplied).  This theme spills over into Count I of Riley's complaint, in which she alleges that "the Plan has no legitimate basis for refusing to cover the replacement of the battery in the GES device ***in light of its coverage . . . in 2005 and . . . in 2007***[.]" *Id.* at ¶21 (emphasis supplied).  This contention is profoundly flawed.

First, Riley concedes, as she must, that the 2005 and 2007 determinations of coverage were made by a prior claims administrator before implementation of the Plan

in effect at the time of her 2009 claim.  There is nothing in the administrative record so much as touching on the basis for the "then-TPA's" payment of benefits in those earlier instances.  Respectfully, this Court is constrained to the contents of the administrative record before it when reviewing the 2009 denial of benefits. *Estate of Bratton v. National Union Fire Ins. Co. of Pittsburgh, PA*, 215 F.3d 516, 521 (5th Cir. 2000).  The Court's inquiry is whether a legally correct interpretation of the Plan – as it now exists – was made.  This last point leads directly to a second fatal deficiency with Riley's claim.

Riley pits herself against ERISA law by arguing that coverage of  her earlier GES procedures creates binding precedent on the Plan.  The Fifth Circuit has long recognized that "ERISA does not require such 'vesting' of the right to a continued level of the same medical benefits once those are ever included in a welfare benefit plan." *McGann v. H&H Music Co.*, 946 F. 2d 401, 405 (5th Cir. 1991).  Welfare benefit plans are distinctly unique from employee pension plans in this regard and, as courts have pointed out, this is not by accident.  Indeed, "Congress evidenced its recognition of the need for flexibility in rejecting the automatic vesting of welfare plans . . . because the costs of such plans are subject to fluctuating and unpredictable variables." *Wise v. El Paso Nat'l Gas Co.*, 986 F. 2d 929, 935 (5th Cir. 1993) (citing *Moore v. Metropolitan Life Ins. Co.*, 856 F.2d 488, 492 (2d Cir. 1988)).  An employer is under no requirement to maintain coverage at a certain level, much less at any level; rather, a participant's eligibility for benefits is determined under "then existing, current terms of the Plan[.]" *Id.*

An illuminating application of this principle is found in *McGann v. H&H Music Co., supra.* McGann, while employed by H&H Music, became afflicted with AIDS and thereafter began submitting claims for medical benefits under H&H Music's group medical plan. *McGann*, 946 F.2d at 403. At the time, the plan afforded McGann and the other employees of H&H Music up to $1 million in lifetime medical benefits. *Id.* Within a few months of learning of McGann's illness, H&H Music changed the limitation of benefits for AIDS-related claims to a lifetime maximum of only $5,000. *Id.* McGann eventually sued under §510 of ERISA, with his significant allegations being that he had been discriminated against. *Id.* Though McGann's claims differed in nature from Riley's, the Fifth Circuit's substantive analysis in *McGann* holds true in this case. In upholding H&H Music's change in the benefits which were being afforded to McGann at the time he contracted AIDS, the Fifth Circuit observed that "ERISA does not mandate that employers provide any particular benefits." *Id.* at 406. The *McGann* court explained that Congress intended for employers to "remain free to create, modify and terminate the terms and conditions of employee benefits plans without governmental interference." *Id.*

Likewise, Riley's eligibility for benefits is strictly determined by the terms of the Plan in effect at the time of her 2009 claim. Prior coverages are irrelevant and immaterial. Indeed, nothing required Riley's husband's employer to continue providing *any* health benefits after her 2005 and 2007 procedures. The touchstone is whether the 2009 denial of benefits to Riley constituted an abuse of discretion under the effective terms of the Plan, and the undisputed material facts answer the question in the

negative.  The Plan excludes benefits for investigative services and the Medical Policy followed by the Plan considers Riley's treatment to be investigative.

The decision to deny benefits should be affirmed and summary judgment granted in favor of the Plan.

**B.**      **Count II**

Riley's complaint includes a separate claim for breach of fiduciary duty brought pursuant to §502(a)(2) of ERISA.  *Complaint*, ¶¶ 23-28.  Section 502(a)(2), however, specifies that breach of fiduciary duty claims are governed by § 409.  Thus, turning to § 409, we find that section provides for imposition of personal liability on a fiduciary only "to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made... and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary." *Id.*   Riley is not entitled to any form of relief under this section.  A fiduciary who breaches his fiduciary duty can only be liable to the plan – not to an individual beneficiary.  Stated otherwise, recovery from a fiduciary under § 1132(a)(2) [§ 502(a)(2)] inures to the Plan's benefit, not to Riley's. *Murphy v. Wal-Mart Associates' Group Health Plan*, 928 F. Supp. 700, 710 (E.D. Tex. 1996) (holding, plan participant could not recover damages under § 501(a)(2), as the recovery would be to the plan); *Metropolitan Life Ins. v. Palmer*, 238 F. Supp. 2d 826, 830 (E.D. Tex. 2002) (equitable relief available to the plan, not the individual under § 1132(a)(2)); *McDonald v. Provident Indem. Life Inc. Co.*, 60 F.3d 234, 237 (5th Cir. 1995) (claim for breach of fiduciary duty under §1132(a)(2) is based on harm to the

plan, rather than harm to a particular individual).

