IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION

TERRI PAIGE RILEY                                                        PLAINTIFF

V.                                                              NO. 3:09CV674HTW-LRA

BLUE CROSS & BLUE SHIELD OF MISSISSIPPI
and THE ELECTRIC POWER ASSOCIATION OF
MISSISSIPPI GROUP BENEFITS TRUST                        DEFENDANTS

### REBUTTAL OF THE ELECTRIC POWER ASSOCIATIONS OF MISSISSIPPI GROUP BENEFITS TRUST PLAN IN SUPPORT OF SUMMARY JUDGMENT

**NOW COMES** the Electric Power Associations of Mississippi Group Benefits Trust Plan (hereinafter "**the Plan**") and submits the following rebuttal memorandum in support of summary judgment.

The Plaintiff's response to the Plan's motion for summary judgment has not been received for filing at this time. The Plaintiff has merely filed a motion for leave to make a late filing of her response, but the proposed response appears as an exhibit to that motion. [Doc. 33]. While no ruling has been made on Plaintiff's request, a hearing has been scheduled for February 9, 2011, on the Plan's motion for summary judgment. It is in light of that upcoming hearing that the Plan submits this rebuttal brief in the event the Plaintiff's response to summary judgment is received for filing and/or otherwise considered.

### I.     The Plaintiff's Changing Theories

In opposing summary judgment, the Plaintiff has changed her claims. In the end, it does not change the result.

Rebuttal in Support SJ.wpd

On July 31, 2009, the Plaintiff, Terri Paige Riley, underwent a medical procedure to treat her gastroparesis through the use of a device known as a gastric electrical stimulator ("**GES**"). The GES procedure was not covered by Riley's employee benefit plan administered by Blue Cross due to it being an "investigative" service which is expressly excluded from coverage under the Plan. Moreover, the Blue Cross Medical Policy advises plan participants that GES is not a covered service.

Aggrieved, Riley sued the Plan and Blue Cross on two specific theories of liability – **Count I**: that the denial of benefits was presumptively "arbitrary and capricious" considering that medical benefits were paid for two previous GES procedures which Riley underwent prior to implementation of the Blue Cross terms of coverage; **Count II:** that Riley was caused individual damages by an alleged breach of fiduciary duty.

The Plan moved for summary judgment on both claims, demonstrating that authoritative law supported neither of them. In particular, Riley's first count violated the ERISA principle that there is no "vesting" of rights to a continued level of the same medical benefits just because such benefits were at one time included in a welfare benefit plan. As to her second count, Riley is barred from pursuing a breach of fiduciary duty claim as such a claim must be founded on direct harm to the plan rather than harm to an individual beneficiary.

Riley, in response, does not challenge (much less acknowledge) the Plan's bases for summary judgment, and she seems to have altogether abandoned the theories of liability which appear in her complaint. Riley now asserts that the decision to deny

benefits was arbitrary and capricious for three newly formulated reasons:

1. Because the GES system has received limited FDA approval through a "humanitarian device exemption" and therefore, her contention goes, the Plan's coverage terms are "outdated" and "misguided."

2. Because the GES procedure is not an "investigative" service when compared to materials Riley submitted to Blue Cross, including a letter from one of her treating physicians and various research articles.

3. Because the GES procedure gave Riley relief from her symptoms – in other words, the procedure is good medicine for Riley's individual condition.

*See Plaintiff's Response* at p. 5.

As will be seen, Riley is essentially arguing that because the FDA has granted a special exemption which gives patients access to GES and because GES works for her symptoms, the procedure is not "investigative." This is not a case, however, about Riley's access to GES *via* the FDA's exemption or even whether Riley enjoyed favorable results from the procedure. The question for the Court's determination is whether the procedure was covered by the terms of the Plan. *See McGann v. H&H Music Co.*, 946 F. 2d 401, 405 (5th Cir. 1991) (holding, ERISA does not mandate that a plan cover any particular procedure). Thus, whereas her complaint does not bear this out, Riley's new argument frames the issue as being whether the Plan was given a legally correct interpretation.

