**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION**

**TERRI PAIGE RILEY**                                                                    **PLAINTIFF**

**V.**                                                                    **NO. 3:09CV674HTW-LRA**

**BLUE CROSS & BLUE SHIELD OF MISSISSIPPI
and THE ELECTRIC POWER ASSOCIATION OF
MISSISSIPPI GROUP BENEFITS TRUST**                                **DEFENDANTS**

**MEMORANDUM OPINION AND ORDER**

Before this court is the motion of defendant Electric Power Association of

Mississippi Group Benefits Trust Plan ("the Plan") for summary judgment under Rule

56(a) of the *Federal Rules of Civil Procedure* [1](Docket No. 30).  The court also has

before it the motion of plaintiff Terri Paige Riley for leave to file a response to summary

judgment (Docket no. 33).  The court held a hearing in this matter on February 25,

2011, at the conclusion of which it granted both motions. In ruling on the motion for

summary judgment, the court has considered the motion (Docket No. 30); the response

of plaintiff, Terri Paige Riley ("Riley"), (Docket No. 33); the Plan's rebuttal brief (Docket

No. 38) and the Administrative Record (Docket No. 29).

In this action, Riley brings claims against the Plan under the Employee

Retirement Income Security Act of 1974, Title 29 U.S.C. § 1002 *et seq.* ("ERISA")

---

[1]Rule 56(a) states:

Motion for Summary Judgment or Partial Summary Judgment. A party may move
for summary judgment, identifying each claim or defense - or the part of each
claim or defense--on which summary judgment is sought. The court shall grant
summary judgment if the movant shows that there is no genuine dispute as to
any material fact and the movant is entitled to judgment as a matter of law. The
court should state on the record the reasons for granting or denying the motion.

arising out of the denial of medical benefits under Title 29 U.S.C. § 1132(a)(1)(B)[2] and, furthermore, she makes a claim for breach of fiduciary duty under Title 29 U.S.C. § 1132(a)(2).[3]  For its part, the Plan contends that the undisputed facts and authoritative law demonstrate: 1) that the decision denying benefits was proper and should be affirmed; and 2) that the claim for breach of fiduciary duty under ERISA is barred and otherwise non-meritorious.  Satisfied that defendant has shouldered its burden under Rule 56, this court hereby grants the summary judgment motion of the Plan for the reasons which follow.

## I.  STATEMENT OF THE FACTS

On July 31, 2009, Riley underwent a medical procedure to treat her idiopathic gastroparesis through the use of a device known as a gastric electrical stimulator ("GES").  Riley subsequently made a claim for medical benefits under her employee benefit plan.  The Plan administrator determined that the GES procedure was not covered under the current terms of the plan and Riley's claim was denied.  By comparison, under prior terms of coverage, Riley's plan had paid medical benefits for

---

[2]Section 1132(a)(1)(B) states:

(a) Persons empowered to bring a civil action. A civil action may be brought--
   (1) by a participant or beneficiary--
     . . . .
     (B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan. . .

[3]Section 1132(a)(2) provides:

(a) Persons empowered to bring a civil action. A civil action may be brought--
. . . .
   (2) by the Secretary, or by a participant, beneficiary or fiduciary for appropriate relief under section 409 [Title 29 USC § 1109]. . .

two previous GES procedures.  Aggrieved, she filed this federal court action, principally

seeking to reverse the denial of benefits determination.

Riley is married to an employee of North Central Electric Power Association and,

since 1999, has been a beneficiary of an ERISA-regulated employee welfare benefit

plan provided by her husband's employer.  At some point, Riley was diagnosed with

idiopathic gastroparesis and, in August of 2005, a GES was implanted in Riley for the

treatment of this condition.  In December of 2007, the pulse stimulator to the GES failed

and Riley underwent another medical procedure to replace it.  At the time of Riley's

2005 and 2007 procedures, benefit claims under the Plan were being administered by

Cooperative Benefits Administrators, Inc. ("CBA").  Under the terms of coverage

existing at that time, CBA approved payment of benefits for these two procedures.