The *Metropolitan Life* court observed that a beneficiary's claim under §1132(a)(2) was non-sensical as relief, if any, was only available to the plan and not the individual. Thus, the court examined § 1132(a)(3), which we look to as well, but again find that a breach of fiduciary duty claim is not available to Riley.  As a consequence of seeking benefits under § 1132(a)(1)(B) [§ 502(a)(1)(B)], Riley is foreclosed from bringing a claim for breach of fiduciary duty.  Specifically, "an ERISA plaintiff may bring a private action for breach of fiduciary duty only when no other remedy is available under [§ 1132]." *Rhorer v. Raythion Eng'rs & Constructors, Inc.*, 181 F.3d 634, 639 (5th Cir. 1999) (citing Varity Corp. v. Howe, 516 U.S. 489, 510-16 (1996); *Metropolitan Life Ins. v. Palmer*, 238 F. Supp. 2d 826, 830 (E.D. Tex. 2002)) ("[I]t is settled law in this circuit that a potential beneficiary may not sue for breach of fiduciary duty if he has a pending claim under section 1132(a)(1)(B) for benefits allegedly owed.").

> If "an insured has adequate redress for denied benefits through [the] right to bring suit under section 1132(a)(1), and if [the insured] is seeking the same relief that is available for a claim for benefits under section 1132(a)(1), [the insured] has no claim for breach of fiduciary duty under section 1132(a)(3), even if her claim under section 1132(a)(1) is subsequently lost on the merits." *Adams v. Prudential Ins. Co. of Am.*, No. 05-2041, 2005 WL 2669550, at *1 (S.D. Tex. Oct. 19, 2005) (observing that courts interpreting *Varity* have "consistently" reached the same result). In *Varity*, the Supreme Court emphasized that § 1132(a)(3) is a "catchall" provision that provides relief for injuries that are not otherwise adequately addressed under ERISA. 516 U.S. at 515, 116 S.Ct. 1065. Following this guidance, the Fifth Circuit has concluded that if a plaintiff can pursue plan benefits under § 1132(a)(1), the plaintiff has an adequate remedy and may not also pursue a claim under § 1132(a)(3). *See Rhorer*, 181 F.3d at 639 (upholding dismissal of the plaintiff's claim that the defendants breached their fiduciary duties by inadequate disclosures in the SPD because in addition to that claim, the plaintiff was "seeking to recover plan benefits under § 1132(a)(1)(B)" and "the claim to recover

plan benefits [wa]s the predominate cause of action in th[e] suit"); *Tolson v. Avondale Indus., Inc.*, 141 F.3d 604, 610 (5th Cir. 1998) ("Because [plaintiff] has adequate relief available for the alleged improper denial of benefits through his right to sue the Plans directly under section 1132(a)(1), relief through the application of [s]ection 1132(a)(3) would be inappropriate.").

*Khan v. American Int'l Group, Inc.*, 2009 WL 2923048 at *8 (S.D. Tex. 2009).

Accordingly, in *Fisher v. AIG Life Ins. Co.*, a plaintiff who brought a claim for benefits under § 502(a)(1)(B) was barred from pursuing a fiduciary duty claim based on allegations of not providing him with adequate notice of certain ERISA rights, just as is alleged by Riley. *Fisher*, 2009 WL 3029756 at *6 (N.D. Tex. 2009).

ERISA law is not to be so easily flouted as Riley's claim for breach of fiduciary duty attempts.  The second count of her complaint fails as a matter of law.

### VI.  Conclusion

None of the Plaintiff's claims enjoys support from the law or the facts, and it is respectfully submitted that summary judgment should be granted in favor of this Defendant and that the Plaintiff's complaint against it be dismissed with prejudice.

THIS, the 2nd day of November, 2010.

/s/ Bradley F. Hathaway
**BRADLEY F. HATHAWAY, MSB #10203**
*Counsel for The Electric Power
Associations of Mississippi Group
Benefits Trust Plan*

OF COUNSEL:

TIMOTHY M. PEEPLES - MSB #100103
DANIEL, COKER, HORTON & BELL, P.A.
265 NORTH LAMAR BLVD., SUITE R.
POST OFFICE BOX 1396
OXFORD, MISSISSIPPI  38655-1396
(662) 232-8979


BRADLEY HATHAWAY- MSB # 10203
CAMPBELL DELONG, LLP
923 WASHINGTON AVE.
POST OFFICE BOX 1856
GREENVILLE, MS 38702-1856
(662) 335-6011
bhathaway@campbelldelongllp.com

## CERTIFICATE

I, hereby certify that on November 2, 2010, I electronically filed the foregoing document with the Clerk of the Court using the ECF system which sent notification of such filing to counsel who have electronically registered with the Court, and I hereby certify that I have mailed by United States Postal Service the document to the non-ECF participants.  The following is a list of all counsel of record or parties regardless whether electronically notified by the Court or sent via United States Postal Service by this firm:

Grady L. McCool, III, Esq.
T.C.G. & McCool, PLLC
120 North Congress Street, Suite 220
Jackson, MS 39201
*Counsel for Plaintiff*

Jeffrey D. Knight, Esq.
P.O. Box 584
Jackson, MS 39205
*Counsel for Plaintiff*

Cheri D. Green, Esq.
Karen E. Howell, Esq.
Brunini, Grantham, Grower & Hewes, PLLC
P. O. Drawer 119
Jackson, MS 39201
*Counsel for Blue Cross & Blue Shield of Missisipi*

Timothy M. Peeples, Esq.
Daniel Coker Horton & Bell, P.A.
P.O. Box 1396
Oxford, MS 38655-1396
*Co-Counsel for The Electric Power Associations of Mississippi Group Benefits Trust Plan*

**/s/ Bradley F. Hathaway**