In answering that question, the parties are in agreement that the abuse of

discretion standard governs this Court's review of the case and, therefore, "the Court must uphold the Administrator's decision if it [was] supported by substantial evidence and [was] not arbitrary and capricious." *Singley v. Hartford Life & Accident Insurance Co.*, 497 F. Supp. 2d 807, 817 (S.D. Miss. 2007). Moreover, when construing ERISA plans, federal courts follow the traditional principles of contract law, construing a participant's claim by looking to the terms of the plan and determining whether the interpretation of those terms was fair and reasonable. See *Ellison v. Blue Cross and Blue Shield of Mississippi*, 529 F. Supp. 2d 620, 627 (S.D. Miss. 2007).

Riley separately seeks to avoid summary judgment by asserting that Defendant Blue Cross failed to provide her a "full and fair review" of her claim by failing to follow certain procedural requirements under ERISA.

The Plan will respond to each assertion raised by the Plaintiff in her opposition to summary judgment.

## II.   Assertion No. 1: Enterra Therapy is Not Experimental or Investigational Under Federal Regulations

Currently, there is only one GES system which has received FDA approval through a "humanitarian device exemption" – namely, the Enterra Therapy GES system manufactured by Medtronic. (BC00497). Riley submits that the FDA's exemption controls the question of Plan coverage, and pressing the point, she offers the *FDA's* regulatory distinction between a "humanitarian device" and an "investigational device." *Plaintiff's Response*, p.6. But, the FDA's regulatory definitions do not supply coverage terms – it is the Plan which supplies the terms of coverage.

This Court, in *Curtis v. BellSouth*, 149 F. Supp. 268 (S.D. Miss. 2001) (Wingate,

J., presiding) held that "in determining whether the plan administrator made a legally correct interpretation *of the plan language* in question, the court must consider the following: (a) whether the interpretation at issue is consistent with *a fair reading of the plan*; (b) whether there is uniformity in the *construction of the plan*; and (c) whether the interpretation results in any unanticipated cost to the plan." *Id.* at 273 (emphasis added).

In *Ellison v. Blue Cross and Blue Shield of Mississippi*, 529 F. Supp. 2d 620 (S.D. Miss. 2007) (Wingate, J., presiding), this Court held that it would follow "traditional principles of contract and trust law, construing a [plan] participant's claim 'as it would have any other contract claim – by looking *to the terms of the plan and other manifestations of the parties' intent.*'" *Id.* at 627 (citing *Sunbeam-Oster Co., Inc. Group Benefits Plan for Salaried and Non-Bargaining Hourly Employees v. Whitehurst*, 102 F.3d 1368, 1373 (5th Cir.1996)) (emphasis added).

It is Riley who carries the burden of proof, yet she does not analyze her claim under the crucible of these principles, but rather seeks to substitute the FDA's regulatory definitions to find coverage. By comparison, when we look to the terms of the Plan, we find the following definition of "investigative":

> The use of any treatment, procedure, facility, equipment, drug, device, or supply *not yet recognized* by certifying boards and/or approving or licensing agencies or published peer review criteria *as standard, effective medical practice* for the treatment of the condition being treated.

(BC 00027) (emphasis added). The Plan goes on to state that "[b]enefits will not be provided for . . . services or items which are investigative in nature." (BC 00066-67).

Additionally, the Blue Cross Medical Policy, which is incorporated into the Plan, states that GES is "investigational for the treatment of gastroparesis of . . . idiopathic etiology." (BC 00498). There are no exceptions to this policy under the Plan. *Id.*

Giving the Plan language a fair and reasonable interpretation, as we must, the FDA would have to recognize that GES is "standard, effective medical practice" to remove it from the Plan's definition of investigative. The FDA has not done that. Not only has the FDA *not* deemed GES as "standard, effective medical practice," but the FDA has expressly determined that the ***"effectiveness of the device has not been demonstrated."*** *See* 21 C.F.R. § 814.104(b)(4)(ii) (emphasis added). Riley concedes this point in her response, stating that the FDA's exemption affords patients like her access to the GES system, ***"without having to show definitive proof of its effectiveness."*** *Plaintiff's Response,* p. 7. In a theme which repeats itself, Riley confuses her access to GES with Plan coverage for GES. The FDA grants access – but, the Plan dictates coverage. In short, the FDA's exemption actually demonstrates the Plan was given its proper legal interpretation, and Blue Cross's Medical Policy is consistent with the current state of the FDA's regulation of GES.