Subsequently, in September of 2008, the Plan contracted with Blue Cross and

Blue Shield of Mississippi ("Blue Cross") to perform benefit claims administration and,

at that same time, new terms of coverage were implemented and embodied in the plan

document denominated as:

**Electric Power Association of**
**Mississippi Group Benefits Trust Plan**

**Plan B**

**Plan Type:   C622**

This document was provided to all participants, including Riley.  While the Plan

continued to afford benefits for certain medical treatment, at the same time it excluded

certain medical treatment from coverage.  In particular, the Plan excluded from

coverage "investigative" services.  An "investigative" service is a defined term under the

Plan:

3

The use of any treatment, procedure, facility, equipment, drug, device, or supply not yet recognized by certifying boards and/or approving or licensing agencies or published peer review criteria as standard, effective medical practice for the treatment of the condition being treated.

The Plan unambiguously states that "[b]enefits will not be provided for . . . services or items which are investigative in nature."

Separately, the Blue Cross Medical Policy, which is referenced in the Plan, advises participants such as Riley that GES is excluded from coverage on account of the fact that it is an investigative service.  The literature review underlying the Blue Cross Medical Policy on GES reveals that no randomized controlled trials and only small case studies had been conducted on the efficacy of the device.  Indeed, the U.S. Food and Drug Administration ("FDA") has not approved the use of GES except under the "humanitarian device exception" which only requires sufficient information to show it does not pose an unreasonable or significant risk of illness or injury.  The FDA exception applies to treatment intended to benefit fewer than 4,000 patients and, thus, is exempt from having to provide results of scientifically valid clinical investigations demonstrating its efficacy.  In the case of GES, the FDA exception is solely for the "Enterra Therapy System" manufactured by Medtronic and no further attempt has been made since the exemption was given in 2000 to have GES otherwise approved by the FDA.  The FDA has not recognized GES to be "standard, effective medical practice" for the treatment of gastroparesis.  In fact, the FDA specifically requires that labeling for GES state *that the effectiveness of the device for the specific indication has not been demonstrated*."  Accordingly, the Blue Cross Medical Policy considers GES "investigational for the treatment of gastroparesis of idiopathic etiology."  No exceptions to that policy are found under the Plan.

Consistent with the Plan's treatment of GES, Medtronic, the only manufacturer authorized by the FDA to market a GES system, has not recognized it as being "standard, effective medical practice" and affirmatively disclaims proof of its efficacy. The Administrative Record bears this out through Medtronic's literature on the device which states, "*the effectiveness of this device for this use has not been demonstrated.*"

On July 31, 2009, after Riley's GES failed yet again, she underwent another GES procedure.  This time, her claim for medical benefits was denied under the current terms of the Plan.

Before having the 2009 procedure, Riley made repeated attempts to have Blue Cross pre-authorize the payment of medical benefits.  But, the Plan did not allow for such pre-authorization and Riley was repeatedly advised of this in both verbal and written communications.  Riley was specifically informed in writing that "prior authorizations are not available for services which have not been performed[,]" and that "[a] determination of benefits for proposed services will be made at the time the claims are received and processed."

Riley nonetheless persisted in her attempts to persuade Blue Cross to pre-authorize medical benefits for a procedure which had not been performed.  In connection with that, she submitted pre-surgery medical records, a selection of medical literature on GES and, through a patient advocate, made what she deemed a "pre-service appeal" of Blue Cross's rejection of her request for pre-authorization.

The Plan's procedural obligations under ERISA and Riley's right to an appeal would not surface until after she had her surgery and her post-service claim for medical benefits was denied.  The Administrative Record shows that when Riley's claim was

ultimately denied, she was given an Explanation of Benefits which properly notified her of the decision and recited her rights under ERISA.  After receiving this notification, Riley did not exercise any of her recited rights, but instead elected to file suit.

Riley's complaint against the Plan advanced two separate counts: in Count I, Riley claims that the denial of benefits was presumptively "arbitrary and capricious" since medical benefits were paid for the two GES procedures she underwent prior to implementation of the Blue Cross terms of coverage.  In Count II, Riley states a claim for breach of fiduciary duty under §1132(a)(2)[4] [§502(a)(2)] of ERISA.