Further to this point, the only manufacturer authorized by the FDA to market a GES system has *not* recognized GES as being "standard, effective medical practice," and, in fact, the manufacturer affirmatively disclaims proof of its efficacy. The administrative record bears out that Blue Cross obtained current literature directly from Medtronic, the manufacturer of the GES system. Medtronic's literature states, ***"the effectiveness of this device for this use has not been demonstrated."*** (BC

00613) (emphasis added). No extra measure of contract-interpretation acumen is required to appreciate why GES is deemed an investigative service under the only fair interpretation the Plan can be given.

Unmoved by these facts, Riley has nothing but condemnation for the Plan, calling it "misguided" and "outdated" and she accuses Blue Cross of being "unwilling to change their medical policy." These are *ad hominem* arguments, though, which reveal Riley's personal feelings about GES as opposed to demonstrating any deficiencies in the administrator's interpretation of the Plan. As Mark Twain wrote in *Does the Race of Man Love a Lord?*, "We do not deal much in facts when we are contemplating ourselves."

"If the administrator's interpretation [of the Plan] is legally sound, further analysis is unnecessary because no abuse of discretion could have occurred." *Chacko v. Sabre, Inc.*, 473 F.3d 604, 610 (5th Cir. 2006) (emphasis supplied). It is respectfully submitted that the Plan was given its proper legal interpretation.

### III. Assertion No. 2: Enterra Therapy is Not an Investigative Service According to BCBS's Own Policy

Next, Riley disputes that GES is "investigative" by claiming that "the vast number of [internal review boards], peer review medical literature, insurance companies and even Mississippi Medicare do not consider GES or Enterra therapy to be experimental or investigational for the treatment of nausea or vomiting secondary to gastroparesis." This contention is likely intended to excite in the court a belief that there is this mountain of scientific evidence out there disputing what the FDA and the manufacturer's own literature currently have to say on the subject of GES.

Regardless, so long as the denial of a claim is based on supporting evidence, *"even if disputable,"* the administrator's decision must be affirmed. *Abate v. Hartford*, 471 F. Supp. 2d 724, 737 (E.D. Tex. 2006) (citing *Vega v. National Life Ins. Servs., Inc.*, 188 F.3d 287, 299 (5th Cir.1999)). Riley's denial of benefits cannot be reversed simply by countering the evidence relied on by the plan administrator or even by producing the greater weight of favorable evidence. "The law requires only that substantial evidence support a plan fiduciary's decision . . . not that substantial evidence (or, for that matter, even a preponderance) exists to support the employee's claim[.]" *Singley*, 497 F. Supp. 2d at 817. Thus, even assuming Riley could point to other opinions on the efficacy of GES, that would be insufficient to show that the Plan abused its discretion. *See Curtis*, 149 F. Supp. 2d at 273 (holding, "this court's authority to reverse a plan administrator's decision is limited to only those instances in which the plan administrator abused its discretion."). The reality is, Riley's claims of having disputing evidence are greatly exaggerated.

Riley directs the Court to a letter in the administrative record written by Dr. Thomas L. Abell on July 21, 2009. (BC 00182). Although Dr. Abell states in his letter that the GES system "is now standard of care for gastroparesis patients who do not respond to other therapies," the letter is just that – a *letter* written on behalf of Riley by one of her treating doctors. Dr. Abell's letter does not remove GES from the Plan's definition of investigative; Dr. Abell's letter does not trump the FDA's and Medtronic's determination concerning the efficacy of GES; and most significantly, Dr. Abell's letter does not constitute "a certifying board, an approving licensing agency or a published

peer review criteria deeming GES standard, effective medical practice." Imagine the mischief that would be incited if a plan participant could create coverage merely by having his or her doctor write a letter claiming a particular procedure should be covered. Accordingly, ERISA does not recognize a "treating physician rule," and "courts have no warrant to require administrators automatically to accord special weight to the opinions of a claimant's physician; nor may courts impose on plan administrators a discrete burden of explanation when they credit reliable evidence that conflicts with a treating physician's evaluation." *Black & Decker Disability Plan v. Nord*, 38 U.S. 822, 123 S.Ct. 1965, 1972 (U.S. 2003); *Cummings v. Union Security Insurance Company*, 2008 W.L. 410644, *4 (S.D. Miss. 2008) (holding, "ERISA does not require . . . that administrators give special deference to the opinions of treating physicians and does not impose a heightened burden of explanation on an administrator who rejects a treating physician's opinion). Simply put, Dr. Abell's letter has no talismanic effect to create coverage nor does it demonstrate an improper interpretation of the Plan.[1]