Though not pled by a separate count, Riley's complaint also asserts she was not provided a full and fair review of her claim, in violation of ERISA [§ 503, 29 U.S.C. § 1133[5]].  Additionally, whereas her complaint does not bear this out, Riley, in opposition to the Plan's motion for summary judgment, essentially argues that the Plan was not given its legally correct interpretation.

## II. APPLICABLE STANDARD OF REVIEW

The summary judgment standard for ERISA claims is unique because the court acts in an appellate capacity reviewing the decisions of the administrator of the plan.  In

---

[4]*supra*

[5]Section 1133 states:

In accordance with regulations of the Secretary, every employee benefit plan shall--
  (1) provide adequate notice in writing to any participant or beneficiary whose claim for benefits under the plan has been denied, setting forth the specific reasons for such denial, written in a manner calculated to be understood by the participant, and
  (2) afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim.

*Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115, 109 S.Ct. 948, 103 L. Ed.2d 80 (1989), the United States Supreme Court discussed the two possible standards of review, *de novo* and abuse of discretion:

> [a] denial of benefits challenged under §1132(a)(1)(B) is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan.

*Id.*

In this action, all parties are in agreement that the applicable standard is abuse of discretion.  Likewise, the court finds this is the proper standard, as the Plan fiduciary has been conferred with full discretionary authority to determine eligibility for benefits and/or to construe the terms of the Plan.

Under the abuse of discretion standard, "[i]f the plan fiduciary's decision is supported by substantial evidence and is not arbitrary and capricious, it must prevail." *Corry v. Liberty Life Assur. Co. of Boston*, 499 F.3d 389, 397-98 (5th Cir. 2007) (quoting *Ellis v. Liberty Life Assur. Co. of Boston*, 394 F.3d 262, 273 (5th Cir. 2004)). "Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Id.*  In contrast, "[a] decision is arbitrary when made 'without a rational connection between the known facts and the decision or between the found facts and the evidence.'" *Lain v. UNUM Life Ins. Co. of America*, 279 F.3d 337, 342 (5th Cir. 2002) (quoting *Bellaire General Hospital v. Blue Cross Blue Shield of Mich.*, 97 F.3d 822, 828 (5th Cir. 1996)).

The analysis of the abuse of discretion standard when construing the terms of a plan involves a two-step process.  *See Vercher*, 379 F.3d at 227.  First, the court must

determine whether the administrator's plan interpretation is legally correct.  "If the administrator's interpretation is legally sound, further analysis is unnecessary because no abuse of discretion could have occurred."  *Chacko v. Sabre, Inc.*, 473 F.3d 604, 610 (5th Cir. 2006).  If it is determined that the administrator's interpretation was not correct, "then, and only then, the court must consider whether the administrator's interpretation constituted an abuse of discretion."  *Curtis v. BellSouth Corp.*, 149 F. Supp. 2d 268, 273 (S.D. Miss. 2001), citing *Jordan v. Cameron Iron Works, Inc.*, 900 F.2d 53, 56 (5th Cir. 1990) *cert. denied*, 498 U.S. 939, 111 S.Ct. 344, 112 L. Ed. 2d 308 (1990) (emphasis supplied).  Even where a plan has not been given its proper legal interpretation, the benefits determination must be upheld unless it was arbitrary and capricious.  *Wildbur v. ARCO Chem. Co.*, 974 F.2d 631, 638 (5th Cir. 1992).

### III.   SUMMARY JUDGMENT FOR THE PLAN IS APPROPRIATE

### A.   THERE IS NO VESTING OF RIGHTS TO EMPLOYEE WELFARE BENEFITS

Riley argues that coverage of  her two prior GES procedures requires her current plan to cover the 2009 surgery.  The Fifth Circuit, however, has long recognized that "ERISA does not require such 'vesting' of the right to a continued level of the same medical benefits once those are ever included in a welfare benefit plan."  *McGann v. H&H Music Co.*, 946 F. 2d 401, 405 (5th Cir. 1991).  Welfare benefit plans are distinctly unique from employee pension plans in this regard and, as courts have pointed out, this is by design.  "Congress evidenced its recognition of the need for flexibility in rejecting the automatic vesting of welfare plans . . . because the costs of such plans are subject to fluctuating and unpredictable variables."  *Wise v. El Paso Nat'l Gas Co.*, 986 F. 2d 929, 935 (5th Cir. 1993) (citing *Moore v. Metropolitan Life Ins. Co.*, 856 F.2d 488, 492