---

[1] In her response, Riley alludes to a contention which first appeared in her opposition to Blue Cross's motion for summary judgment. [Doc. 19]. Namely, Riley claims that Blue Cross, in a telephone conversation with Aaron Sisk of the Mississippi Department of Insurance, indicated that GES was excluded from plan coverage *based on* Dr. Abell's opinions. Riley offered the affidavit of Aaron Sisk to establish an account of the telephone conversation. For its part, Blue Cross countered with an affidavit of its own stating that, while Blue Cross had a brief telephone call with Mr. Sisk, he was mistaken in his recollection of the conversation. [Doc. 20]. In other words, a telephone call was had between two people who had differing recollections or understandings of what was said. All of this is immaterial. Riley's account of the telephone conversation is not part of the administrative record and therefore Riley's assertions about what was said, including Mr. Sisk's affidavit, are inappropriate for consideration and should be stricken. This Court, in *Curtis v. BellSouth Corp.*, held that "[the] court is **precluded** or **prohibited** from receiving or considering evidence to resolve disputed material facts," when such evidence was not

Riley, nonetheless, makes the leap from Dr. Abell's letter to the claim that "the majority of doctors treating gastroparesis patients agree with (Dr. Abell's) statement." There is no citation to the record for this assertion and Riley did not present data at the administrative level establishing how many doctors treat gastroparesis patients, much less how many of those doctors agree with Dr. Abell as compared to those who do not. Instead, she nakedly asserts in this action that Blue Cross is "in the minority" on the subject as if it is manifest, when, according to the FDA and the manufacturer of the GES system, it is plainly not.

Riley next points to Medicare coverage for GES as so-called proof that it is not "experimental" or "investigational." Medicare's election to pay for GES is not synonymous with the Plan covering GES. Medicare does not mandate what an employee benefit plan should and should not cover – the plan at issue does that. Here, the Plan does not state that any procedure covered by Medicare will also be covered by the Plan. Nor does the Plan definition of "investigative" exclude any procedure covered by Medicare. Medicare's decision – and, for that matter, the decisions of other governmental entities to which Riley points, such as the Florida Office of Insurance Regulation and the United States Office of Personnel Management – to pay for GES has no trumping effect on the Plan's exclusion of GES from coverage. Respectfully, this Court is restrained by ERISA from reading coverage into a plan which does not exist simply because other sources or other plans provide such coverage. It was "Congress's intent that employers remain free to create . . . the terms and conditions of employee

---

part of the administrative record. 149 F. Supp. 268, 273 (S.D. Miss. 2001) (emphasis added).

benefit plans without governmental interference." *McGann v. H & H Music Co.*, 946 F. 2d 401, 407 (5th Cir. 1991).

Riley also makes loose reference to "vast amounts of medical literature" which she says can be found in the administrative record to support her position that GES therapy is not investigational or experimental. She appends to this claim an omnibus citation to over 100 pages of material in the record (BC 00250-00363) and then says, "I rest my case." The decisions of plan administrators are not so easily flouted.

Riley submitted 9 research articles to Blue Cross *published* between 2001 and 2007, though all were authored before 2007. Eight of the 9 articles were sponsored or financially supported by Medtronic, the manufacturer of the GES system. (BC 00307, 312, 316, 323, 331, 347, 354 and 362). Still, by 2009, when the benefits determination was made for Riley's GES procedure, Medtronic was still of the opinion that the effectiveness of GES had *not* been demonstrated. Belying Riley's assertions, the articles she submitted merely demonstrate ongoing research – mostly by or for Medtronic – into the efficacy of GES which has not resulted in anything beyond the FDA's humanitarian device exemption of it.[2] A brief survey of the articles shows why:

- The article titled "Gastric Electrical Stimulation for Medically Refractory Gastroparesis," reports that the small group clinical study reviewed in the article contained "design deficiencies" and that ***future research***

---

[2] It bears mention that 5 of the 9 articles submitted by Riley were authored or co-authored by Dr. Abell. It is evident from his articles that Dr. Abell is an advocate of his own work on GES and, in one article, he takes on medical insurers for their "reluctance" to cover GES. (BC 00330). Thus, his letter written for Riley's benefit in this case is inherently biased, if not self-serving.

*trials were needed.*" (BC 00299 - BC 00317) (emphasis added).