(2d Cir. 1988)).  An employer is under no requirement to maintain benefits at a certain level, much less at any level; rather, a participant's eligibility for benefits is determined under "then existing, current terms of the plan[.]" *Id.*

For instance, where an employer eliminated medical benefits which were previously being afforded to an employee under an ERISA-regulated plan, the Fifth Circuit, in upholding the change in benefits, held that "ERISA does not mandate that employers provide any particular benefits."  *McGann v. H&H Music Co.*, 946 F. 2d 401, 405, 406 (5th Cir. 1991).  The *McGann* court explained that Congress intended for employers to "remain free to create, modify and terminate the terms and conditions of employee benefits plans without governmental interference." *Id.*

In response to the Plan's motion for summary judgment, Riley offers nothing to dispute the adverse effect of this legal principle on her argument.  Riley is vested with no right to have the Plan cover her 2009 GES procedure merely because she previously had coverage for similar services.  Riley's current eligibility for benefits is determined by the terms of the Plan in effect at the time of her 2009 claim.  The touchstone, therefore, is whether the denial of Riley's 2009 claim constituted an abuse of discretion under the "then existing, current terms of the Plan," and the undisputed material facts answer the question in the negative.

### B.    THE PLAN WAS GIVEN A LEGALLY CORRECT INTERPRETATION

Congress expected when it enacted ERISA that a federal common law of rights and obligations under ERISA-regulated plans would develop. *Todd v. AIG Life Insurance*, 47 F.3d 1448, 1452-53 (5th Cir. 1995); *Jones v. Georgia Pacific Corporation*, 90 F.3d 114, 116 (5th Cir. 1996). Therefore, it is federal common law which governs this

case, including the interpretation of the plan provisions at issue. *Wegner v. Standard Insurance Company*, 129 F.3d 814, 818 (5th Cir. 1997).

In *Firestone Tire & Rubber Company v. Bruch*, the United States Supreme Court, analogizing ERISA plans to trust agreements, stated as follows:

> As they do with contractual provisions, courts construe terms in trust agreements without deferring to either party's interpretation.... The terms of trusts created by written instruments are "determined by the provisions of the instrument as interpreted in light of all the circumstances and such other evidence of the intention of the settlor with respect to the trust as is not inadmissible." Restatement (Second) of Trusts § 4, Comment d (1959).

*Bruch*, 489 U.S. at 112, 109 S.Ct. 948.

Next, the general rule of construction pertaining to insurance policies, that of resolving ambiguities in favor of the insured, applies in the ERISA context. *Ramsey v. Colonial Life Insurance Company of America*, 12 F.3d 472, 479 (5th Cir. 1994); *Hansen v. Continental Insurance Company*, 940 F.2d 971, 982 (5th Cir. 1991).  Otherwise, this Court follows the traditional principles of contract and trust law, construing a participant's claim " 'as it would have any other contract claim-by looking to the terms of the plan and other manifestations of the parties' intent.'" *Sunbeam-Oster Co., Inc. Group Benefits Plan for Salaried and Non-Bargaining Hourly Employees v. Whitehurst*, 102 F.3d 1368, 1373 (5th Cir.1 996) (quoting *Bruch*, 489 U.S. at 112, 113, 109 S.Ct. 948).

Here, Riley's medical records of July 31, 2009, from St. Francis Hospital list her diagnosis as being idiopathic gastroparesis.  The operative procedure itself was described as the replacement of a new pulse stimulation device for the purpose of gastric electric stimulation.  It was this medical service for which Riley made a claim for benefits under the Plan.

The Plan, in denying the claim, relies on the stated definition of "investigative" services, the exclusion of coverage for such services and the Blue Cross Medical Policy which articulates the rationale for the classification of GES as investigative.  The Plan also cites to the FDA's and Medtronic's determinations that the effectiveness of GES has not been demonstrated.