- The article titled "Gastric Electrical Stimulation for Gastroparesis Improves Nutritional Parameters at Short, Intermediate and Long-Term Follow-Up," concludes, following a research trial on GES, that "the exact mechanism for action of GES is *unknown*," that "several *hypotheses* have been proposed," and that GES is a "*possible treatment option [to be] considered.*" (BC 00308 - 00312) (emphasis added).

- The article titled "Gastric Electrical Stimulation Results in Improved Metabolic Control and Diabetic Patients Suffering from Gastroparesis," reported on a research trial involving 17 insulin-dependent diabetic subjects. In addition to the fact that Riley does not suffer from diabetic gastroparesis, the researchers concluded that "*further studies will be needed*" to evaluate the efficacy of GES on diabetic sequellae. (BC 00313 - 00317) (emphasis added).

- In "Treatment of Diabetic Gastroparesis by High Frequency Gastric Electrical Stimulation," – another review of a research trial involving *diabetic* gastroparesis – the authors state that "the *standard treatment* of symptomatic [diabetic gastroparesis] consists of glycemic control, dietary manipulation, medications, and, in severe cases, surgical procedures." As for GES, the authors posit that, "gastric electric stimulation has been *investigated as a new approach for treating medically refractory gastroparesis,*" (BC 00319) but that "the exact

mechanisms of action of GES *remain to be elucidated.*" (BC 00323) (emphasis added).

- In "Gastroparesis and the Gastric Pacemaker: A Revolutionary Treatment for an Old Disease," GES is referred to as "new and *hopeful* therapy" which has only received approval via the FDA's humanitarian use device exemption. The article reports on *"associations"* between GES and improvements in patients based on research trials. (BC 00325-331).

- In "Gastric Electrical Stimulation in Intractable Symptomatic Gastroparesis," the authors concluded that further research is needed — specifically, "a properly randomized placebo-controlled trial." (BC 00340).

- In the article titled "Gastric Pacing is a New Surgical Treatment for Gastroparesis," the authors conclude that their research merely "signals the beginning of the era of the practical application" of GES. (BC 00347).

- The article titled "Gastric Electrical Stimulation: An Alternative Surgical Therapy for Patients with Gastroparesis" involved a small group research trial of GES. The authors of the article concede their *"present state of relative ignorance"* with respect to GES's mechanism of action, and thus, the *"possibility that symptom improvement may not be related to the [GES]."* The authors state that GES might be *"considered as an alternative to . . . patients with end-stage gastric dysfunction."* (BC 00349-356) (emphasis added).

- In "Gastric Electrical Stimulation is Safe and Effective: A Long-Term Study in Patients with Drug-Refractory Gastroparesis in Three Regional Centers," the authors report that further research studies "to identify which patients will benefit most [from GES], and under what conditions, *are warranted*." (BC 00357-00363) (emphasis added).

The most likely explanation for Riley's superficial treatment of the "vast amounts of medical literature" in the record is that the literature she supplied simply traces ongoing GES research trials which are the *resin d'etre* for the manufacturer's disclaimer that the effectiveness of the device is yet to be determined.

The Plan has demonstrated that a legally correct construction was given to its terms in finding the GES to be excluded from coverage. The Plan has demonstrated that it did not act arbitrarily or capriciously in reaching its decision. Though Riley rails against that decision, she fails to show, with the rule of law, how the Plan abused its discretion.

### IV. Assertion No. 3: Enterra Therapy is Medically Necessary to Treat the Plaintiff.

Turning to her next assertion, Riley pleads her case by comparing her symptoms before she had the GES procedure with her symptoms after the procedure and by recounting how she allegedly paid her medical bills out of her retirement plan (which is not in the record and therefore improper for consideration). ERISA reserves no room for this sort of appeal to sympathy and bias. As the Fifth Circuit aptly stated in an ERISA action involving a plan beneficiary suffering from incurable Lou Gehrig's disease – "we can only speak to what the law commands, not how our sympathy

dictates." *King v. Provident Life & Acc. Ins. Co.*, 68 F.3d 471, n.9 (5th Cir. (Miss.)1995). Our courts are seats of justice, not seats of sympathy. It is the rule of law which must prevail in the end. The payment of benefits can not be compelled for a non-covered procedure simply because it affords a plan participant relief from a particular medical condition. ERISA affords employers the freedom to provide and, conversely, not to provide certain employee benefits, and "neither Congress nor the courts are involved in either the decision to establish a plan or in the decision concerning which benefits a plan should provide." *McGann*, 946 F.2d at 407. That GES "works" for Riley is not competent evidence showing that the Plan administrator abused its discretion in denying her claim.