Riley attempts to counter this by arguing that she submitted to Blue Cross other evidence which disputes the Plan's treatment of GES as an investigative service.  It is a well-settled principle of ERISA law, however, that so long as the denial of a claim is based on supporting evidence, "even if disputable," the administrator's decision must be affirmed.  *Abate v. Hartford*, 471 F. Supp. 2d 724, 737 (E.D. Tex. 2006) (citing *Vega v. National Life Ins. Servs., Inc.*, 188 F.3d 287, 299 (5th Cir. 1999)).  "The law requires only that substantial evidence support a plan fiduciary's decision . . . not that substantial evidence (or, for that matter, even a preponderance) exists to support the employee's claim[.]"  *Singley*, 497 F. Supp. 2d at 817.  Even if Riley submitted evidence favorable to her position, that alone would be insufficient to show that the Plan administrator incorrectly interpreted the terms of coverage.  *See Curtis*, 149 F. Supp. 2d at 273 (holding, "this court's authority to reverse a plan administrator's decision is limited to only those instances in which the plan administrator abused its discretion.").

The Court finds that the evidence relied on by Riley does not demonstrate that the Plan abused its discretion.  While Riley points to a letter in the Administrative Record from one of her physicians who advocates that GES is the standard of care for treating her gastroparesis, the court finds this insufficient to remove GES from the Plan definition of "investigative."  The letter from Riley's physician does not constitute "a certifying

board, an approving licensing agency or a published peer review criteria" deeming GES to be "standard, effective medical practice."  More so, ERISA does not recognize a "treating physician rule," and "courts have no warrant to require administrators automatically to accord special weight to the opinions of a claimant's physician; nor may courts impose on plan administrators a discrete burden of explanation when they credit reliable evidence that conflicts with a treating physician's evaluation."  *Black & Decker Disability Plan v. Nord*, 38 U.S. 822, 123 S.Ct. 1965, 1972 (U.S. 2003); *Cummings v. Union Security Insurance Company*, 2008 W.L. 410644, *4 (S.D. Miss. 2008) (holding, "ERISA does not require . . . that administrators give special deference to the opinions of treating physicians and does not impose a heightened burden of explanation on an administrator who rejects a treating physician's opinion).  Simply put, the letter from Riley's physician has no talismanic effect to create coverage nor does it demonstrate an incorrect interpretation of the Plan.

Riley also cites to Medicare and other entities which cover GES procedures as evidence that GES is not "investigative." This Court, however, is restrained by ERISA from reading coverage into a plan merely because other sources have elected to cover the treatment.  It was "Congress's intent that employers remain free to create . . . the terms and conditions of employee benefit plans without governmental interference." *McGann*, 946 F. 2d at 407.  That other sources may cover GES procedures does not change the definition in Riley's plan of an "investigative" service nor her plan's exclusion for such services.

In regards to the medical literature which Riley submitted to Blue Cross on GES, the Court finds that the research surveyed in that literature has not changed the status of

GES according to the FDA or its manufacturer.  Among other troublesome issues with this literature (as persuasively pointed out by the Plan in its briefs), the literature submitted by Riley  largely, if not completely, involved small case studies into the efficacy of GES, yet as of 2009, when Riley submitted her claim, the FDA continued to require that the labeling for GES state that the effectiveness of the device had not been demonstrated – thereby meeting the Plan's definition of "investigative."

Finally, Riley pleads that GES should not be considered investigative since it provides her relief from her symptoms caused by gastroparesis.  That GES may work for Riley, however, does not change the Plan's terms which must be construed under the rule of law.  As the Fifth Circuit aptly stated in an ERISA action involving a plan beneficiary suffering from incurable Lou Gehrig's disease – "we can only speak to what the law commands, not how our sympathy dictates."  *King v. Provident Life & Acc. Ins. Co.*, 68 F.3d 471, n.9 (5th Cir. (Miss.) 1995).  Payment of benefits cannot be compelled for a non-covered procedure simply because it may provide a plan participant relief from a particular medical condition.  ERISA affords employers the freedom to provide and, conversely, not to provide certain employee benefits, and "neither Congress nor the courts are involved in either the decision to establish a plan or in the decision concerning which benefits a plan should provide."  *McGann*, 946 F.2d at 407.