In pleading her case, Riley momentarily retreats to her original contention that "it is simply ludicrous" for the Plan to cover her 2005 and 2007 GES procedures but not the 2009 procedure. Riley offers no legal support or reasoned analysis for this purely visceral argument. The Plan, in its summary judgment brief, set forth the legal principles which prohibit Riley from claiming a right to benefits under Blue Cross's terms of coverage merely because benefits were once afforded to her prior to the Blue Cross terms. It is the Plan terms in effect at the time she submitted her claim for benefits which control. Riley's response to this is: "That's ludicrous" – an unworthy challenge to an issue controlled by law.

V. **Assertion No. 4: The Plan Violated ERISA.**

The balance of Riley's response is devoted to the claim that Blue Cross denied Riley a full and fair review of her claim by failing to recite her rights triggered by the

Rebuttal in Support SJ.wpd

15

denial of benefits. This argument is principally directed at Blue Cross but Riley argues that the Plan should also be held liable for Blue Cross' alleged procedural violations and, therefore, the Plan will respond.

Riley's argument is based on the false premise that Riley was denied pre-authorization for her procedure. This goes back to Riley's repeated attempts to get Blue Cross to commit to covering the GES procedure before she had it, but Blue Cross rejected those attempts because Riley's plan does not provide for pre-authorization of procedures (and the Plaintiff does not demonstrate otherwise).

Riley was informed on multiple occasions that the Plan did not provide for pre-authorization. For instance, on June 3, 2009, before Riley's surgery, Blue Cross wrote to advise her in unmistakable terms that "prior authorizations are not available for services which have not been performed[,]" and that "[a] determination of benefits for proposed services will be made at the time the claims are received and processed." (BC 00653). This was consistent with the terms of the Plan and "ERISA requires the plan be administered as written and to do otherwise violates not only the terms of the plan but causes the plan to be in violation of ERISA." *Huizing v. Metropolitan Life Ins. Co.*, 2010 WL 1417728, *6 (W.D. Mich. March 31, 2010) (quoting *Gagliano v. Reliance Standard Life Ins. Co.*, 547 F.3d 230, 239 (4th Cir. 2008) (citing 29 U.S.C. § 1102(a)(1)(2008))).

Accordingly, Riley had no appeal rights until her post-services claim was actually denied. With *that* denial, the Explanation of Benefits given to Riley prominently stated:

> If you disagree with our decision on this claim, you may request a review within 180 days. Your request for a review of this decision must be submitted in writing. You must follow the instructions in the "appeal procedures" provision of your plan document. If your Plan is subject to ERISA, you have rights under Section 502(a) of ERISA once an appeal decision has been rendered. If this EOB indicates that a denial was based on a medical necessity exclusion or limitation, you have the right to an explanation of such determination free of charge upon written request.

(BC 00489). This notice accords with ERISA. Riley is simply in error when she claims that Blue Cross failed to recite her rights and failed to inform her of the right to appeal under the Plan.

Inexplicably, after receiving the above notification, Riley did not exercise any of her rights. Instead, Riley had her patient-advocate write Blue Cross, claiming that "[s]ince this was a pre-service appeal and [Blue Cross] did not respond within 30 days as required by the Plan document, it is our intent to proceed to federal court at this time." Less than 30 days after Blue Cross received that letter, Riley filed suit. [Doc. 1]. But, there is no such thing as a "pre-service appeal" and even Riley notes in her complaint that the Plan provides that "appeal from denials of claims post-service are to be adjudicated within *sixty (60) days* [not 30 days] of the filing of the appeal." *Id.* at ¶ 13 (emphasis added). Blue Cross complied with the procedural requirements of ERISA. It was Riley who did not give Blue Cross an opportunity to respond in accordance with ERISA and DOL regulations before filing this suit.

Riley's argument is akin to a party who complains that she was not afforded the right to take an appeal from a jury verdict which had not yet been rendered but, when the verdict was rendered, did not take an appeal. This defies rationale. Riley has

persisted in this mistaken belief that she had a pre-services right of appeal (which did not exist) from a denial of benefits (which had not occurred). Riley cannot manufacture a procedural violation when the Plan's procedural obligations had not been triggered – and when they were, the Plan adhered to the requirements of ERISA.