The Court finds that the Plan terms are not ambiguous and its provisions are clear.  GES is an "investigative" item or service and, accordingly, is not covered.  Since the administrator's interpretation of the Plan was correct, it is unnecessary for this Court to consider whether the administrator's interpretation constituted an abuse of discretion.  Be that as it may, the Court finds that it cannot be said that the Plan's decision was

made "without a rational connection between the known facts and the decision or between the found facts and the evidence." *Lain v. UNUM Life Ins. Co. of America*, 279 F.3d 337, 342 (5th Cir. 2002) (quoting *Bellaire General Hospital v. Blue Cross Blue Shield of Mich.*, 97 F.3d 822, 828 (5th Cir. 1996)).

### C.   THE PLAN DID NOT COMMIT ANY PROCEDURAL VIOLATIONS UNDER ERISA

Turning to Riley's opposition to summary judgment on the alleged ground that she was denied a full and fair review of her claim, this contention has no merit.

Riley asserts that the Plan administrator committed certain procedural violations when Blue Cross rejected her request to pre-authorize the 2009 surgery before it was performed and then by failing to administer what Riley characterizes as her "pre-service appeal" from that decision.  Riley's position in this regard is flawed.  The Plan did not provide for pre-authorization of the procedure and Riley had no such right to a pre-service appeal.  "ERISA requires the plan be administered as written and to do otherwise violates not only the terms of the plan but causes the plan to be in violation of ERISA." *Huizing v. Metropolitan Life Ins. Co.*, 2010 WL 1417728, *6 (W.D. Mich. March 31, 2010) (quoting *Gagliano v. Reliance Standard Life Ins. Co.*, 547 F.3d 230, 239 (4th Cir. 2008) (citing 29 U.S.C. § 1102(a)(1) (2008))).  The Plan's procedural obligations under ERISA were triggered when Riley's post-service claim for medical benefits was denied, and the Administrative Record shows that the Plan administrator met those obligations.

### D.    RILEY'S CLAIM FOR ALLEGED BREACH OF FIDUCIARY DUTY IS BARRED

Riley asserts a claim for breach of fiduciary duty against the Plan under §1132(a)(2) [§ 502(a)(2)].  [Docket No. 1 at pp. 25-26].  To this, the court finds that Riley cannot bring a claim for breach of fiduciary duty against the Plan.  Section 1132(a)(2) [§ 502(a)(2)] provides for actions for relief under § 1109 [§ 409].  Section 1109 [§ 409] provides for imposition of personal liability on a fiduciary "to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made… and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary." Id.   Recovery from a fiduciary under § 1132(a)(2) [§ 502(a)(2)] is to a plan's benefit, not the plaintiff's.  *Murphy v. Wal-Mart Associates' Group Health Plan*, 928 F. Supp. 700, 710 (E.D. Tex 1996) (even if defendants were fiduciaries, plan participant could not recover damages under § 501(a)(2), as the recovery would be to the plan); *Metropolitan Life Ins. v. Palmer*, 238 F. Supp. 2d 826, 830 (E.D. Tex. 2002) (equitable relief available to the plan not the individual under § 1132(a)(2)); *McDonald v. Provident Indem. Life Inc. Co.*, 60 F.3d 234, 237 (5th Cir. 1995) (claim for breach of fiduciary duty under § 1132(a)(2) is based on harm to the plan, rather than harm to a particular individual).

The Metropolitan Life court noted that the plaintiff's claim under § 1132(a)(2) did not make sense since relief was only available to the plan and not the individual.  Thus, the court examined § 1132(a)(3)[6], which this court does as well, and also finds the claim

---

[6]Section 1132(a)(3) states:

(a) Persons empowered to bring a civil action. A civil action may be brought--

is not available to Riley.