Even so, "remand to the plan administrator for full and fair review is usually the appropriate remedy when the administrator fails to substantially comply with the procedural requirements of ERISA." *Huzing*, 2010 WL 1417728, *5 (quoting *Lafleur v. Louisiana Health Serv. & Indem. Co.*, 563 F.3d 148, 157 (5th Cir. 2009) (citing cases from the 2d, 3d, 4th, 6th, 7th, 9th and 10th circuits)). The 5th Circuit Court of Appeals further explained the rationale for this default rule as follows:

> This position is consistent with the default rule of other circuits and our pronouncements in *Wade [v. Hewlitt-Packard Dev. Co. LP Short-Term Disability Plan*, 493 F.3d 533 (5th Cir. 2007)] that procedural violations of ERISA generally do not give rise to a substantive damages remedy. When the procedural violations are nonflagrant, remand is typically preferred over a substantive remedy to which the claimant might not otherwise be entitled under the terms of the plan. *See Gagliano*, 547 F.3d at 240; *see also Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 113, 109 S. Ct. 948, 103 L. Ed. 2d 80 (1989) ("ERISA was enacted to promote the interests of employees and their beneficiaries in employee benefit plans and to protect contractually defined benefits").

*Lafleur*, 563 F.3d at 157-58.

A plaintiff denied benefits "has no expectation of receiving them unless her claim is meritorious, and thus returning her to the status quo prior to the § 1133 violation requires only curing the procedural violation so that she may fairly pursue the merits of her claim." *Huzing*, 2010 WL 1417728 at *5 (citations omitted). In other words, Riley has no action for damages even *assuming* a procedural violation.

## VI.     Conclusion.

In her conclusion, Riley seeks to have this court force Blue Cross to change its terms of coverage to pay benefits for GES. This is fundamentally at war with the intent of ERISA to grant employers the freedom to choose what benefits, if any, are to be provided to employees and on what terms. It bears emphasis – "neither Congress nor the courts are involved in either the decision to establish a plan or in the decision concerning which benefits a plan should provide." *McGann*, 946 F.2d at 407.

The Plan respectfully submits that summary judgment should be granted in its favor, affirming the benefits determination made in this case.

**RESPECTFULLY SUBMITTED**, this, the 1st day of February, 2011.

/s/ *Bradley F. Hathaway*
BRADLEY F. HATHAWAY, MSB #10203
*Counsel for The Electric Power*
*Associations of Mississippi Group*
*Benefits Trust Plan*

OF COUNSEL:

TIMOTHY M. PEEPLES - MSB #100103
DANIEL, COKER, HORTON & BELL, P.A.
265 NORTH LAMAR BLVD., SUITE R.
POST OFFICE BOX 1396
OXFORD, MISSISSIPPI 38655-1396
(662) 232-8979

BRADLEY HATHAWAY- MSB #10203
CAMPBELL DELONG, LLP
923 WASHINGTON AVE.
POST OFFICE BOX 1856
GREENVILLE, MS 38702-1856
(662) 335-6011
bhathaway@campbelldelongllp.com

## CERTIFICATE

I, hereby certify that on February 1, 2011, I electronically filed the foregoing document with the Clerk of the Court using the ECF system which sent notification of such filing to counsel who have electronically registered with the Court, and I hereby certify that I have mailed by United States Postal Service the document to the non-ECF participants. The following is a list of all counsel of record or parties regardless whether electronically notified by the Court or sent via United States Postal Service by this firm:

> Grady L. McCool, III, Esq.
> T.C.G. & McCool, PLLC
> 120 North Congress Street, Suite 220
> Jackson, MS 39201
> *Counsel for Plaintiff*
>
> Jeffrey D. Knight, Esq.
> P.O. Box 584
> Jackson, MS 39205
> *Counsel for Plaintiff*
>
> Cheri D. Green, Esq.
> Karen E. Howell, Esq.
> Brunini, Grantham, Grower & Hewes, PLLC
> P. O. Drawer 119
> Jackson, MS 39201
> *Counsel for Blue Cross & Blue Shield of Missisippi*
>
> Timothy M. Peeples, Esq.
> Daniel Coker Horton & Bell, P.A.
> P.O. Box 1396
> Oxford, MS 38655-1396
> *Co-Counsel for The Electric Power Associations of Mississippi Group Benefits Trust Plan*

/s/ **Bradley F. Hathaway**