As a consequence of seeking benefits under § 1132(a)(1)(B) [§ 502(a)(1)(B)], Riley is prohibited from bringing a claim for a breach of fiduciary duty.  Specifically, "an ERISA plaintiff may bring a private action for breach of fiduciary duty only when no other remedy is available under [§ 1132]."  *Rhorer v. Raythion Eng'rs & Constructors, Inc.*, 181 F.3d 634, 639 (5th Cir. 1999) (citing *Varity Corp. v. Howe*, 516 U.S. 489, 510-16 (1996); *Metropolitan Life Ins. v. Palmer*, 238 F. Supp.2d 826, 830 (E.D. Tex. 2002)) (After *Varity*, "it is settled law in this circuit that a potential beneficiary may not sue for breach of fiduciary duty if he has a pending claim under section 1132(a)(1)(B) for benefits allegedly owed.").

If "an insured has adequate redress for denied benefits through [the] right to bring suit under section 1132(a)(1), and if [the insured] is seeking the same relief that is available for a claim for benefits under section 1132(a)(1), [the insured] has no claim for breach of fiduciary duty under section 1132(a)(3), even if her claim under section 1132(a)(1) is subsequently lost on the merits."  *Adams v. Prudential Ins. Co. of Am.*, No. 05-2041, 2005 WL 2669550, at *1 (S.D. Tex. Oct. 19, 2005) (observing that courts interpreting *Varity* have "consistently" reached the same result).  In *Varity*, the Supreme Court emphasized that § 1132(a)(3) is a "catchall" provision that provides relief for injuries that are not otherwise adequately addressed under ERISA. 516 U.S. at 515, 116 S.Ct. 1065.  Following this guidance, the Fifth Circuit has concluded that if a plaintiff can

---

. . . .
    (3) by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this title or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this title or the terms of the plan. . .

pursue plan benefits under § 1132(a)(1), the plaintiff has an adequate remedy and may not also pursue a claim under § 1132(a)(3).  See *Rhorer*, 181 F.3d at 639 (upholding dismissal of the plaintiff's claim that the defendants breached their fiduciary duties by inadequate disclosures in the SPD because in addition to that claim, the plaintiff was "seeking to recover plan benefits under § 1132(a)(1)(B)" and "the claim to recover plan benefits [wa]s the predominate cause of action in th[e] suit"); *Tolson v. Avondale Indus., Inc.*, 141 F.3d 604, 610 (5th Cir. 1998) ("Because [plaintiff] has adequate relief available for the alleged improper denial of benefits through his right to sue the Plans directly under section 1132(a)(1), relief through the application of [s]ection 1132(a)(3) would be inappropriate.").  *Khan v. American Int'l Group, Inc.*, 2009 WL 2923048 at *8 (S.D. Tex. 2009).

Indeed, in *Fisher v. AIG Life Ins. Co.*, the plaintiff who brought a claim for benefits under § 1132(a)(1)(B) [§ 502(a)(1)(B)] was specifically barred from bringing a fiduciary duty claim which claim was based on allegations of not providing him with adequate notice of certain ERISA rights, as is alleged by Riley in her response papers.  *Fisher*, 2009 WL 3029756 at *6 (N.D. Tex. 2009).

## IV.  **CONCLUSION**

This court hereby grants the summary judgment motion of Electric Power Association of Mississippi Group Benefits Trust Plan, affirming the denial of plaintiff's claim for benefits under her employee welfare benefit plan.

Further, this court hereby grants the summary judgment motion of Electric Power Association of Mississippi Group Benefits Trust Plan on the claim for breach of fiduciary duty under § 1132(a)(2), as Riley does not bring this claim for the benefit of the Plan, but

for her own alleged damages and having brought a claim for benefits under

§ 1132(a)(1)(B), she is barred from bringing this separate action.

     The court will enter a Final Judgment in accordance with the local rules.

     **SO ORDERED AND ADJUDGED**, this the 21st day of July, 2011.

                  **s/ HENRY T. WINGATE**
                  **UNITED STATES DISTRICT JUDGE**


Civil Action No. 3:09cv674 HTW-LRA
Order Granting Motion for Summary Judgment
Order Granting Motion for Leave to File Response

18